**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CASE NO. 3:10-CR-0522 |
| | : | |
| Plaintiff, | : | |
| | : | JUDGE JAMES G. CARR |
| vs. | : | |
| | : | |
| ALEX DAVID COOK, | : | **DEFENDANT'S MOTION TO** |
| | : | **SUPPRESS AND MOTION IN LIMINE** |
| Defendant. | : | **(Evidentiary Hearing Requested)** |

Defendant Alex Cook, through counsel, hereby moves this Honorable Court to suppress all verbal and written statements alleged to be made by Mr. Cook while he was in custody on or around September 15, 2010. Mr. Cook submits that the statements were obtained in violation of his right against self- incrimination and his right to counsel, and that he did not knowingly, intelligently, and voluntarily waive those rights. In the event that the motion to suppress is denied, Mr. Cook also asks this Court to grant a motion in limine, prohibiting the Government from presenting any written and/or signed statements at trial. Mr. Cook hereby requests an evidentiary hearing to develop facts in support of this motion.

**I. Facts**

In September 2010, Alex Cook, a 19-year old student, was living in an apartment in Lima, Ohio. Although Mr. Cook has reading difficulties that have hindered his success in traditional academic programs, he has shown an aptitude for building, construction, and farming trades. He successfully completed a Tech Program in high school, and was studying to obtain an Associates Degree in Agricultural and Diesel Technologies at the University of Northwestern

Ohio. Mr. Cook was living near campus and shared an apartment with his roommate, a 20 year-old student at the same school. Mr. Cook had no interactions with the law prior to these charges.

The Government searched Mr. Cook's residence pursuant to a search warrant. While a team of FBI Special Agents and Task Force Officers executed the search, two FBI Agents questioned Mr. Cook inside the apartment. The Agents also questioned Mr. Cook's roommate, who had access to the home and computer that were the subject of the search. The agents drove Mr. Cook to the Lima Resident Agency of the FBI ("Agency Office") for a polygraph examination.

Before the polygraph, Mr. Cook was asked to sign forms, and understood them to be standard forms required for all polygraph examinations. The forms included an "Advice of Rights" form, FD-395, that contained a written Miranda waiver. He signed the bottom of a digital signing pad which was attached to the computer. Mr. Cook's Miranda rights were not recited, explained, or read to him. He then took a short polygraph examination.

After the polygraph, the Agents' questioning became more intense. There is an indication that Mr. Cook (a) attempted to make a phone call, (b) asked to leave, and (c) asked to talk to a lawyer, but was told he could not and/or did not need to do so. He was at the station for several hours.

After the interrogation, an Agent typed a statement and told Mr. Cook he could leave when he signed the statement. Mr. Cook did so, (again on a digital signing pad), without reading the statement. Mr. Cook has subsequently reviewed the statement and submits that the statement

is not an accurate representation of what he told the Agents.[1]

## II.　Argument

### A.　Legal Framework

The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself."  U.S. Const. amend. V.  Inherent in this right against self-incrimination is the "right 'to remain silent unless [the accused] chooses to speak in the unfettered exercise of his own will.'"  *Miranda v. Arizona*, 384 U.S. 436, 460 (1966) (quoting *Malloy v. Hogan*, 378 U.S. 1, 8 (1964)).

"In *Miranda*[,] the Supreme Court recognized that custodial interrogations, by their very nature, generate 'compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely.'"  *Moran v. Burbine*, 475 U.S. 412, 420 (1986) (quoting *Miranda*, 384 U.S. at 467).  To counterbalance the inherent pressures of custodial interrogation, "*Miranda* imposed on the police an obligation to follow certain procedures in their dealings with the accused," such as advising the suspect of his right to remain silent and his right to counsel.  *Id.*

A defendant may waive the rights included in the *Miranda* warnings "provided the waiver is made voluntarily, knowingly and intelligently."  *Miranda*, 384 U.S. at 444.  Determining whether a voluntary, knowing and intelligent waiver has occurred involves "two distinct dimensions."  *Moran*, 475 U.S. at 421.

"First, the relinquishment of the right must have been voluntary in the sense that it was

---

[1] The facts included in this motion have been obtained from preliminary interviews and discovery.  They are recited and accepted for the purpose of preparing this suppression motion only, and Mr. Cook respectfully reserves his right to contest these facts at a later date.

the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.*  As the Supreme Court has explained, "[o]nly if the 'totality of the circumstances surrounding the interrogation' reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived." *Id.* (quoting *Fare v. Michael C.*, 442 U.S. 707, 725 (1979)); *see also Colorado v. Spring*, 479 U.S. 564, 573 (1987).

**B.  Analysis**

  *i.  Custodial interrogation.*

To prevail on his motion to suppress, Mr. Cook must first establish that the statements at issue were the product of a custodial interrogation.  *See Miranda*, 384 U.S. at 444-45.  Custodial interrogation is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id*. at 444.

Here, Mr. Cook was expressly questioned by law enforcement officers at the FBI Agency Office about matters relating to this case.  The obvious purpose of the questions was to obtain incriminating information.  His questioning was therefore an "interrogation" for Miranda purposes.  *See Rhode Island v. Innis*, 446 U.S. 291, 300-02 (1980) (explaining that interrogation under Miranda is "express questioning or its functional equivalent" that law enforcement officers "should know [is] reasonably likely to elicit an incriminating response.") .

The interrogation was also custodial.  "[T]he only relevant inquiry" for determining whether an individual is in custody is "how a reasonable man in the suspect's position would have understood his situation." *Berkemer v. McCarty*, 468 U.S. 420, 442 (1984).  When making this determination, a court must consider (1) "the circumstances surrounding the interrogation";

-4-

and (2) whether a "reasonable person [would] have felt he or she was not at liberty to terminate the interrogation and leave." *Thomas v. Keohane*, 516 U.S. 99, 112 (1995) (footnote omitted).

When making this determination, courts should consider:

> (1) the purpose of the questioning; (2) whether the place of the questioning was hostile or coercive; (3) the length of the questioning; and (4) other indica of custody such as whether the suspect was informed at the time that the questioning was voluntary or that the suspect was free to leave or to request the officers to do so; whether the suspect possessed unrestrained freedom of movement during questioning; and whether the suspect initiated contact with the police or voluntarily admitted the officers to the residence and acquiesced to their requests to answer some questions.

*United States v. Salvo*, 133 F.3d 943, 950 (6th. Cir. 1998) (quoted in *Coomer v. Yukins*, 533 F.3d 477, 486 (6th Cir. 2008)) .

Here, Mr. Cook was driven to the FBI Office by Agents in their government vehicle. He took a polygraph test in an effort to clear his name. After the test, however, questioning became more adversarial. At that point, Mr. Cook became distressed and expressed his desire to leave. Mr. Cook also knew that he had no transportation and/or way to leave the office without the assistance of the Agents. Mr. Cook picked up his phone but was told to put the phone away until they were finished. There are also indications that he told the agents that he would like a lawyer.

Under these circumstances, no reasonable person would have felt he was "at liberty to terminate the interrogation and leave." *Keohane*, 516 U.S. at 112. All of the relevant considerations under *Salvo* point to this conclusion. Mr. Cook was driven to the station by agents in their car. He then was questioned at length at a station house for the purpose of

gathering incriminating information. *See Salvo*, 133 F.3d at 950 (examining "the purpose of the questioning"). He was located in an interrogation room where he did not possess "unrestrained freedom of movement." *See id.* (examining the place of the questioning and other indicia of custody).

For the reasons set forth above, Mr. Cook asks this Court of find he was subjected to a custodial interrogation under *Miranda* and its progeny.

### ii. *Voluntary and intelligent waiver.*

"[I]ncriminating statements elicited from suspects in custody cannot be admitted at trial unless the suspect was first advised on his or her Miranda rights." *Salvo*, 133 F.3d at 948. Consequently, once this Court determines that the Government obtained statements during a custodial interrogation, the Government must establish, by a preponderance of the evidence, that Mr. Cook validly waived his Fifth Amendment rights. *See United States v. Adams*, 583 F.3d 457, 467 (6th Cir. 2009).

In order for a Miranda waiver to be valid, it must be voluntary, knowing, and intelligent, under the totality of the circumstances. *Moran*, 475 U.S. at 421; *Miranda*, 384 U.S. at 444. This inquiry has "two distinct dimensions." *Spring*, 479 U.S. at 573 (quoting *Moran*, 475 U.S. at 421).

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception. Second, the waiver must have been made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it.

*Smith v. Mitchell,* 567 F.3d 246, 257 (6th Cir. 2009) (citing *Moran*, 475 U.S. at 421). Only if the "totality of the circumstances surrounding the interrogation" reveal both an uncoerced choice

and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived. *Moran*, 475 U.S. at 421.

Here, Agents indicated that the form was a standard form required to proceed with a polygraph test. Mr. Cook was not read the rights, nor did he read them himself. Instead, he signed a digital signing pad, fully believing he was signing routine paperwork. He had no idea he was waiving his right against self incrimination and his right to have counsel present.

Put simply, the government must show that alleged waiver was *both* voluntary and knowing, *Moran*, 475 U.S. at 421, and here it can do neither. The waiver was involuntary because it was obtained through "deception" rather than "free and deliberate choice." *See Spring*, 479 U.S. at 573. It was not knowing and intelligent because Mr. Cook did not have "a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it." *Smith*, 567 F.3d at 257. Consequently, the alleged incriminating statements must be suppressed.

### iii. Right to Counsel

Mr. Cook also asserts that the alleged incriminating statements were obtained in violation of his Fifth Amendment right to counsel. Although the Fifth Amendment does not guarantee a right to counsel, in *Miranda*, the Supreme Court held that in certain pretrial stages - namely, custodial interrogation - the privilege against self-incrimination includes an implied right to counsel. 384 U.S. at 439. Like the right against self-incrimination, this right is triggered when a suspect is interrogated while "in custody" or "otherwise deprived of his freedom in any significant way." *Id.* at 444.

If at any time during an interview a suspect requests counsel, "he is not subject to further questioning until a lawyer has been made available or the suspect himself reinitiates

conversation." *Davis v. United States*, 512 U.S. 452, 458 (1994) (citing *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981)).  A suspect's request must be unambiguous.  *Id.* at 459; *Berghuis v. Thompkins*, 130 S. Ct. 2250, 2259-60 (2010).  This means that the suspect "must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney."  *Davis*, 512 U.S. at 459.

Here, when questioning intensified, Mr. Cook opened his cell phone to make a call.  The Agent told Mr. Cook to put the phone away.  Shortly thereafter, Mr. Cook told the Agent, "I would like a lawyer."  This was a clear and unambiguous request for an attorney, and the Agent had an obligation to stop the interrogation.  *Davis*, 512 U.S. at 458.  Instead, however, the Agent told Mr. Cook that he did not need a lawyer because there were no charges filed, and that the court would not appoint one when there were not charges.  The Agent then continued the interrogation.  Under these circumstances, Mr. Cook's Fifth Amendment right to counsel was violated.

### *iv.     The signed statement.*

Finally, even if this Court were to conclude that the statement at issue was not the product of a custodial interrogation, Mr. Cook's written and signed statement should still be suppressed on the grounds that it was not voluntary in violation of the Due Process Clause.

When a defendant challenges the voluntariness of his confession, the government bears the burden of proving by a preponderance of the evidence that the confession was in fact voluntary.  *United States v. Johnson*, 351 F.3d 254, 260 (6th Cir. 2003).  "In determining whether a confession has been elicited by means that are unconstitutional, [a] court looks to the totality of the circumstances concerning whether a defendant's will was overborne in a particular

case." *Id.* (quotation omitted).

Here, after questioning Mr. Cook, the Agent prepared a written statement. The Agent told Mr. Cook to sign the statement and he could leave. When Mr. Cook asked what the statement said, he was told it was a letter to the prosecutor saying there was no reason to go further with the case. Mr. Cook, who does not read well, was asked to sign a digital signing pad. The computer screen was not fully facing Mr. Cook, and he signed the signing pad without reading or reviewing the statement. He did so solely because he wanted to leave. He has now reviewed the statement and submits that the statement misrepresents what he told the Agent.

The confession set forth in the written statement was involuntary because it was obtained under false pretenses and promises of leniency. *See Johnson*, 351 F.3d at 261 ("[P]romises of leniency may be coercive if they are broken or illusory."). Mr. Cook did not read the statement, and it is not an accurate representation of what Mr. Cook told the Agent. Therefore, Mr. Cook respectfully requests that the written statement be suppressed.

## III.   Conclusion

Because any alleged incriminating statements were obtained in violation of Mr. Cook's Fifth Amendment right against self-incrimination and his Fifth Amendment right to counsel, Mr. Cook respectfully asks this Court to suppress all alleged verbal and written statements obtained during the custodial interrogation on September 10, 2010. In the alternative, Mr. Cook requests that this Court suppress the written statement because it was involuntary.

        Respectfully submitted,

        */s/Donna M. Grill*
        DONNA M. GRILL(0062141)
        MELISSA M. SALINAS (P69388)
        Office of the Federal Public Defender
        617 Adams St., 2nd Floor
        Toledo, Ohio 43624
        (419) 259-7370 Fax: (419) 259-7375
        e-mail address: donna_grill@fd.org

## **CERTIFICATE OF SERVICE**

  I hereby certify that on May 16, 2011, a copy of the foregoing <u>Motion to Suppress</u> was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  All other parties will be served by regular U.S. Mail.  Parties may access this filing through the Court's system.

        */s/Donna M. Grill*
        DONNA M. GRILL(0062141)
        Assistant Federal Public Defender
        617 Adams St., 2nd Floor
        Toledo, Ohio 43624
        (419) 259-7370 Fax: (419) 259-7375
        e-mail address: donna_grill@fd.org