```
1                    UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF OHIO
2                         WESTERN DIVISION


3


4   UNITED STATES OF AMERICA,-    Docket No. 3:10-cr-522
                               -
5        Plaintiff,            -    Toledo, Ohio
                               -    September 6, 2011
6            v.                -    Trial
                               -
7   ALEX DAVID COOK,           -
                               -
8        Defendant.            -
    -------------------------------

9
                          VOLUME 1
10                    TRANSCRIPT OF TRIAL
              BEFORE THE HONORABLE JAMES G. CARR
11          UNITED STATES DISTRICT JUDGE, AND A JURY

12   APPEARANCES:

13   For the Plaintiffs:  United States Attorneys' Office
                          By:  Thomas O. Secor
14                             Gene Crawford
                          Four SeaGate, Suite 308
15                        Toledo, OH 43604
                          (419) 259-6376
16
     For the Defendant:   Elizabeth Kelley
17                        Suite 285
                          13938 A Cedar Road
18                        Cleveland, OH 44118-3204
                          (216) 410-6923
19
     Court Reporter:      Tracy L. Spore, RMR, CRR
20                        1716 Spielbusch Avenue
                          Toledo, Ohio 43624
21                        (419) 213-5520

22

23

     Proceedings recorded by mechanical stenography,
24   transcript produced by notereading.

25
```

|       |    |                                                                          |
|-------|----|--------------------------------------------------------------------------|
|       | 1  | (Commenced at 2:06 p.m.)                                                  |
|       | 2  | (The jury is not present.)                                                |
|       | 3  | THE COURT:  If there's something I misread,                              |
| 00:00:05 | 4 | interrupt and say, Judge, may we approach.  I did a lot                 |
| 00:00:10 | 5 | less editing than I usually do.                                          |
| 00:00:12 | 6 | MR. SECOR:  The only thing I'd indicate,                                 |
| 00:00:14 | 7 | Your Honor, is in the charge that Amy was kind enough to                 |
| 00:00:19 | 8 | send to us, 7.20, statement by the defendant, had been                   |
| 00:00:32 | 9 | left out.  I assume that you left that out only because                  |
| 00:00:37 | 10 | you were uncertain at the time whether or not the                       |
| 00:00:40 | 11 | defendant intended to testify.                                          |
| 00:00:45 | 12 | THE COURT:  I did.                                                      |
| 00:00:49 | 13 | MR. SECOR:  It's back in.                                               |
| 00:00:51 | 14 | THE COURT:  I'm looking at the unnumbered                               |
| 00:00:54 | 15 | pages.  I hope they got the right -- and that comes just                |
| 00:01:14 | 16 | before deliberation and verdict.  I can stop there.  I                  |
| 00:01:17 | 17 | can stop with page 29 -- or, I'm sorry, I can stop with                 |
| 00:01:23 | 18 | page 27 and not read further.  I don't read the business               |
| 00:01:32 | 19 | about verdict and so forth in any event.                                |
| 00:01:49 | 20 | MR. SECOR:  My point is that under United                               |
| 00:01:53 | 21 | States versus Adams, it was a Sixth Circuit case --                     |
| 00:01:57 | 22 | THE COURT:  My point is if I simply postpone                            |
| 00:02:00 | 23 | that issue by stopping my reading at page 27, First                     |
| 00:02:05 | 24 | Amendment --                                                            |
| 00:02:06 | 25 | MR. SECOR:  Yes.                                                        |

00:02:08  1          THE COURT:  We'll deal with it in due

00:02:09  2  course.  Okay, Ms. Kelley?

00:02:18  3              MS. KELLEY:  Nothing further.

00:02:19  4              THE COURT:  Work for you if we do that?

00:02:20  5              MS. KELLEY:  Yes.

00:02:23  6              THE COURT:  Thanks, Mr. Secor.

00:02:26  7          (The jury enters the courtroom.)

00:03:22  8              THE COURT:  Ladies and gentlemen, you've

00:03:25  9  been given a set of jury instructions which I will read

00:03:28  10  to you in a moment.  Please do not read ahead.  You

00:03:32  11  don't have to refer to them as I'm reading; it's up to

00:03:38  12  you.  You can make whatever marks you want on the

00:03:40  13  instructions, although they will be collected after I

00:03:43  14  conclude reading them.  At the end of the trial I will

00:03:46  15  read you my final instructions.  I anticipate but cannot

00:03:51  16  be certain that they will duplicate almost substantially

00:03:58  17  if not completely the instructions that I'll read you in

00:04:01  18  a moment.  But on the other hand, sometimes things occur

00:04:04  19  during trial which necessitate a change in the final

00:04:07  20  instructions that I gave you before you begin

00:04:11  21  deliberations.  Which is to say these instructions are

00:04:14  22  not your final guidance on what the law is and the law

00:04:20  23  that you shall follow in reaching your deliberations.

00:04:23  24  My purpose in giving jury instructions to you at this

00:04:27  25  time is to give you some sense of what's going on, what

| | | |
|---|---|---|
| 00:04:32 | 1 | you have to do, what you have to decide, and to some |
| 00:04:35 | 2 | extent how you should go about deciding.  The |
| 00:04:40 | 3 | instructions I'm only going to read up through page 27. |
| 00:04:47 | 4 | The other instructions deal with verdicts and so forth, |
| 00:04:50 | 5 | so I will not be reading them, nor should you read them |
| 00:04:54 | 6 | now or anytime during the course of my reading of these |
| 00:04:57 | 7 | instructions to you. |
| 00:05:00 | 8 | I do ask that you simply follow along and do |
| 00:05:03 | 9 | not read ahead.  So if you'll turn to the first page. |
| 00:05:18 | 10 | (Discussion had off the record.) |
| 00:05:18 | 11 | (Jury is sworn by the clerk.) |
| 00:05:27 | 12 | THE COURT:  Now you may be seated.  Now you |
| 00:05:30 | 13 | may turn to the first page. |
| 00:05:42 | 14 | General principles, introduction. |
| 00:05:45 | 15 | Members of the jury, now it is time for me |
| 00:05:48 | 16 | to instruct you about the law that you must follow in |
| 00:05:51 | 17 | deciding this case. |
| 00:05:52 | 18 | I will start by explaining your duties and |
| 00:05:55 | 19 | the general rules that apply in every criminal case. |
| 00:05:58 | 20 | Then I will explain the elements, or parts, |
| 00:06:01 | 21 | of the crimes that the defendant is accused of |
| 00:06:05 | 22 | committing. |
| 00:06:05 | 23 | Then I will explain some rules that you must |
| 00:06:08 | 24 | use in evaluating particular testimony. |
| 00:06:12 | 25 | And number five, I am not going to give you |

00:06:15  1   that portion about what you do in the jury room.  That

00:06:18  2   comes later.

00:06:22  3          Please listen very carefully to everything I

00:06:24  4   say.  Likewise, be attentive throughout the trial to the

00:06:29  5   testimony and other evidence, statements, and arguments

00:06:32  6   by counsel, and my further instructions.  You cannot

00:06:36  7   anticipate that you will be able to have any portion of

00:06:39  8   the testimony read back to you during deliberations,

00:06:43  9   although the exhibits will be with you in the jury room.

00:06:49  10         Jurors' duties.

00:06:51  11         You have two main duties as jurors.  The

00:06:54  12  first is to decide what the facts are from the evidence

00:06:58  13  that you see and hear in court.  Deciding what the facts

00:07:02  14  are is your job, not mine, and nothing that I have said

00:07:08  15  or done during this trial or will say or do during the

00:07:11  16  trial was or is meant to influence your decision about

00:07:14  17  the facts in any way.

00:07:18  18         Your second duty is to take the law that I

00:07:21  19  give you, apply it to the facts, and decide if the

00:07:25  20  government has proved the defendant guilty beyond a

00:07:28  21  reasonable doubt.  It is my job to instruct you about

00:07:32  22  the law, and you are bound by the oath that you took at

00:07:36  23  the beginning of the trial to follow the instructions

00:07:39  24  that I give you, even if you personally disagree.  This

00:07:45  25  includes the instructions that I give you before and

00:07:47  1   during the trial, and these instructions.  All

00:07:50  2   instructions are important, and you should consider them

00:07:54  3   together as a whole.

00:07:55  4          The lawyers will talk about the law during

00:08:00  5   their opening statements and closing arguments.  If what

00:08:05  6   they say differs from what I say, you must follow what I

00:08:09  7   say about the law.  What I say about the law controls.

00:08:14  8          Perform these duties fairly.  Do not let any

00:08:21  9   bias, sympathy, or prejudice that you may feel toward

00:08:24  10  one side or the other influence your decision in any

00:08:31  11  way.

00:08:31  12         Presumption of innocence, burden of proof,

00:08:36  13  reasonable doubt.

00:08:38  14         As you know, the defendant has pleaded not

00:08:40  15  guilty to the crimes charged in the indictment.  The

00:08:44  16  indictment is not any evidence at all of guilt.  It is

00:08:49  17  just the formal way that the government tells the

00:08:52  18  defendant what crimes he is accused of committing.  It

00:08:56  19  does not even raise any suspicion of guilt.

00:08:59  20         Instead, the defendant starts the trial with

00:09:04  21  a clean slate, with no evidence at all against him, and

00:09:08  22  the law presumes that he is innocent.  This presumption

00:09:13  23  of innocence stays with the defendant unless the

00:09:17  24  government presents evidence here in court that

00:09:19  25  overcomes the presumption, and convinces you beyond a

| | | |
|---|---|---|
| 00:09:24 | 1 | reasonable doubt that he is guilty. |
| 00:09:26 | 2 | This means that the defendant has no |
| 00:09:32 | 3 | obligation to present any evidence at all, or to prove |
| 00:09:35 | 4 | to you in any way that he is innocent.  It is up to the |
| 00:09:38 | 5 | government to prove that he is guilty, and this burden |
| 00:09:41 | 6 | stays on the government from start to finish.  You must |
| 00:09:45 | 7 | find the defendant not guilty unless the government |
| 00:09:49 | 8 | convinces you beyond a reasonable doubt that he is |
| 00:09:53 | 9 | guilty. |
| 00:09:53 | 10 | The government must prove every element of |
| 00:09:57 | 11 | the crimes charged beyond a reasonable doubt.  Proof |
| 00:10:02 | 12 | beyond a reasonable doubt does not mean proof beyond all |
| 00:10:05 | 13 | possible doubt.  Possible doubts or doubts based purely |
| 00:10:10 | 14 | on speculation are not reasonable doubts.  A reasonable |
| 00:10:14 | 15 | doubt is a doubt based on reason and common sense.  It |
| 00:10:19 | 16 | may arise from the evidence, the lack of evidence, or |
| 00:10:23 | 17 | the nature of the evidence. |
| 00:10:25 | 18 | Proof beyond a reasonable doubt means proof |
| 00:10:29 | 19 | which is so convincing that you would not hesitate to |
| 00:10:33 | 20 | rely and act on it in making the most important |
| 00:10:36 | 21 | decisions in your own lives.  If you are convinced that |
| 00:10:40 | 22 | the government has proved the defendant guilty beyond a |
| 00:10:47 | 23 | reasonable doubt, say so by returning a guilty verdict. |
| 00:10:49 | 24 | If you are not convinced, say so by returning a not |
| 00:10:52 | 25 | guilty verdict. |

00:10:56  1          Evidence defined.

00:10:58  2          You must make your decision based only on

00:11:01  3   the evidence that you saw and heard here in court.  Do

00:11:04  4   not let rumors, suspicions, or anything else that you

00:11:08  5   may have seen or heard outside of court influence your

00:11:11  6   decision in any way.

00:11:14  7          The evidence in this case includes only what

00:11:18  8   the witnesses say while they are testifying under oath,

00:11:23  9   the exhibits that I allow into evidence, any

00:11:26  10  stipulations that the lawyers agree to, and the facts

00:11:30  11  that I have judicially noticed, if any.

00:11:33  12          Nothing else is evidence.  The lawyers'

00:11:38  13  statements and arguments are not evidence.  Their

00:11:41  14  questions and objections are not evidence.  It is the

00:11:45  15  answers to those questions that are evidence.  My legal

00:12:03  16  rulings are not evidence, and any comments by me and

00:12:06  17  questions by me are not evidence.

00:12:10  18          During the trial I will not let you hear the

00:12:13  19  answers to some of the questions that the lawyers ask.

00:12:17  20  I will also rule from time to time that you could not

00:12:19  21  see some of the exhibits that the lawyers wanted you to

00:12:22  22  see -- or at least I may do so.  Sometimes I may order

00:12:27  23  you to disregard things that you saw or heard, orally

00:12:30  24  strike things from the record.  You must completely

00:12:33  25  ignore all of these things.  Do not even think about

00:12:37  1   them.  Do not speculate about what a witness might have

00:12:41  2   said or what an exhibit might have shown.  These things

00:12:45  3   are not evidence, and you are bound by your oath not to

00:12:48  4   let them influence your decision in any way.  Make your

00:12:53  5   decision based only on the evidence, as I have and will

00:12:57  6   define it here, and nothing else.

00:13:05  7            Consideration of the evidence.  You should

00:13:08  8   use your common sense in weighing the evidence.

00:13:10  9   Consider it in light of your everyday experience with

00:13:12  10  people and events, and give it whatever weight you

00:13:15  11  believe it deserves.  If your experience tells you that

00:13:19  12  certain evidence reasonably leads to a conclusion, you

00:13:23  13  are free to reach that conclusion.

00:13:29  14            Direct and circumstantial evidence.

00:13:32  15            You may have heard the terms "direct

00:13:34  16  evidence" and "circumstantial evidence."

00:13:37  17            Direct evidence is simply evidence like the

00:13:40  18  testimony of an eyewitness which, if you believe it,

00:13:44  19  directly proves a fact.  If a witness testified that he

00:13:49  20  saw it raining outside, and you believed him, that would

00:13:53  21  be direct evidence that it was raining.

00:13:57  22            Circumstantial evidence is simply a chain of

00:14:02  23  circumstances that indirectly proves a fact.  If someone

00:14:07  24  walked into the courtroom wearing a raincoat covered

00:14:10  25  with drops of water and carrying a wet umbrella, that

00:14:14  1  would be circumstantial evidence from which you could

00:14:17  2  conclude that it was raining.

00:14:21  3        It is your job to decide how much weight to

00:14:24  4  give the direct and circumstantial evidence.  The law

00:14:27  5  makes no distinction between the weight that you should

00:14:30  6  give to either one, or say that one is any better

00:14:33  7  evidence than the other.  You should consider all the

00:14:36  8  evidence, both direct and circumstantial, and give it

00:14:40  9  whatever weight you believe it deserves.

00:14:45  10        Another part of your job as jurors is to

00:14:50  11  decide how credible or believable each witness was.

00:14:56  12  This is your job, not mine.  It is up to you to decide

00:15:01  13  if a witness' testimony was believable, and how much

00:15:06  14  weight you think it deserves.  You are free to believe

00:15:09  15  everything that a witness said, or only part of it, or

00:15:13  16  none of it at all.  But you should act reasonably and

00:15:16  17  carefully in making these decisions.

00:15:20  18        Let me suggest some things for you to

00:15:22  19  consider in evaluating each witness' testimony.

00:15:26  20        Ask yourselves if the witness was able to

00:15:30  21  clearly see or hear the events.  Sometimes even an

00:15:34  22  honest witness may not have been able to see or hear

00:15:37  23  what was happening, and may make a mistake.

00:15:41  24        Ask yourself how good the witness' memory

00:15:45  25  seemed to be.  Did the witness seem able to accurately

00:15:49  1   remember what happened?

00:15:51  2   Ask yourself if there was anything else that

00:15:55  3   may have interfered with the witness' ability to

00:15:58  4   perceive or remember the events.

00:16:01  5   Ask yourself how the witness acted while

00:16:04  6   testifying.  Did the witness appear honest?  Or did the

00:16:08  7   witness appear to be lying?

00:16:11  8   Ask yourself if the witness had any

00:16:14  9   relationship to the government or the defendant, or

00:16:17  10  anything to gain or lose from the case, that might

00:16:21  11  influence the witness' testimony.  Ask yourself if the

00:16:25  12  witness had any bias, or prejudice, or reason for

00:16:29  13  testifying that might cause the witness to lie or to

00:16:33  14  slant the testimony in favor of one side or the other.

00:16:41  15  Ask yourself if the witness testified inconsistently

00:16:45  16  while on the witness stand, or if the witness said or

00:16:48  17  did something or failed to say or do something at any

00:16:51  18  other time that is inconsistent with what the witness

00:16:54  19  said while testifying.  If you believe that the witness

00:16:59  20  was inconsistent, ask yourself if this makes the

00:17:02  21  witness' testimony less believable.  Sometimes it may;

00:17:07  22  other times it may not.  Consider whether the

00:17:10  23  inconsistency was about something important, or about

00:17:15  24  some unimportant detail.  Ask yourself if it seemed like

00:17:20  25  an innocent mistake, or if it seemed deliberate.

1    And ask yourself how believable the witness'

2  testimony was in light of all the other evidence.  Was

3  the witness' testimony supported or contradicted by

4  other evidence that you found believable?  If you

5  believe that a witness' testimony was contradicted by

6  other evidence, remember that people sometimes forget

7  things, and that even two honest people who witness the

8  same event may not describe it in exactly the same way.

9    These are only some of the things that you

10  may consider in deciding how believable each witness

11  was.  You may also consider other things that you think

12  shed some light on the witness' believability.  Use your

13  common sense and your everyday experience in dealing

14  with other people, and then decide what testimony you

15  believe, and how much weight you think it deserves.

16    Number of witnesses.

17    One more point about the witnesses.

18  Sometimes jurors wonder if the number of witnesses who

19  testified makes any difference.

20    Do not make any decision based only on the

21  number of witnesses who testified.  What is more

22  important is how believable the witnesses were, and how

23  much weight you think their testimony deserves.

24  Concentrate on that, and not on the number.

25    Lawyers' objections.

00:18:55  1      There is one more general subject that I

00:18:57  2  want to talk to you about before I begin explaining the

00:19:00  3  elements of the crimes charged.

00:19:02  4      The lawyers on both sides may object to some

00:19:05  5  of the things that were said or done during the trial.

00:19:09  6  Do not hold that against either side.  The lawyers have

00:19:12  7  a duty to object whenever they think that something is

00:19:16  8  not permitted by the Rules of Evidence.  Those rules are

00:19:19  9  designed to make sure that both sides receive a fair

00:19:23  10 trial.

00:19:23  11     And do not interpret my rulings on their

00:19:27  12 objections as any indication of how I think the case

00:19:30  13 should be decided.  My rulings will be based on the

00:19:34  14 Rules of Evidence, not on how I feel about the case.

00:19:39  15 Remember that your decision must be based only on the

00:19:42  16 evidence that you saw and heard here in court.

00:19:49  17     Defining the crime and related matters:

00:19:57  18 Introduction.

00:19:58  19     That concludes the part of my instructions

00:20:01  20 explaining your duties and the general rules that apply

00:20:04  21 in every criminal case.  In a moment, I will explain the

00:20:07  22 elements of the crimes that the defendant is accused of

00:20:09  23 committing.

00:20:10  24     But before I do so, I want to emphasize that

00:20:13  25 the defendant is on trial for only the particular crimes

00:20:16   1    charged in the indictment.  Your job is limited to

00:20:19   2    deciding whether the government has proved each crime

00:20:22   3    charged -- any or each of the crimes charged.

00:20:28   4            Separate consideration, single defendant

00:20:32   5    charged with multiple crimes.

00:20:35   6            Mr. Cook has been charged with three crimes.

00:20:43   7    The number of charges is not evidence of guilt, and this

00:20:46   8    should not influence your decision in any way.  It is

00:20:49   9    your duty to separately consider the evidence that

00:20:52  10    relates to each charge, and to return a separate verdict

00:20:56  11    for each one.  For each charge, you must decide whether

00:21:01  12    the government has presented proof beyond a reasonable

00:21:03  13    doubt that Mr. Cook is guilty of that particular charge.

00:21:08  14            Your decision on one charge, whether it is

00:21:12  15    guilty or not guilty, should not influence your decision

00:21:14  16    on any other charge.

00:21:16  17            On or about.  Next I want to say a word

00:21:26  18    about the dates mentioned in the indictment.

00:21:28  19            Count 1 of the indictment charges that the

00:21:31  20    crime happened from in or about May 2010 and continuing

00:21:40  21    until on or about September 5, 2010.

00:21:44  22            Count 2 of the indictment charges the crime

00:21:47  23    happened on or about June 22, 2010.

00:21:50  24            Count 3 of the indictment charges that the

00:21:52  25    crime happened on or about September 15, 2010.

00:21:57  1    The government does not have to prove that

00:22:01  2 the crimes happened on those exact dates.  But the

00:22:04  3 government must prove that the crimes happened

00:22:07  4 reasonably close to those dates inferring required

00:22:14  5 mental state.

00:22:19  6    Next I want to explain about proving a

00:22:25  7 defendant's state of mind.

00:22:26  8    Ordinarily, there is no way that a

00:22:29  9 defendant's state of mind can be proved directly,

00:22:32  10 because no one can read another person's mind and tell

00:22:36  11 what that person is thinking.

00:22:37  12    But a defendant's state of mind can be

00:22:39  13 proved indirectly from the surrounding circumstances.

00:22:43  14 This includes things like what the defendant said, what

00:22:47  15 the defendant did, how the defendant acted, and any

00:22:51  16 other facts or circumstances in evidence to show what

00:22:55  17 was in the defendant's mind.

00:22:58  18    You may also consider the natural and

00:23:01  19 probable results of any acts that the defendant

00:23:05  20 knowingly did or did not do and whether it's reasonable

00:23:09  21 to conclude that the defendant intended those results.

00:23:13  22 This, of course, is all for you to decide.  It is up to

00:23:17  23 you to decide what facts to find from the evidence

00:23:21  24 received during the trial.

00:23:26  25    The charges set forth in the indictment.

00:23:31   1           The defendant, Alex D. Cook, is charged with

00:23:37   2   one count of receipt of visual depiction of minors

00:23:41   3   engaged in sexually explicit conduct, in violation of

00:23:45   4   Title 18, United States Code, Section 2252(a)(2); one

00:23:50   5   count of distribution of child pornography, in violation

00:23:55   6   of Title 18, United States Code, Section 2252(a)(2); and

00:23:59   7   one count of possession of child pornography, in

00:24:01   8   violation of Title 18, United States Code, Section

00:24:04   9   2252(a)(4)(B).

00:24:08   10           Ladies and gentlemen, I should mention, it's

00:24:11   11   not my practice to read the indictment or have it go to

00:24:14   12   the jury.  Rather, you can comment on the elements

00:24:18   13   during the course of the case and your arguments.

00:24:20   14           Please turn to page 19.

00:24:30   15           Charging statute, receiving and distributing

00:24:33   16   materials involving sexual exploitation of minors,

00:24:37   17   Section 2252(a)(2).  The statute which is alleged to

00:24:43   18   have been violated in Counts 1 and 2 is Title 18, United

00:24:47   19   States Code, Section 2252(a)(2).  As is relevant here,

00:24:51   20   that statute provides that: Subsection (a), a person

00:24:56   21   who, subsection (2), knowingly receives, or distributes

00:25:01   22   any visual depiction that has been mailed, or has been

00:25:04   23   shipped or transported in interstate or foreign

00:25:08   24   commerce.

00:25:08   25           The producing of said visual depiction

00:25:12  1  involves the use of a minor engaging in sexually

00:25:16  2  explicit conduct; and

00:25:17  3        (B) such visual depiction of such conduct

00:25:21  4  shall be guilty of a criminal offense against the United

00:25:28  5  States.

00:25:28  6       Elements of the offense, receiving and

00:25:31  7  distributing material involving sexual exploitation of

00:25:35  8  minors, 18 U.S. Code Section 2252(a)(2).

00:25:40  9       Title 18, United States Code, Section

00:25:42  10  2252(a)(2) makes it a federal crime or offense for any

00:25:47  11  person to knowingly receive or distribute any visual

00:25:51  12  depiction that has been shipped or transported in

00:25:54  13  interstate or foreign commerce by any means, including

00:25:58  14  by computer, if the production of such visual depiction

00:26:03  15  involved the use of a real minor engaging in sexually

00:26:07  16  explicit conduct and the visual depiction is of such

00:26:11  17  conduct.

00:26:11  18       Mr. Cook can be found guilty of that offense

00:26:15  19  only if all the following elements are proved beyond a

00:26:18  20  reasonable doubt:

00:26:18  21       First, that Mr. Cook knowingly received or

00:26:24  22  distributed a visual depiction.

00:26:25  23       Second, that such visual depiction was

00:26:30  24  shipped or transported in interstate or foreign commerce

00:26:32  25  by any means, including by computer.

00:26:35  1            Third, that the production of such visual
00:26:38  2   depiction involved the use of a real minor engaging in
00:26:42  3   sexually explicit conduct.
00:26:44  4            Fourth, that such visual depiction is of a
00:26:48  5   minor engaging in sexually explicit conduct; and
00:26:53  6            Fifth, that Mr. Cook knew that at least one
00:26:57  7   of the individuals in such visual depiction was a minor
00:27:01  8   and knew that the visual depiction was of such minor
00:27:05  9   engaging in sexually explicit conduct.
00:27:08  10           Now I will give you more detailed
00:27:10  11  instructions on some of these terms.
00:27:13  12           To receive a visual depiction means to take
00:27:18  13  possession of it.  This includes the knowing acceptance
00:27:21  14  of a depiction previously requested.
00:27:24  15           Receiving includes the downloading of a
00:27:27  16  photograph or video by means of the internet.
00:27:32  17           To distribute means to disseminate or
00:27:34  18  transfer possession to another person.
00:27:36  19           A "visual depiction" includes any
00:27:40  20  photograph, film, video or picture, including
00:27:43  21  undeveloped film and videotape, and data stored on
00:27:49  22  computer, disk, or by electronic means which is capable
00:27:52  23  of conversion into a visual image.
00:27:57  24           The government must prove that the defendant
00:28:00  25  received or distributed the depiction knowingly.  An act

00:28:04  1   is done knowingly when it is done voluntarily and

00:28:07  2   intentionally and not because of accident, mistake, or

00:28:11  3   some other innocent reason.

00:28:12  4          The term "computer" means electronic,

00:28:18  5   magnetic, optical, electrochemical, or other high speed

00:28:23  6   data processing device performing logical, arithmetic,

00:28:29  7   or storage functions, and includes any data storage

00:28:34  8   facility or communications facility related to or

00:28:38  9   operating in conjunction with such device, but such term

00:28:42  10  does not include an automated typewriter or typesetter,

00:28:46  11  or portable handheld calculator or other similar device.

00:28:54  12          Minor and sexually explicit conduct defined.

00:28:59  13          The term "minor" means any person under the

00:29:02  14  age of 18 years.

00:29:04  15          "Sexually explicit conduct" means actual or

00:29:08  16  simulated.

00:29:10  17          Sexual intercourse, including

00:29:13  18  genital-to-genital, oral-genital, anal-genital, or

00:29:17  19  oral-anal, whether between persons of the same or

00:29:20  20  opposite sex.

00:29:21  21              bestiality;

00:29:24  22              masturbation;

00:29:25  23              sadistic or masochistic abuse; or

00:29:29  24              lascivious exhibition of the genitals or

00:29:33  25  pubic area of any person.

The government must prove that the pornographic images in this case depicted real children under the age of 18 years.  You may rely on your observations and judgments in evaluating the images to determine whether they depict real children under the age of 18 years.

The government need not present expert or other testimony on whether the children are, in fact, real children as opposed to, say, youthful adults or computer-generated images of children.

The government also need not present expert or other testimony on the ages of the children depicted.  Rather, the government may meet its burden of proving the pornographic images depict real children under the age of 18 years by presenting the images to you and allowing you to evaluate the images for yourselves.

Lascivious exhibition - defined.

Not every exposure to the genitals or pubic area constitutes lascivious exhibition.  Whether a picture or image of the genitals or pubic area constitutes such lascivious exhibit requires consideration of the overall content of the material.  It is for you to decide the weight or lack of weight to be given to any of the following factors:

You may consider such factors as:

00:31:10  1          whether the focal point of the picture or

00:31:13  2  image is on the child's genitals or pubic area;

00:31:16  3          whether the setting of the picture or image

00:31:19  4  is sexually suggestive, that is, in a place or pose

00:31:22  5  generally associated with sexual activity;

00:31:24  6          whether the child is depicted in an

00:31:26  7  unnatural pose or inappropriate attire, considering the

00:31:29  8  age of the minor;

00:31:31  9          whether the child is fully or partially

00:31:33  10  clothed, or nude;

00:31:35  11          whether the picture or image suggests sexual

00:31:40  12  coyness or a willingness to engage in sexual activity;

00:31:43  13  and

00:31:44  14          whether the picture or image is intended or

00:31:47  15  designed to elicit a sexual response in the viewer.

00:31:51  16          Of course, a visual depiction or image need

00:31:55  17  not involve all of these factors to constitute a

00:31:59  18  lascivious exhibition of the genitals or pubic area.

00:32:08  19          Interstate commerce.

00:32:11  20          The term "interstate or foreign commerce"

00:32:15  21  means that the movement of property from one state to

00:32:18  22  another state, or from one state to another country, or

00:32:21  23  from another country to a state.  The term "state"

00:32:25  24  includes a state of the United States, the district of

00:32:28  25  Columbia, and any commonwealth, territory, or possession

00:32:33  1   of the United States.

00:32:34  2          The phrase "transported in interstate or

00:32:37  3   foreign commerce" means that the visual depiction or

00:32:41  4   image, at any time, traveled or moved between one state

00:32:46  5   and another state, or between a foreign country and a

00:32:50  6   state.  Evidence that an image was produced in a state

00:32:55  7   other than Ohio, or in a foreign country, is sufficient

00:32:59  8   to prove that the visual depiction or image has been

00:33:02  9   transported in interstate commerce or foreign commerce.

00:33:07  10         Evidence that a visual depiction or image

00:33:11  11  was transmitted or received electronically by a computer

00:33:15  12  connected to the internet is sufficient to establish

00:33:19  13  that the visual depiction or image was transported or

00:33:23  14  moved in interstate or foreign commerce.  It is for you

00:33:27  15  to determine if the material containing the visual

00:33:30  16  depiction has been transmitted or received over the

00:33:34  17  internet or was produced using materials that had been

00:33:38  18  transmitted or received over the internet.

00:33:42  19         It is not necessary for the government to

00:33:44  20  prove that the defendant transported the material

00:33:47  21  containing the visual depiction in interstate or foreign

00:33:50  22  commerce.  It is not necessary for the government to

00:33:53  23  prove that the defendant knew that the material

00:33:57  24  containing the visual depiction had moved in interstate

00:34:01  25  or foreign commerce.  It is sufficient that the

00:34:05  1  government prove that at some point the material

00:34:09  2  containing the visual depiction traveled in interstate

00:34:14  3  or foreign commerce.

00:34:20  4          The essential element, Section 2252(a)(4)(B)

00:34:27  5  defined.

00:34:29  6          Charge.  The defendant, Alex D. Cook, is

00:34:32  7  charged in Count 3 of the indictment with possession of

00:34:37  8  child pornography in violation of Title 18, United

00:34:39  9  States Code, Section 2252(a)(4)(B).  In order for the

00:34:43  10  defendant to be found guilty of that charge, the

00:34:46  11  government must prove each of the following elements

00:34:48  12  beyond a reasonable doubt.

00:34:49  13          First, that the defendant knowingly

00:34:51  14  possessed photographs, computer files -- excuse me, that

00:34:58  15  the defendant knowingly possessed photographic computer

00:35:01  16  files which the defendant knew contained visual

00:35:04  17  depictions of real minors engaged in sexually explicit

00:35:08  18  conduct;

00:35:09  19          Second, the defendant knew the visual

00:35:14  20  depictions contained in the photographic computer image

00:35:17  21  files shows minors engaged in sexually explicit conduct;

00:35:22  22          Third, the defendant knew that production of

00:35:25  23  such visual depictions involved the use of a minor in

00:35:29  24  sexually explicit conduct; and

00:35:32  25          Fourth, that the visual depictions had been

either:

               mailed, shipped or transported in interstate or foreign commerce, or

               produced using material that had been mailed, shipped or transported in interstate or foreign commerce by computer or other means.

               I have already defined for you the terms "visual depiction," "minor," "knowingly," and "sexually explicit conduct." During your deliberations you refer to those instructions.

               Producing means producing, direction, manufacturing, issuing, publishing, or advertising.

               Possession.

               Next, I want to explain something about possession. The government does not necessarily have to prove that the defendant physically possessed the child pornography for you to find him guilty of this crime. The law recognizes two kinds of possession -- actual possession and constructive possession. Either one of these, if proved by the government, is enough for you to convict.

               To establish actual possession, the government must prove that the defendant had direct physical control over the child pornography, and knew that he had control of it. In other words, I have

00:37:04  1  actual possession of my pen, even though I'm not

00:37:08  2  touching it.  I have physical control of the pen, the

00:37:12  3  water pitcher, and so forth.

00:37:15  4           To establish constructive possession, the

00:37:18  5  government must prove that the defendant has the right

00:37:22  6  to exercise physical control over the child pornography

00:37:25  7  and knew that he had this right, and that he intended to

00:37:29  8  exercise physical control over the child pornography at

00:37:33  9  some time, either directly or through some other

00:37:37  10 persons.

00:37:39  11          For example, if you left something with a

00:37:41  12 friend intending to come back later and pick it up, or

00:37:45  13 intending to send someone else to pick it up for you,

00:37:47  14 you would have constructive possession of it while it

00:37:51  15 was in the actual possession of your friend.

00:37:56  16          Another example, presently I have

00:37:58  17 constructive possession of everything in my office,

00:38:01  18 everything at home.  My automobile, whatever is in it.

00:38:06  19 I am not physically with it, but I have constructive

00:38:09  20 possession.  I can exercise control over it.

00:38:14  21          But understand just being present where

00:38:19  22 something is located does not equal possession.  The

00:38:22  23 government must prove that the defendant had actual or

00:38:25  24 constructive possession of the child pornography, and

00:38:29  25 knew that he did, for you to find him guilty of this

00:38:33 1  crime.  That is, of course, for you to decide.

00:38:41 2          The final instruction I will read you this

00:38:43 3  afternoon, the First Amendment does not protect child

00:38:46 4  pornography.  You are instructed that the First

00:38:48 5  Amendment of the United States Constitution does not

00:38:51 6  protect visual depictions of a minor engaged in sexually

00:38:55 7  explicit conduct as charged in the indictment.

00:38:58 8          That will end the reading of the initial

00:39:00 9  instructions.

00:39:01 10          Amy, if you'll pick up the -- any changes or

00:39:07 11 corrections, Mr. Secor?

00:39:09 12          MR. SECOR:  No, Your Honor.

00:39:10 13          MS. KELLEY:  None, Your Honor.

00:39:51 14          Ladies and gentlemen, we will now begin the

00:39:54 15 presentation of the case.  And that involves separate

00:40:06 16 events.  We start first with the opening statements of

00:40:11 17 counsel.  And we will have the actual presentation of

00:40:17 18 testimony.  Then I will once again charge you with my

00:40:19 19 final instructions.  Then we will have the closing

00:40:23 20 arguments of counsel, and the case will be in your hands

00:40:27 21 for deliberation.

00:40:29 22          I believe I mentioned, if I forgot to do so,

00:40:33 23 I will do so now, two of you will wind up being removed

00:40:39 24 from the jury at that time, assuming there are still 14

00:40:43 25 of you left.  And that designation will occur at the end

00:40:48  1   of the trial.  So all of you should listen very

00:40:50  2   carefully during the course of the trial to everything

00:40:54  3   that occurs.

00:40:57  4        A couple of other matters that I want to

00:41:00  5   mention to you.  You've been given notebooks.  You can

00:41:03  6   use those notebooks, whatever use and purpose you want

00:41:06  7   to put them to.  I will be up here taking notes on my

00:41:09  8   computer.  That's how I am able to follow along and best

00:41:15  9   recall what I heard and saw.  And you can do likewise in

00:41:20  10  your notebooks or, if it's easier and more effective for

00:41:24  11  you simply to listen without taking notes individually,

00:41:28  12  that's entirely up to you.

00:41:30  13       You will have your notebooks with you back

00:41:33  14  in the jury room.  And you can consult them and use them

00:41:37  15  for any use and purpose you want to help recall the

00:41:41  16  evidence and the testimony.

00:41:43  17       A couple of things about notes, though.

00:41:45  18  First of all, you should not rely upon the one or two of

00:41:53  19  you who seem to have taken the best or most

00:41:56  20  comprehensive or comprehensible set of notes.  It's up

00:42:00  21  to you each individually to listen carefully and to then

00:42:04  22  recall the testimony and evidence as you understood it

00:42:07  23  as it came in.  As I say, I already indicated that

00:42:12  24  reading back the testimony is a very unusual occurrence.

00:42:17  25  Sometimes in great big long multi-week, multi-month

| | | |
|---|---|---|
| 00:42:21 | 1 | trials, a judge may permit that to happen.  That's why |
| 00:42:26 | 2 | we have notebooks.  You have to take notes as we go |
| 00:42:30 | 3 | along.  Why do I generally not permit the reading back |
| 00:42:32 | 4 | of testimony even when asked to do so?  That is because |
| 00:42:36 | 5 | the risk would be very great that you would emphasize |
| 00:42:39 | 6 | that particular testimony, having heard it more than |
| 00:42:43 | 7 | once.  It's very important that you listen carefully all |
| 00:42:47 | 8 | along the way and not simply assume that you don't have |
| 00:42:51 | 9 | to pay too much attention now because when the time |
| 00:42:54 | 10 | comes for deliberations, we can have you back out here |
| 00:42:58 | 11 | rereading big or small chunks of testimony.  It's your |
| 00:43:05 | 12 | duty to pay close and careful attention. |
| 00:43:07 | 13 | I mentioned earlier if you get sleepy or you |
| 00:43:10 | 14 | find your mind wandering, say, Judge, can we take a |
| 00:43:15 | 15 | short break?  As I say to people, the hardest part of my |
| 00:43:20 | 16 | job is 2:00, 2:15, after lunch.  I sometimes get sleepy. |
| 00:43:24 | 17 | So may you.  If you find yourself with your mind |
| 00:43:27 | 18 | wondering, interrupt.  Take a quick break.  No problem |
| 00:43:30 | 19 | with that at all.  It's very important that you hear and |
| 00:43:32 | 20 | attend to all the testimony and evidence as it comes |
| 00:43:35 | 21 | before you in the courtroom. |
| 00:43:41 | 22 | Many of you indicated you're on Facebook or |
| 00:43:44 | 23 | on Twitter or other kind of social media.  You cannot |
| 00:43:47 | 24 | consult anything outside the courtroom.  You cannot go |
| 00:43:53 | 25 | to a dictionary or encyclopedia.  You cannot go online |

00:44:00  1  to look up anything that would have anything to do with

00:44:03  2  the trial.  Once in a while there are instances where

00:44:07  3  jurors have been found texting or Twittering or whatever

00:44:11  4  even in the courtroom.  You cannot do that.  Any kind of

00:44:14  5  communication -- it may seem like idle gossip; I'm in

00:44:21  6  federal court; it's a pretty room; the lawyers are nice,

00:44:25  7  see you later.  Not even that.  It's prohibited.  When

00:44:31  8  you leave in the afternoon to go home, don't talk about

00:44:34  9  the case at home.  When you go home tonight, some of you

00:44:37  10  have family here, so they understand, but when you go

00:44:40  11  home tonight, unquestionably whoever is there is going

00:44:45  12  to say, Well, what's it like?  I think only one of you

00:44:50  13  was on a jury before.  Maybe none of you.  So the

00:44:53  14  temptation, the impulse to talk about this new

00:44:56  15  experience, this case that's going to be in your hands

00:44:59  16  for decision is going to be very great.  Understandably

00:45:03  17  great.  My wife is always asking me what I did in court.

00:45:07  18  And you simply have to say -- you absolutely have to

00:45:10  19  say, I cannot talk about the case.  And those of you who

00:45:14  20  will be riding home together, understand, don't ask

00:45:17  21  about the case; don't talk about the case.  When you

00:45:21  22  gather together in the jury room, either awaiting the

00:45:24  23  beginning of trial, during a break, or at lunchtime, or

00:45:28  24  whatever, don't talk about the case.  It would really --

00:45:31  25  you would but letting your fellow jurors down.  You

00:45:34  1   would be letting the lawyers and their clients down.

00:45:38  2   You'd be letting each other down.  Because as I say,

00:45:44  3   you're going to start making your mind up if you start

00:45:47  4   talking about the case.  And you can't do that.  You

00:45:49  5   have to keep an open mind.  I know that's unnatural.  It

00:45:53  6   seems odd and counterintuitive.

00:46:02  7            It's assuring each of these parties to

00:46:06  8   what's so important; they receive a fair trial and

00:46:10  9   consideration to which they're entitled and to which

00:46:13  10  every citizen is entitled whenever someone stands

00:46:16  11  charged with a crime.  You would want no more if you

00:46:22  12  were sitting at one of these tables.  And I expect that

00:46:25  13  you will do exactly that as I've indicated.

00:46:30  14           In a moment Mr. Secor or Mr. Crawford -- who

00:46:32  15  will be presenting opening statement?

00:46:34  16           MR. SECOR:  Mr. Crawford.

00:46:35  17           THE COURT:  In a moment Mr. Crawford will

00:46:36  18  present the government's opening statement.  The opening

00:46:39  19  statement is simply the introduction to you of what the

00:46:43  20  government believes its evidence will be and what it may

00:46:47  21  show.  It's not a closing argument.  It's not intended

00:46:50  22  to persuade you.  It's simply to lay out for you the --

00:46:55  23  where the government's going to be headed and to

00:46:57  24  introduce you to some of the government's witnesses and

00:46:59  25  some of the testimony and exhibits that you're likely to

00:47:03  1   receive.  You can make notes or whatever during this or

00:47:07  2   anytime during the trial.  But it's to acquaint you with

00:47:10  3   what the government expects the evidence will be.

00:47:13  4         Sometimes witnesses don't appear for

00:47:15  5   whatever reason.  They may not be called for whatever

00:47:18  6   reason.  And, in fact, sometimes evidence that's

00:47:20  7   mentioned in opening statement, in fact, isn't produced.

00:47:24  8   In which case, nothing that you hear in opening

00:47:28  9   statement is evidence, whether the evidence/witnesses

00:47:36  10  come before you or not.  The opening statement is not

00:47:38  11  evidence.  It's a discussion of what the government

00:47:41  12  thinks the evidence will be.  The evidence is what you

00:47:43  13  hear from the witnesses who testify here in front of

00:47:46  14  you, the exhibits that you see, and other matters that

00:47:50  15  are permitted to come to your attention during the

00:47:52  16  course of the trial.  The opening statements are not

00:47:54  17  evidence.

00:47:56  18        Likewise, Ms. Kelley will give her opening

00:47:58  19  statement of the defendant.  It too is not evidence.  It

00:48:02  20  is simply her expectation of what the evidence will be,

00:48:08  21  who the witnesses may be and what the testimony will be.

00:48:11  22  If it turns out to be otherwise than either the

00:48:15  23  government or Ms. Kelley present, don't hold that

00:48:18  24  against them.  Sometimes things happen.  Don't

00:48:21  25  speculate, well, gee, I thought we were going to hear

00:48:24  1    from Mr. Tom Smith.  We didn't.  You didn't; therefore,

00:48:31  2    you can't consider anything about what Mr. Smith or what

00:48:33  3    his evidence might have been, even though you might have

00:48:36  4    been told about it in opening statement.  You can't

00:48:39  5    consider it if Mr. Smith doesn't appear here in court

00:48:41  6    and doesn't give testimony.  Only that is evidence.

00:48:47  7               Mr. Crawford, you may begin.

00:48:50  8               MR. SECOR:  Your Honor, may I make a motion

00:48:52  9    for separation of witnesses?

00:48:54  10              THE COURT:  Sure.

00:48:56  11              MR. SECOR:  Request my special agent be

00:48:59  12   allowed in the room.

00:49:00  13              THE COURT:  No problem.  I'll leave it up to

00:49:03  14   each of you to police that.  That means anybody being

00:49:09  15   called as a witness has to wait outside until they

00:49:13  16   testify.  That's to make sure each witness presents

00:49:17  17   their testimony unaffected by the evidence that may have

00:49:19  18   appeared during the trial.  The government is entitled

00:49:21  19   to have a special agent with it as the government's

00:49:25  20   representative, just as, of course, Mr. Cook has the

00:49:28  21   absolute right to attend all phases of the trial.

00:49:31  22              Thank you, Mr. Secor.

00:49:32  23              Now, Mr. Crawford.

00:49:39  24              MR. CRAWFORD:  Ladies and gentlemen, this is

00:49:40  25   a case about Mr. Cook, the defendant, and his use of his

00:49:45  1   personal computer and the internet to receive,

00:49:48  2   distribute, and possess child pornography.  As the Court

00:49:51  3   indicated to you, child pornography is that pornography

00:49:58  4   which is made and depicts children in sexually explicit

00:50:02  5   activity.

00:50:03  6            In the next days you will hear all of the

00:50:06  7   evidence substantiating those charges the Court

00:50:08  8   mentioned to you.  Investigating this case is the FBI.

00:50:11  9   You'll hear testimony from the FBI agent in Oklahoma who

00:50:15  10  will tell you how the FBI located Mr. Cook.  This agent

00:50:21  11  engaged in something called an undercover session, which

00:50:24  12  he'll explain to you, in which he uses a computer to

00:50:27  13  search the internet for those who possess child

00:50:31  14  pornography and are willing to share with others.

00:50:33  15           In this particular case the FBI used a

00:50:35  16  program called LimeWire.  It's publicly available.

00:50:39  17  People can download it, use it for free.  And it's

00:50:42  18  called a file sharing program.  And what it allows the

00:50:45  19  user to do is to see what all the other LimeWire users

00:50:49  20  on the network have in their computers, what sorts of

00:50:54  21  files they want to share.  It's often used for sharing

00:50:57  22  music, concert videos, pictures, adult pornography,

00:51:05  23  child pornography.  This FBI agent used LimeWire to

00:51:09  24  search for child pornography, and he found something.

00:51:12  25  When he found that child pornography, he was able to

00:51:15   1   determine it was coming from a certain IP address.  An

00:51:18   2   IP address is called an internet protocol address, like

00:51:22   3   a street address for the internet.  After a little more

00:51:25   4   investigation he determined that the person using that

00:51:29   5   IP address and sharing that pornography, he determined

00:51:33   6   that was linked to a Time Warner internet user account

00:51:37   7   linked with Mr. Cook.

00:51:40   8          That Oklahoma FBI agent sent it to the FBI

00:51:44   9   agents in Lima.  Those agents did their investigation,

00:51:47  10   located Mr. Cook, learned a little about him.  Learned

00:51:50  11   that he was a student at the University of Northwest

00:51:52  12   Ohio, he lived at 1216 Knollwood in Lima.  Served a

00:51:58  13   search warrant.  Sure enough, Mr. Cook had a computer.

00:52:03  14          Mr. Cook accompanied the agents down to the

00:52:06  15   Lima FBI office.  There he gave statement.  In that

00:52:08  16   statement he admitted to downloading child pornography

00:52:11  17   from the internet along with a number of other

00:52:14  18   incriminating evidence.

00:52:15  19          You'll hear the FBI agent that took those

00:52:17  20   statements from Mr. Cook.  And he will describe the two.

00:52:21  21   As I mentioned, the FBI agents also seized Mr. Cook's

00:52:24  22   computer from his apartment and they turned that

00:52:26  23   computer over to Toledo Police detectives in the

00:52:31  24   computer crime section.  And those Toledo detectives

00:52:34  25   engaged in a very careful process called computer

00:52:37  1  forensic analysis where they looked at Mr. Cook's

00:52:41  2  computer, determined what was on it.  Sure enough,

00:52:43  3  there's child pornography on that computer.  And the

00:52:46  4  detective will come in; he will explain that process to

00:52:48  5  you.

00:52:52  6          Beyond that, ladies and gentlemen, I want to

00:52:53  7  say something to you briefly about the concept of

00:52:56  8  knowledge.  The Judge instructed you on the elements of

00:52:58  9  the crime, and what Mr. Cook knew or maybe didn't know

00:53:04  10  during the time that all this was happening may play a

00:53:08  11  role in your deliberations.  It's important for you to

00:53:10  12  understand -- well, for example, elements of the crime,

00:53:14  13  whether or not Mr. Cook knew that he was receiving or

00:53:17  14  distributing child pornography, whether he knew he

00:53:20  15  possessed it, whether he knew that pornography actually

00:53:24  16  depicted children in sexually explicit conduct.

00:53:28  17          Well, as the Judge explained to you, there's

00:53:30  18  not going to be any direct evidence of knowledge because

00:53:33  19  no one can sit on the stand and say, I've looked in Mr.

00:53:37  20  Cook's head, and tell you what he knew.  That doesn't

00:53:39  21  mean you can't make judgments and decisions about what

00:53:42  22  other people knew.  As the Judge explained, once you

00:53:44  23  listen carefully to the evidence, it can suggest what

00:53:47  24  Mr. Cook knew.  What did he say?  What did he say to

00:53:49  25  the FBI agent at the FBI Lima office?  What about his

00:53:53  1  computer would suggest what he knew or didn't know at

00:53:57  2  the time these actions are taking place?

00:54:03  3          And, ladies and gentlemen, I believe at the

00:54:04  4  end of this process we'll come back for closing

00:54:08  5  arguments, and we'll have heard all of the evidence.  We

00:54:10  6  will ask you to return a verdict that we believe is

00:54:13  7  appropriate, and that is a verdict of guilt.  Thank you.

00:54:16  8          THE COURT:  Ms. Kelley.

00:54:17  9          MS. KELLEY:  Good afternoon.  If you had

00:54:25  10  listened to Mr. Crawford's opening statement, you might

00:54:28  11  wonder, well, why on earth are we here?   After all,

00:54:34  12  Alex's computer was found to have these materials on it,

00:54:38  13  and we're told he made a confession.

00:54:44  14          Well, ladies and gentlemen, during the

00:54:46  15  course of this trial the evidence and the testimony will

00:54:51  16  show that Alex did not knowingly put those items on his

00:54:57  17  computer.  And just as importantly, the testimony and

00:55:01  18  the evidence will show that he in no way, shape, or form

00:55:07  19  confessed to a crime that he did not, did not commit.

00:55:14  20          Now, before I say one more word, I want to

00:55:18  21  caution you that I am not condoning child pornography,

00:55:24  22  and Alex and his family are certainly not condoning

00:55:28  23  child pornography.  I think we can all agree that it's

00:55:31  24  perverted and it's disgusting and it has no place in a

00:55:36  25  civilized society.  But that's not why we're here.

00:55:41  1   That's not the reason why you're here.  Your sole role

00:55:46  2   is to determine whether it was Alex who put those items

00:55:50  3   on his computer, whether it was Alex who knowingly put

00:55:56  4   those items on his computer beyond a reasonable doubt.

00:56:03  5          For indeed, this case is all about Alex.

00:56:07  6   During this trial you will learn who he is, the values

00:56:13  7   that he possesses, the way he was raised, the person he

00:56:19  8   is, and the person he hopes to become.  The evidence

00:56:22  9   will show that he was raised by a good God-fearing

00:56:27  10  family.  The evidence will show that he was an Eagle

00:56:31  11  Scout.  The evidence will show that he always struggled

00:56:34  12  in school, not because he's dumb or unmotivated, but

00:56:39  13  ever since first grade he's been diagnosed with a

00:56:42  14  reading disability, and he's always been forced to have

00:56:47  15  special accommodations just so he could get through

00:56:51  16  school.  The evidence will show that during the time in

00:56:55  17  question he was working at a job and that he was going

00:57:00  18  to school.

00:57:03  19         Now, by this time you must be thinking,

00:57:06  20  well, I want to hear about that confession.  What's all

00:57:09  21  this about a confession?  And then she says he confessed

00:57:13  22  to something he did not commit.  Well, ladies and

00:57:16  23  gentlemen, we are not contending that law enforcement

00:57:21  24  beat a confession out of him.  We're not contending that

00:57:25  25  law enforcement locked him into some little room and

|          |    |                                                            |
|----------|----|------------------------------------------------------------|
| 00:57:30 | 1  | extracted this story from him.  Far from it.  Rather, we   |
| 00:57:36 | 2  | are contending that Alex did not understand what he was    |
| 00:57:41 | 3  | reading, and the evidence will show that he was not        |
| 00:57:45 | 4  | given the proper circumstances and accommodations to       |
| 00:57:50 | 5  | understand this supposed confession.                       |
| 00:57:57 | 6  |           These charges are heinous, absolutely            |
| 00:57:59 | 7  | heinous.  But that being the case, that is why Alex is     |
| 00:58:07 | 8  | going to have the courage to take the stand in his own     |
| 00:58:11 | 9  | defense, to look each one of you in the eye and to swear   |
| 00:58:18 | 10 | under oath that he did not put these disturbing images     |
| 00:58:23 | 11 | on his computer, and that he did not confess to a crime    |
| 00:58:28 | 12 | he did not commit.                                         |
| 00:58:33 | 13 |           And just as important, the evidence and the      |
| 00:58:36 | 14 | testimony is going to show that there was someone else     |
| 00:58:41 | 15 | in Alex's apartment who had possession of that computer.   |
| 00:58:47 | 16 | There was someone else in that apartment who had access    |
| 00:58:52 | 17 | to it.  The evidence will show that, no, the IP address    |
| 00:59:01 | 18 | was not to this individual, but the evidence will show     |
| 00:59:05 | 19 | that the time of these images, the time that they          |
| 00:59:09 | 20 | supposedly appeared on Alex's computer directly            |
| 00:59:14 | 21 | coincided with the time that person lived with Alex in     |
| 00:59:20 | 22 | that apartment.  Strangely enough, the evidence will       |
| 00:59:24 | 23 | show that that person denied all of this, that that        |
| 00:59:31 | 24 | person disappeared after these charges were made, and      |
| 00:59:35 | 25 | that person has not been seen or heard of since.  Or       |

00:59:42  1   maybe he has.

00:59:46  2          This trial is about three very important

00:59:50  3   points:  Number one, was it Alex who put those objects

00:59:57  4   on the computer?   Number two, did he confess to a crime

01:00:05  5   he did not commit?   And does the government have the

01:00:10  6   right person?

01:00:12  7          Thank you.

01:00:14  8          THE COURT:  Okay.  Mr. Secor or Mr.

01:00:16  9   Crawford, you may call your first witness.

01:00:19  10         MR. CRAWFORD: Your Honor, the government

01:00:20  11  would call Special Agent Whisman.

01:01:28  12         THE COURT:  Will you spell the agent's name

01:01:30  13  and tell the ladies and gentlemen in a couple sentences

01:01:33  14  what you expect the agent testify to.

01:01:35  15         MR. CRAWFORD:  His last name is

01:01:38  16  W-h-i-s-m-a-n.  Agent Whisman is the agent who conducted

01:01:42  17  an undercover session in which he took on the persona of

01:01:47  18  the LimeWire user and downloaded child pornography.

01:02:03  19         THE COURT:  His first name?

01:02:04  20         MR. CRAWFORD: Richard.

01:02:04  21         (Whereupon the witness was sworn by the

01:02:52  22  clerk.)

01:02:52  23         THE COURT:  Agent, slide about this distance

01:02:56  24  from the microphone, please.

01:02:58  25         Ladies and gentlemen, if at any time you

01:03:00  1   can't hear somebody, please speak up, okay?  Just raise

01:03:03  2   a hand and say, Judge, I can't hear.  It's very

01:03:07  3   important that you hear everything.  So if you can't,

01:03:11  4   ask him to speak up.

01:03:12  5           And will you tell the ladies and gentlemen

01:03:14  6   your name, please.

01:03:15  7           THE WITNESS:  Richard Whisman,

01:03:16  8   W-h-i-s-m-a-n.

01:03:19  9           THE COURT:  What is your occupation or

01:03:20 10   position?

01:03:21 11           THE JUROR:  I am a special agent with the

01:03:23 12   FBI.

01:03:24 13           THE COURT:  And where are you presently

01:03:26 14   assigned?

01:03:27 15           THE JUROR:  Tulsa, Oklahoma.

01:03:30 16           THE COURT:  And during the events giving

01:03:31 17   rise to this case, where were you assigned?

01:03:35 18           THE WITNESS:  Tulsa, Oklahoma.

01:03:37 19           THE COURT:  What at that time were your

01:03:38 20   duties, at least with reference to this particular case?

01:03:42 21           THE WITNESS:  I'm assigned to work

01:03:43 22   computer-related crimes which involves work on the FBI's

01:03:46 23   undercover program called innocent images, which is the

01:03:50 24   investigation of the online sexual exploitation of

01:03:54 25   children.

01:03:54  1          THE COURT:  And how long have you been an
01:03:56  2  agent?
01:03:57  3          THE WITNESS:  About nine years.
01:03:58  4          THE COURT:  And before that did you have any
01:04:00  5  law enforcement experience?
01:04:01  6          THE WITNESS:  I was a police officers in the
01:04:03  7  city of West Chicago, Illinois for about seven years.
01:04:06  8          THE COURT:  And before that what sort of
01:04:08  9  education or training did you have?
01:04:10  10          THE WITNESS:  I have a bachelor's degree.
01:04:14  11          THE COURT:  Any military service at all?
01:04:17  12          THE WITNESS:  No.
01:04:20  13          THE COURT:  I think that's it for initial
01:04:22  14  questions.
01:04:26  15                           - - -
01:04:26  16          RICHARD WHISMAN, DIRECT EXAMINATION
01:04:26  17  BY MR. CRAWFORD:
01:04:26  18    Q.  Agent Whisman, do you have any experience related
01:04:32  19  to child pornography investigations?
01:04:33  20    A.  I've been working them about seven and a half
01:04:36  21  years.
01:04:36  22    Q.  Can you generally describe what your duties and
01:04:38  23  activities with respect to those investigations are?
01:04:41  24    A.  Starting probably early 2004, I became part of
01:04:45  25  the innocent images program through the FBI where we go

01:04:50  1  online undercover in several different aspects, one of

01:04:55  2  which is looking for distributors of child pornography.

01:04:57  3      Q.  Do you frequently engage in something called an

01:05:00  4  undercover session?

01:05:01  5      A.  Yes.

01:05:02  6      Q.  What is an undercover session?

01:05:04  7      A.  The session is where we go online on the internet

01:05:08  8  conducting investigations such as looking for

01:05:13  9  distributors of child pornography.

01:05:15  10     Q.  And how do you conduct it?

01:05:17  11     A.  One way we do it is through a program called

01:05:22  12  LimeWire, which is a peer-to-peer file sharing program.

01:05:26  13  It's a free program.  There's also a paid version of it.

01:05:32  14  It's also a free download; anybody can go out and

01:05:36  15  download it.  With this program people install it on

01:05:39  16  their computer and they can go out and search for

01:05:42  17  different types of files, pictures, videos, music files,

01:05:45  18  documents, even program files.  Once you have it

01:05:49  19  installed on your computer, you can download files from

01:05:52  20  others by conducting key word searches, for example.

01:05:57  21  Then once you do that, you're also able to share those

01:06:02  22  files with other people who have the same program.

01:06:04  23     Q.  And what sort of files can you share using

01:06:06  24  LimeWire?

01:06:07  25     A.  It could be any file; it could be an image file,

01:06:11  1   a video file, a program file, document.  The way that

01:06:20  2   LimeWire works -- our version we use is enhanced; it's a

01:06:25  3   little bit different than what the average person uses.

01:06:27  4   For example, the way LimeWire works, to make it a faster

01:06:31  5   program to download files, say I selected a file to

01:06:34  6   download from someone.  If other people also have that

01:06:38  7   file offered for downloading, it will download that file

01:06:41  8   from more than one location and put it back together as

01:06:44  9   one file on my computer to make it fast.  For our

01:06:47  10  purposes that wouldn't work, so our LimeWire program

01:06:50  11  will only download from one person at a time so we can

01:06:54  12  definitively say where that file came from.

01:06:57  13     Q.  So when you download a file from LimeWire, where

01:07:02  14  exactly does the file come from?

01:07:03  15     A.  Another user.  There is no central server on

01:07:07  16  LimeWire.  When I'm downloading a file from someone, it

01:07:10  17  goes directly from that person's computer to my

01:07:12  18  computer.

01:07:13  19     Q.  And that person could be anyone using LimeWire?

01:07:15  20     A.  Yes.

01:07:18  21     Q.  Now, you mentioned searches.  Could you just

01:07:20  22  again described how the key word searching process works

01:07:24  23  in LimeWire?

01:07:24  24     A.  You can search specifically for just, like,

01:07:27  25  images, or videos, or music, or you can search for all

01:07:31　1　types of files by entering key words.  For our cases

01:07:37　2　just through experience there's several terms that we

01:07:40　3　know have been associated with child pornography files;

01:07:43　4　a lot of them have, like, a number, like nine, ten, and

01:07:47　5　a Y after it for nine-year-old or ten-year-old.  Some of

01:07:52　6　them I put in preteen; PTHC, which stands for preteen

01:08:03　7　hardcore; LSM, which stands for Lolita series magazine.

01:08:10　8　Just several terms like that.

01:08:12　9　　Q.  Once you enter these search terms, what does

01:08:15　10　LimeWire then do?

01:08:16　11　　A.  It displayed a list of files that people are

01:08:22　12　offering that file for download.  Then you go and you

01:08:26　13　can simply click on that file to download it.  Or it

01:08:29　14　also has a feature where you can browse a host.  And

01:08:33　15　what that will do, you highlight the file you want and

01:08:36　16　hit "browse host," and then it will bring up all the

01:08:39　17　files that that particular user is sharing.

01:08:42　18　　Q.  When you say click on it and download it, what do

01:08:46　19　you mean?

01:08:46　20　　A.  Clicking on it with your mouse on the screen.

01:08:50　21　And when you download a file, it's essentially copying

01:08:54　22　it, copying it from one person's computer and sending it

01:08:57　23　to mine.

01:09:04　24　　Q.  When you make a copy and you download it, where

01:09:09　25　does it store this copy?

01:09:11  1      A.   On my computer.

01:09:12  2      Q.   And how do you know you've got the entire file

01:09:14  3  that you wanted to copy?

01:09:17  4      A.   With our program it's got a built-in login

01:09:22  5  feature where it logs basically all the traffic from my

01:09:25  6  computer and any computer I'm downloading from.  From

01:09:28  7  those logs it gives me a summary of what IP address,

01:09:32  8  basically the location where the file came from, and I

01:09:35  9  end up with a completed download file.

01:09:37  10     Q.   And what is an IP address?

01:09:39  11     A.   IP address stands for internet protocol address.

01:09:44  12  It's a series of four numbers separated by decimals.  It

01:09:48  13  essentially identifies a particular internet account.

01:09:54  14     Q.   Does it tell you specifically what computer or

01:09:57  15  what human being was using that IP address at the time?

01:10:00  16     A.   No, it would just tell you the internet account.

01:10:03  17     Q.   And what can you do with that IP address to learn

01:10:06  18  more about where these images might be coming from?

01:10:09  19     A.   All the IP addresses are assigned to various

01:10:12  20  internet service providers, and we send a subpoena to

01:10:15  21  the internet service provider asking who they assigned

01:10:20  22  that particular IP address to at that particular date

01:10:23  23  and time.

01:10:25  24     Q.   More specifically were you conducting undercover

01:10:27  25  sessions in LimeWire in the summer of 2010?

01:10:31  1      A.   Yes, I was.

01:10:31  2      Q.   And were you involved in one that resulted in an

01:10:35  3  IP address pointing to Lima, Ohio?

01:10:39  4      A.   Yes.

01:10:39  5      Q.   Could you just describe that undercover session,

01:10:41  6  please.

01:10:42  7      A.   That was on June 22.  I began the session around

01:10:48  8  4:20 in the afternoon and started conducting the search

01:10:51  9  terms or putting in the search terms looking for child

01:10:55  10  pornography files.   One of the terms I put in was 9YO

01:10:59  11  for nine-year-old.   It brought up a list of people that

01:11:05  12  had that term offered for download.   In this particular

01:11:08  13  case there were several files offered from a user in

01:11:11  14  Lima, Ohio.  Our version of LimeWire also gives you

01:11:14  15  approximate geographic location of the person sharing

01:11:17  16  that file.  That's how I know it was Lima.

01:11:20  17      I highlighted one of the files and clicked

01:11:23  18  "browse host," which then brought up a list of all the

01:11:26  19  files that particular user was sharing.   In this case it

01:11:30  20  was just over 800 files.  About 71 of them were video

01:11:36  21  files, and 97 were image files.  The majority of the

01:11:41  22  image and video files had terms consistent with child

01:11:44  23  pornography in the file names.

01:11:46  24      Q.   You mentioned using search terms to search on

01:11:50  25  LimeWire.  What does LimeWire do with those search

01:11:53   1    terms?  Where does it use those terms to search to find

01:11:56   2    results?

01:11:57   3      A.  LimeWire does not have a central server because

01:12:00   4    it's a peer-to-peer operation, one computer to another.

01:12:03   5    What LimeWire does is some LimeWire users are dedicated

01:12:07   6    as what they call ultra peers; their computer

01:12:10   7    essentially will store, like, a database of file names

01:12:13   8    that other users are sharing.  And when I sent out a

01:12:17   9    search term, it will ask those data bases for who's

01:12:20   10    sharing a file with the search term.  Then it will point

01:12:23   11    me in the right direction of where to go to get that

01:12:27   12    file.

01:12:27   13      Q.  What do you mean by who's sharing a file with

01:12:29   14    this search term?

01:12:30   15      A.  If I have shared files with my shared directory

01:12:34   16    using LimeWire, it's put out to the network that I have

01:12:37   17    these files for download.  Then other people are able to

01:12:40   18    see those files and download them.

01:12:42   19      Q.  But it is the file name or some other aspect of

01:12:46   20    this file that LimeWire is looking for to match up with

01:12:49   21    the search terms?

01:12:52   22      A.  I'm sorry?  One more time.

01:12:54   23      Q.  Is LimeWire using your search terms to look at

01:12:58   24    file names or some other aspect of these files to

01:13:00   25    determine whether or not --

01:13:02  1      A.   It's looking at the file names.

01:13:05  2      Q.   You mentioned an undercover session in the summer

01:13:08  3  of 2010.  And you were able to download a number of

01:13:14  4  images containing child pornography?

01:13:16  5      A.   Yes.

01:13:17  6      Q.   Were you able to determine the source?

01:13:18  7      A.   Yes, I was.

01:13:19  8      Q.   And describe that source, please.

01:13:21  9      A.   It was an IP address by the internet service

01:13:27  10  provider Roadrunner, which is associated with Time

01:13:30  11  Warner Cable.  They are located in Lima, Ohio.

01:13:39  12      Q.   Approximately how many images did you download?

01:13:44  13      A.   Thirty.

01:13:44  14      Q.   What did you do with the downloaded images once

01:13:47  15  you completed your session?

01:13:48  16      A.   I saved them to a CD and submitted them to

01:13:51  17  evidence.

01:14:17  18      Q.   Special Agent Whisman, this is government's

01:14:21  19  Exhibit 1.  Do you know what that is?

01:14:24  20      A.   That is a copy of the CD that I made to send to

01:14:27  21  their office in Lima, Ohio to further this

01:14:30  22  investigation.

01:14:31  23      Q.   How do you recognize it?

01:14:32  24      A.   It's got my writing on it.

01:14:35  25      Q.   And generally can you describe what information

01:14:38    1    is contained on that disk?

01:14:39    2        A.   The program that I use, our enhanced version of

01:14:45    3    LimeWire, for each file I download, it creates a

01:14:48    4    separate folder.  And within that folder it stores all

01:14:51    5    the supporting log files to show where the file came

01:14:53    6    from along with the file I downloaded.

01:14:55    7        Q.   And are the images that you downloaded during

01:14:58    8    that session on that disk?

01:14:59    9        A.   Yes, it is.

01:15:01   10            MR. CRAWFORD: Your Honor, at this time we're

01:15:03   11    going to load the disk in the computer so he can explain

01:15:06   12    it more to the jury.

01:15:07   13            THE COURT:  Okay.

01:15:55   14            (Image displayed in open court.)

01:15:59   15    BY MR. CRAWFORD:

01:15:59   16        Q.   Do you recognize this screen, Special Agent

01:16:01   17    Whisman?

01:16:02   18        A.   Those are the beginning of that file on that

01:16:04   19    disk.

01:16:04   20        Q.   What does 11905 mean?

01:16:08   21        A.   That is the number assigned to this undercover

01:16:10   22    session.  Every time we do a session, it's given a

01:16:12   23    number to keep track of them.

01:16:17   24        Q.   And what's this folder?

01:16:19   25        A.   That is the IP address where the files were

01:16:22  1    downloaded from.

01:16:27  2        Q.  And here we have a longer list of file folders.

01:16:30  3    What are these file folders?

01:16:32  4        A.  Those are -- there's one folder for each file

01:16:35  5    that I downloaded.  And within those folders are the

01:16:38  6    file I downloaded along with the supporting

01:16:40  7    documentation.

01:16:46  8        Q.  Do you see the one I've highlighted there?

01:16:48  9        A.  Yes.

01:16:49  10       Q.  I'm opening that one.  You have some additional

01:16:52  11   information in that folder.  Could you briefly describe

01:16:54  12   what that information is?

01:16:55  13       A.  Those contain the supporting log files.

01:16:59  14            THE COURT:  I'm sorry, containing?  I'm

01:17:02  15   sorry; I didn't get the complete thing you said.

01:17:05  16   Contains what files?

01:17:06  17            THE WITNESS:  The log files, supporting

01:17:08  18   files, to show where the file came from, my downloaded

01:17:12  19   file, along with the screen capture that was taken of my

01:17:17  20   downloading it.  It takes a picture of my screen, then

01:17:21  21   the file that I downloaded.

01:17:24  22   BY MR. CRAWFORD:

01:17:24  23       Q.  I've highlighted one file that's called a PNG

01:17:28  24   image.  What's a PNG image?

01:17:31  25       A.  It's an image file.

01:17:41   1       Q.   Could you generally describe what this screen is,
01:17:43   2   this image is?
01:17:44   3       A.   That is a picture that was taken of my screen
01:17:47   4   after the file downloaded.  That is a picture of our
01:17:49   5   LimeWire that I was using.
01:17:51   6       Q.   And it looks like in the top half of the screen
01:17:54   7   there are a number of lines there.  What's going on on
01:17:56   8   the top half of the screen?
01:17:58   9       A.   On the top left, that column are a list of file
01:18:02  10   names that were being shared by that IP address.
01:18:10  11       Q.   Are you referring to these files that I've
01:18:12  12   enlarged there?
01:18:13  13       A.   Yes.
01:18:17  14       Q.   Are those search results?
01:18:19  15       A.   Those are all the files being shared by that IP
01:18:22  16   address listed there, the 98.31.57.201.
01:18:29  17       Q.   Where I have the mouse, is that the number you're
01:18:33  18   referring to?
01:18:34  19       A.   Yes, it is.
01:18:34  20       Q.   I've got my curser next to one image.  Was this
01:18:46  21   one of the search results you received?
01:18:48  22       A.   Yes.
01:18:48  23       Q.   Does it contain words consistent with child
01:18:53  24   pornography?
01:18:53  25       A.   Yes, it does.

01:18:54  1    Q.  Would you describe some of those words, please?

01:18:56  2    A.  9YO.

01:18:59  3    Q.  What does that stand for?

01:19:00  4    A.  Nine year old.

01:19:01  5        Underage Lolita, which is associated with child

01:19:07  6    pornography.  PTHC; PTSC, which stands for preteen soft

01:19:13  7    core; PEDO, child having sex, underage, pussy fan, and

01:19:21  8    kiddie.

01:19:29  9    Q.  And moving along there on that file name, there's

01:19:35  10   information on the right-hand columns there.  Can you

01:19:37  11   describe what that information is?

01:19:39  12   A.  The first column is the size of the file; then

01:19:43  13   the IP address of where it's coming from; the internet

01:19:46  14   service provider, which is Roadrunner; it's in the

01:19:50  15   approximate location of Lima, Ohio, United States.

01:19:55  16   Q.  Now, there's some additional information here to

01:19:58  17   the side.  There's a hash column here with a red check.

01:20:01  18   What does that mean?

01:20:02  19   A.  A hash value is created from a mathematical

01:20:08  20   equation.  It can be given to any computer file.  In

01:20:12  21   this particular instance the National Center for Missing

01:20:17  22   and Exploited Children along with the FBI, they have a

01:20:20  23   database of known images and videos of child

01:20:25  24   pornography.  When I say known, that means we know who

01:20:27  25   the child is and a picture or video, how they were

01:20:32    1    victimized, and the circumstances of that case.  What

01:20:35    2    they do is they run these files through this equation,

01:20:38    3    and it gives it a combination of letters and numbers.

01:20:42    4    That hash value identifies that file.  And a database

01:20:48    5    with a hash file goes into the LimeWire program that we

01:20:51    6    use, and when it brings up the list of files, it

01:20:54    7    compares the database of hash values to known images of

01:20:58    8    videos to the list I have here.  And if it matches one,

01:21:03    9    it gives it a red check mark to indicate that this file

01:21:06    10   matches one that we know who the child is.

01:21:09    11       Q.  At the end here there's type; it says JPG.  What

01:21:14    12   does that mean?

01:21:15    13       A.  It's an image file.

01:21:16    14       Q.  Farther down on the bottom of the screen capture

01:21:20    15   there's downloads.  What is that?  What's going on

01:21:23    16   there?

01:21:23    17       A.  That is a list of files that I have downloaded up

01:21:26    18   to that point.

01:21:27    19       Q.  And I put my curser by one of the files.  Which

01:21:30    20   file is that?

01:21:31    21       A.  The 9YO Jennie from which I just read.

01:21:38    22       Q.  And off to the side?

01:21:41    23       A.  That's the size of the file; it shows 782.8

01:21:48    24   kilobytes.

01:21:49    25       Q.  And status?

01:21:50  1      A.   Complete.

01:21:51  2      Q.   And what does that mean?

01:21:53  3      A.   The file has finished downloading.

01:21:56  4      Q.   And progress here?

01:21:57  5      A.   It shows is 100 percent.

01:22:04  6      Q.   And if I could explore here, in this collection

01:22:07  7  of files, the actual image that you downloaded, is it is

01:22:12  8  present?

01:22:13  9      A.   Yes, it's called downloaded file.

01:22:17  10     Q.   I'll ask you to identify that photo.  Is that the

01:22:20  11  photo that you downloaded?

01:22:21  12     A.   Yes, it is.

01:22:38  13     Q.   I've selected another one as another example.

01:22:42  14  Anything different about that file folder than the other

01:22:50  15  file folder we just looked at?

01:22:51  16     A.   It contains the same type of files, just from a

01:22:55  17  different download.

01:22:59  18     Q.   And there's a PNG image here.  That PNG is what?

01:23:05  19     A.   A straight shot of my screen when the file

01:23:08  20  completed downloading.

01:23:11  21     Q.   If I just back up for a second.  At the time

01:23:13  22  you're doing this undercover session, you were

01:23:16  23  physically located where?

01:23:17  24     A.   In Tulsa, Oklahoma.

01:23:18  25     Q.   And the date?

01:23:20  1      A.   June 22, 2010.

01:23:24  2      Q.   And is this screen similar in all respects to the

01:23:29  3  other one we looked at?

01:23:30  4      A.   Yes.

01:23:31  5      Q.   At the top you have some search results, and at

01:23:34  6  the bottom what you're downloading?

01:23:36  7      A.   Right.

01:23:36  8      Q.   Then again there's a file image here.  Is that

01:23:39  9  the file that you downloaded during the session?

01:23:41  10     A.   Yes, it is.

01:23:44  11     Q.   Is that the file that you recognize?

01:23:45  12     A.   Yes.

01:24:18  13     Q.   Agent Whisman, I'm handing you Government's

01:24:21  14  Exhibit 2.  Do you recognize that disk?

01:24:23  15     A.   Yes, I do.

01:24:24  16     Q.   What is that disk?

01:24:26  17     A.   It is a disk sent to me by Agent Schulte of the

01:24:30  18  Cleveland Division containing some of the pictures that

01:24:33  19  I downloaded and videos also contained in a PowerPoint

01:24:40  20  presentation.

01:24:41  21     Q.   Have you had the opportunity to look at those

01:24:43  22  images on that disk?

01:24:44  23     A.   Yes, I have.

01:24:45  24     Q.   And are those images on that disk copies of some

01:24:48  25  of the images that you downloaded in your undercover

01:24:51    1    session?

01:24:51    2       A.   Yes.

01:25:41    3       Q.   Do you recognize these files?

01:25:43    4       A.   Yes.  They're the files from that disk.

01:25:45    5       Q.   Okay.  The first one here that I've highlighted,

01:25:48    6    what is that, or what type of file is that?

01:25:51    7       A.   That is a video file.

01:25:53    8       Q.   And then the rest of these files ending here with

01:25:58    9    downloaded file 30, what are those files?

01:26:01   10       A.   Image files.

01:26:02   11       Q.   And then this last document here, what is that?

01:26:06   12       A.   A PowerPoint presentation.

01:26:13   13       Q.   I'm going to play this movie, Agent Whisman, and

01:26:16   14    ask you to identify it after we show it to the jury.

01:26:27   15               THE COURT:  We've gone a little long.

01:26:30   16    Whatever suits.

01:26:34   17               MR. CRAWFORD: Judge, I probably have another

01:26:36   18    20 minutes or so.

01:26:37   19               THE COURT:  Why don't we complete him or

01:26:39   20    perhaps even adjourn for the afternoon.

01:26:57   21               (Video is played in open court.)

01:30:02   22    BY MR. CRAWFORD:

01:30:03   23       Q.   Agent Whisman, you indicated there was a

01:30:05   24    presentation on this disk that is a summary of the still

01:30:08   25    images?

01:30:09  1    A.   Yes.

01:30:10  2    Q.   And is that this PowerPoint presentation I just

01:30:13  3  highlighted?

01:30:14  4    A.   Yes, it is.

01:30:15  5    Q.   And the video we just showed, is that a video you

01:30:19  6  downloaded during your undercover session?

01:30:22  7    A.   Yes.

01:30:22  8    Q.   I'll ask you the same about the pictures in this

01:30:25  9  slide show.

01:30:29  10    (PowerPoint presentation is shown in open court.)

01:30:29  11  BY MR. CRAWFORD:

01:32:30  12    Q.   Special Agent Whisman, were those the images that

01:32:32  13  you downloaded?

01:32:33  14    A.   Yes, those are some of the images I downloaded.

01:32:35  15    Q.   Some of them.  And all those images came from the

01:32:38  16  same IP address; is that correct?

01:32:40  17    A.   Yes, they did.

01:33:40  18    Q.   Agent Whisman, you were able to determine an IP

01:33:43  19  address for these images, correct?

01:33:44  20    A.   Correct.

01:33:45  21    Q.   What did you then do with that IP address?

01:33:47  22    A.   I had an administrative subpoena issued to

01:33:51  23  Roadrunner to provide the subscriber information, who

01:33:54  24  they assigned that IP address to during the date and

01:33:58  25  times that I downloaded those files.

01:34:00 1 Q. Let me show you what's been marked as

01:34:02 2 Government's Exhibit 3. Do you recognize that document?

01:34:05 3 A. That is a subpoena that was issued for this case.

01:34:11 4 Q. And does it contain information about where you

01:34:16 5 downloaded these images from?

01:34:17 6 A. It gives the IP address along with the date and

01:34:22 7 time that the files were downloaded.

01:34:36 8 Q. Can you describe what I've highlighted there?

01:34:38 9 A. It's asking for the subscriber of the IP address

01:34:43 10 98.31.57. 201 on June 22, 2010 between 4:40 p.m. and

01:34:51 11 7:34 p.m.

01:34:52 12 Q. Were those the times of your undercover session

01:34:55 13 where you downloaded the images we just saw?

01:34:58 14 A. Correct.

01:34:58 15 Q. Did you get a response to the subpoena?

01:35:01 16 A. I did.

01:35:02 17 Q. And what did that response indicate?

01:35:05 18 A. It provided the subscriber information, and it

01:35:13 19 said that the account was subscribed to by Alex Cook,

01:35:16 20 and an address in Lima, Ohio.

01:35:18 21 Q. Let me show you what's been marked as

01:35:21 22 Government's Exhibit 4. Do you recognize that document?

01:35:23 23 A. That is the response I received.

01:35:26 24 Q. Who's it from?

01:35:27 25 A. Time Warner Cable, who's associated with

01:35:31  1    Roadrunner.

01:35:34  2        Q.   And in this reference line, what's that an

01:35:37  3    indication of?

01:35:38  4        A.   It's referencing the subpoena that you just

01:35:42  5    showed.

01:35:42  6        Q.   And is there an IP address associated with it?

01:35:45  7        A.   Yes.  98.31.57.201.

01:35:59  8        Q.   What's this information?

01:36:01  9        A.   That is the subscriber information.

01:36:06  10       Q.   What does it indicate?

01:36:07  11       A.   It indicates the name on the account is Alex Cook

01:36:10  12   with an address of 1268 Knollwood Drive, Lima, Ohio, ZIP

01:36:15  13   code 45801.  Telephone number 740-507-5232.  The user

01:36:24  14   name on the account is ACook60@WOH.RR.com.  It shows he

01:36:35  15   pays the bill with a Visa card, and the length of

01:36:38  16   service has been active since May 6, 2010.

01:36:41  17       Q.   Is that to the present?

01:36:42  18       A.   To the present of that response, yes.

01:36:45  19       Q.   Does that date range cover the date and time of

01:36:47  20   your undercover session?

01:36:49  21       A.   Yes.

01:36:57  22            MR. CRAWFORD: Your Honor, I have no further

01:36:58  23   questions.

01:36:58  24            THE COURT:  Cross-examination.  How long is

01:37:00  25   your cross likely to be?

01:37:02  1          MS. KELLEY:  Very brief.

01:37:07  2          THE COURT:  Then we'll take a break.

01:37:08  3          Go ahead, Ms. Kelley.

01:37:08  4                  - - -

01:37:08  5          RICHARD WHISMAN, CROSS-EXAMINATION

01:37:13  6  BY MS. KELLEY:

01:37:13  7     Q.  Good afternoon, sir.  I'm Elizabeth Kelley I

01:37:17  8  represent Alex Cook in this case.

01:37:19  9          Isn't it true that LimeWire is no longer in

01:37:22  10  business?

01:37:25  11     A.  I've heard that the LimeWire company is --

01:37:28  12  something happened.  I don't know what.

01:37:30  13     Q.  Isn't it true that the government itself shut it

01:37:32  14  down?

01:37:33  15     A.  I don't know.

01:37:33  16     Q.  All right.  Now, isn't it also true that people

01:37:37  17  can subscribe to LimeWire for legitimate reasons like

01:37:43  18  music sharing?

01:37:45  19     A.  I don't know if music sharing is legitimate, but

01:37:49  20  you can share legitimate files with it, yes.

01:37:51  21     Q.  And one can also share legitimate photos on

01:37:54  22  LimeWire as well?

01:37:55  23     A.  Right.

01:37:55  24     Q.  And law abiding citizens have been known to

01:38:00  25  subscribe to LimeWire; isn't that true?

01:38:03  1      A.   I would assume so.

01:38:07  2      Q.   Now, I want to talk a little bit about your

01:38:10  3  undercover operation.  First of all, how many undercover

01:38:16  4  agents are working in Tulsa on this particular project?

01:38:20  5      A.   There's two agents, and we also have part-time

01:38:24  6  task force officers from the local police departments

01:38:26  7  who work with us.

01:38:27  8      Q.   And as I visualize it, your job is to basically

01:38:33  9  conduct these undercover operations, computer to

01:38:38 10  computer, correct?

01:38:39 11      A.   Correct.

01:38:40 12      Q.   And so when you actually make contact with an IP

01:38:48 13  address, it's that IP address that you're contacting,

01:38:52 14  correct?

01:38:52 15      A.   Correct.

01:38:53 16      Q.   So, for instance, you don't also have a hidden

01:38:57 17  camera hovering over that IP address, do you?

01:39:01 18      A.   No.

01:39:01 19      Q.   And you don't know who's actually using that IP

01:39:05 20  address at that point in time, do you?

01:39:07 21      A.   No.

01:39:08 22      Q.   Now, when you were conducting your undercover

01:39:20 23  operation, you basically used certain search terms,

01:39:25 24  correct?

01:39:25 25      A.   Correct.

01:39:25  1      Q.  And based on those search terms, materials would

01:39:30  2  come to you?

01:39:32  3      A.  A list would, yes.

01:39:34  4      Q.  A list would come.  And when Mr. Crawford was

01:39:39  5  showing us all of those various computer screens with

01:39:43  6  that fine print and all those little sorts of things,

01:39:46  7  exclusive of the subpoena and the response from Time

01:39:51  8  Warner Cable, the name Alex Cook never appeared on those

01:39:55  9  screens, did it?

01:39:56  10      A.  No.

01:39:58  11          MS. KELLEY:  Could I have a moment, Your

01:39:59  12  Honor?

01:39:59  13          THE COURT:  Sure.

01:40:02  14          (Discussion had off the record.)

01:40:07  15          MS. KELLEY:  Thank you.  No more questions.

01:40:12  16          MR. CRAWFORD: No questions, Your Honor.

01:40:13  17          THE COURT:  Agent, you may step down.  Do

01:40:17  18  either of you anticipate wanting to recall this agent?

01:40:20  19          MR. CRAWFORD: I don't believe so.

01:40:21  20          MS. KELLEY:  I don't at this point, Your

01:40:25  21  Honor.

01:40:25  22          THE COURT:  Who's your next witness?

01:40:29  23          MR. CRAWFORD:  Your Honor, she's in Detroit.

01:40:31  24  She'll be here first thing tomorrow morning.  We made

01:40:34  25  our best judgment about how far we would get today.

01:40:37   1           THE COURT: I understand. We seem to be

01:40:39   2   ahead of ourselves a little bit. So should we adjourn

01:40:43   3   now for the day?

01:40:44   4           MR. CRAWFORD: Your Honor, we'd be agreeable

01:40:46   5   to that.

01:40:50   6           THE COURT: Ladies and gentlemen, we are

01:40:53   7   actually ahead of the anticipated timetable, so we will

01:40:56   8   adjourn for the day. We'll resume tomorrow morning at

01:40:58   9   8:30. If you could be here by about 8:15. If for any

01:41:03   10   reason you get held up and get delayed, call the Court

01:41:08   11   and let us know. And we will all try to start promptly

01:41:10   12   and on time. As you can expect, I'm going to tell you

01:41:16   13   not to talk about the case. Don't have any contact with

01:41:19   14   anybody -- any of us who have anything to do with the

01:41:22   15   case. And keep an open mind. You've heard but a

01:41:27   16   smidgen of the evidence. There's a good bit more to

01:41:29   17   come. You have to keep an open mind throughout the

01:41:32   18   trial. Thank you again for your service, and we will

01:41:35   19   see you tomorrow morning. Safe trips home.

01:42:24   20           (Whereupon the jury was excused.)

01:42:25   21           THE COURT: What's the lineup for tomorrow

01:42:26   22   in terms of witnesses and exhibits? If you have any

01:42:29   23   objection in the anticipated testimony or exhibits,

01:42:33   24   let's try to resolve that now.

01:42:36   25           MR. CRAWFORD: Judge, we expect tomorrow to

01:42:38  1    have Amy Allen from the Department of Homeland Security

01:42:41  2    testify, Time Warner records custodian --

01:42:45  3              THE COURT:  And the Homeland security will

01:42:46  4    generally testify about what?

01:42:47  5              MR. CRAWFORD:  She will testify that one of

01:42:50  6    the images downloaded was an actual victim that she was

01:42:55  7    able to interview and compare with photos and testify

01:42:58  8    it's a real child.

01:43:01  9              Time Warner records custodian.  We we showed

01:43:07  10   Agent Whisman the subpoena and the response.  That

01:43:11  11   witness will testify to the process to which that was

01:43:13  12   created as a business record.

01:43:17  13             Judge, my understanding Elizabeth has a

01:43:19  14   witness she has to have on at 1:30.

01:43:23  15             THE COURT:  We've spoken about that.

01:43:25  16             MS. KELLEY:  Dr. Wayne Graves, the forensic

01:43:27  17   psychologist, must attend an out of town conference.

01:43:30  18   He needs to be on the road to the airport by 4:00.  So

01:43:33  19   when we had spoken on the phone you said 1:30.

01:43:36  20             THE COURT:  Whatever suits your timetable

01:43:38  21   and his, that's fine.

01:43:39  22             MS. KELLEY:  That's what he's committed to

01:43:41  23   at this point, if that's still suitable.

01:43:45  24             MR. CRAWFORD:  Judge, after that it would be

01:43:46  25   a series of local FBI agents beginning with Agent

01:43:50  1   Schulte.

01:43:50  2             THE COURT:  Are the first witnesses likely

01:43:53  3   to take that long in the morning?

01:43:55  4             MR. CRAWFORD: No.

01:43:56  5             THE COURT:  I would imagine pretty quick?

01:43:58  6             MR. CRAWFORD: Yes.

01:43:59  7             THE COURT:  Then would you -- so you could

01:44:01  8   continue with the agents?

01:44:06  9             MR. SECOR:  We'll just have them here.

01:44:09  10  We'll go as far as we can.

01:44:16  11            MR. CRAWFORD:  Judge, I mentioned Amy Allen,

01:44:19  12  who will testify one of the images being a known victim.

01:44:22  13  We have another agent, Roy Shepherd, who will testify to

01:44:25  14  another image being a known victim.  It's actually a

01:44:28  15  video.  I will say that that video will not come in

01:44:31  16  until Detective Morford testifies at the end.  We could

01:44:35  17  put him out of order and have him testify and come back

01:44:40  18  from the state of Washington, again with the caveat that

01:44:42  19  the evidence of where that image was, where it was found

01:44:45  20  would come in later.

01:44:46  21            THE COURT:  Okay.  But you can refer to it

01:44:49  22  by exhibit whatever it will be, and so forth and so on?

01:44:53  23            MR. CRAWFORD: Yes.

01:44:55  24            THE COURT:  Okay.  Any objection to anything

01:44:57  25  presently?

01:44:58    1              MS. KELLEY:  None, Your Honor.

01:44:59    2              THE COURT:  Okay.  So we seem to be ahead of

01:45:03    3    schedule.

01:45:04    4              MR. SECOR:  I think it's entirely possible

01:45:06    5    we'll finish our case Thursday morning.

01:45:10    6              THE COURT:  If they were done by Thursday

01:45:12    7    noon, how would you prepare to go forward?  What's your

01:45:16    8    timetable after that?

01:45:17    9              MS. KELLEY:  We will present our witnesses

01:45:19   10    whenever the Court is ready.

01:45:21   11              THE COURT:  And how long do you think their

01:45:23   12    presentation will take once you get started, except for

01:45:27   13    the fellow who's out of order.

01:45:30   14              MS. KELLEY:  I only have two witnesses other

01:45:35   15    than the doctor, who I anticipate will be relatively

01:45:39   16    lengthy.  The others should be short.

01:45:41   17              THE COURT:  So you think we can complete the

01:45:43   18    evidence by Friday mid afternoon?  What's your sense?

01:45:48   19              MS. KELLEY:  It sounds like a leading

01:45:50   20    question.

01:45:50   21              THE COURT:  No, it isn't.  Not at all.  I'm

01:45:53   22    trying to get some sense of the timetable, that's all.

01:45:55   23              MS. KELLEY:  It is entirely possible.

01:45:57   24              THE COURT:  I'm not a time clock judge.

01:45:59   25              MS. KELLEY:  It is entirely possible.

01:46:01  1          THE COURT:  If we do, let's plan to adjourn

01:46:03  2   for the weekend, and we'll go from there.  Actually for

01:46:06  3   some reason there were instructions I thought I put in

01:46:09  4   there, I don't know what happened, for instance, the

01:46:12  5   instruction about not going to Twitter and outside

01:46:17  6   computer stuff and so forth.  We'll check carefully.

01:46:22  7   Okeydoke.  Good.  Thank you.  I'll see you guys in the

01:46:26  8   morning.

9                (Adjourned at 3:53 p.m.)

10                        - - -

11

12                  C E R T I F I C A T E

13

14      I certify that the foregoing is a correct transcript

15   from the record of proceedings in the above-entitled

16   matter.

17

18   /s Tracy L. Spore_____          _____

19   Tracy L. Spore, RMR, CRR                Date

20

21

22

23

24

25

```
1                         I N D E X

2

3    Examinations                                    Page

4

5     RICHARD WHISMAN, DIRECT EXAMINATION              41

6     BY MR. CRAWFORD:

7     RICHARD WHISMAN, CROSS-EXAMINATION               60

8     BY MS. KELLEY:

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```