

1185 South Main Street
Akron, Ohio 44301
(330) 434-2344
Fax (330) 434-4611

4403 St. Clair Ave.
Cleveland, Ohio 44103
(216) 241-4661

WILLIAM D. EVANS II, MS, JD, ACP
President

Attorney Elizabeth Kelley
13940 Cedar Road
Cleveland, OH 44118-3204

August 25, 2011

Re: Alex D. Cook

Dear Attorney Kelley:

On August 24, 2011, a confidential specific issue polygraph examination was conducted on Alex D. Cook, at your request. The subject matter tested upon was the case involving child pornography. Such examination was conducted for your informational purposes only, or for inter-office use and review, not for testimonial or evidentiary purposes.

The proper waiver/release forms were read and signed by Alex D. Cook, indicating the examination was taken voluntarily, in cooperation with your office as an internal investigative process in contemplation of possible litigation and for no other person(s) other than the attorney to whom this report is directed. Further note, that confidential testing has inherent limitations due to the limited availability of particular case facts. Specific and non-general information is necessary to frame test questions, which particularly addresses the matter or issue to be tested upon. Nevertheless, our best efforts were put forth to ascertain the facts, which included extensive pre-test questioning of the person to be tested, coupled with the facts supplied by your office. See notation at the bottom of our report letterhead page regarding dissemination of this report.

During testing, the instrument used was a computerized Axciton Polygraph.

Three phases of the examination were completed:

1) Pre-test interview

2) Testing phases

    a. One polygraph sensitivity test used to assess reaction capability.

    b. Several relevant tests, examining on the aforementioned issue.

3) Chart analysis and post-test interview

This report is furnished by your agent, Poly-Tech Associates Inc., for your exclusive use as merely an opinion concerning the person(s) interviewed and/or examined and absolutely for no other reason or purpose.
www.polytechassoc.com

A

Attorney Elizabeth Kelley
August 25, 2011
Page 2

Re:   Alex D. Cook

During testing phases, the following relevant questions were asked with elicited subject responses indicated.

1.  Did you search for child pornography?

    Answer:    No

2.  Did you download child pornography?

    Answer:    No

3.  Did you tell SPL Agent Pape that an image reminded you of an ex-girlfriend/fiancée?

    Answer:    No

4.  Did you tell SPL Pape that you taught Sunday school??

    Answer:    No

After careful review of the polygrams, and the examination in its entirety, physiological changes indicative of truthfulness (*no deception*) occurred.

If I can be of further assistance, please do not hesitate to call.

Very truly yours,

William D. Evans, II

WDE:nd



1185 South Main Street
Akron, Ohio 44301
(330) 434-2344
Fax (330) 434-4611

4403 St. Clair Ave.
Cleveland, Ohio 44103
(216) 241-4661

WILLIAM D. EVANS II, MS, JD, ACP
President
August 30, 2011

Attorney Elizabeth Kelley
13940 Cedar Road
Cleveland, OH 44118-3204

Re:   Alex D. Cook

Dear Attorney Kelley:

On August 30, 2011, a confidential specific issue polygraph examination was conducted on Alex D. Cook, at your request. The subject matter tested upon was the case involving Child Pornography. Such examination was conducted for your informational purposes only, or for inter-office use and review, not for testimonial or evidentiary purposes.

The proper waiver/release forms were read and signed by Alex D. Cook, indicating the examination was taken voluntarily, in cooperation with your office as an internal investigative process in contemplation of possible litigation and for no other person(s) other than the attorney to whom this report is directed. Further note, that confidential testing has inherent limitations due to the limited availability of particular case facts. Specific and non-general information is necessary to frame test questions, which particularly addresses the matter or issue to be tested upon. Nevertheless, our best efforts were put forth to ascertain the facts, which included extensive pre-test questioning of the person to be tested, coupled with the facts supplied by your office. See notation at the bottom of our report letterhead page regarding dissemination of this report.

During testing, the instrument used was a computerized Axciton Polygraph; the testing format/methodology employed during testing was an Air Force MGQT.

Three phases of the examination were completed:

1) Pre-test interview

2) Testing phases

   a. One polygraph sensitivity test used to assess reaction capability.

   b. Several relevant tests, examining on the aforementioned issue.

3) Chart analysis and post-test interview

*This report is furnished by your agent, Poly-Tech Associates Inc., for your exclusive use as merely an opinion concerning the person(s) interviewed and/or examined and absolutely for no other reason or purpose.*
www.polytechassoc.com

B

Attorney Elizabeth Kelley
August 30, 2011
Page 2

Re: Alex D. Conk

During testing phases, the following relevant questions were asked with elicited subject responses indicated.

1. Did you use Limewire to search for any child porn?

    Answer: No

2. From Limewire did you download any child porn?

    Answer: No

3. Regarding the child porn from Limewire found on your hard drive, did you download any of those files?

    Answer: No

After careful review of the polygrams, and the examination in its entirety, physiological changes indicative of truthfulness (no deception) occurred; algorythms support this opinion.

If I can be of further assistance, please do not hesitate to call.

Very truly yours,

William D. Evans, II

WDE:nd

| | | |
|---|---|---|
| STATE OF OHIO | ) | SS: A F F I D A V I T |
| | ) | |
| COUNTY OF LUCAS | ) | |

1. My name is Bill Jonke and I am a trial consultant.

2. I am the principal of Bill Jonke & Associates. I assist attorneys in the preparation of cases before courts, both civil and criminal. I am also involved in certain cases that seek to obtain a new trial for wrongly or questionably convicted clients. I have been involved in these matters since the early 1990s. I also sponsor and speak at various criminal defense Continuing Legal Education seminars.

3. I became involved in U.S. v. Alex Cook at the request of Attorney Elizabeth Kelley shortly after Mr. Cook was convicted of charges relating to child pornography in federal court in Toledo, Ohio in September, 2011.

4. I spoke with several jurors after conviction, all of whom were intensely impacted by the trial. They believed that Mr. Cook was guilty based on the following points:
   a. The exhibits in question were in fact found on Mr. Cook's computer and they got there only through the actions of Mr. Cook;
   b. Mr. Cook had confessed to FBI Special Agent Paul Pape, and that the confession was credible because Mr. Pape is an FBI Agent, and Mr. Cook was merely the defendant; and
   c. Mr. Cook's roommate, Ian Douglas had no part in putting the images on Mr. Cook's computer, and therefore, it could only have been Mr. Cook who put the images there.

5. I raised the issue with both trial counsel that I believed that it was possible that files of any type, including images such as the trial exhibits, could in fact have been placed there by unknown third parties in an action generally known as "hacking." This had not been explored by either counsel at the time of trial.

6. In order to support this contention, I interviewed defense computer expert Mark Vassel, who told me that he had never brought this concept up prior to the time of trial. However, such a thing could have been done.

7. Mr. Vassel indicated that it would require at least 90 days to have examined the hard drive of Mr. Cook's computer for evidence of such activity, and that there was not sufficient time to do this before the scheduled trial of September 6, 2011. Moreover, it could not easily be done at the office of the FBI.

8. I interviewed by telephone the defense computer expert retained by the Office of the Federal Public Defender, Wayne Marney.

1

9. Mr. Marney repeatedly told me that the child pornography files in question were undoubtedly placed there by Mr. Cook, and that the roommate, Ian Douglas did not put them there.

10. When I questioned Mr. Marney about that statement, he stated that "Alex should just man-up" to doing this and "take responsibility for it."

11. I asked Mr. Marney if he would sign an affidavit stating that unknown third parties who might have had the password to Alex's router could have done this. He refused to do so.

12. I asked Mr. Marney if he would sign a statement stating that such third parties could *not* have done this, and again, he refused to do so.

13. Mr. Marney refused to sign an affidavit of any kind pertaining to his involvement in the case.

14. I sought out someone who might know more about "hacking" and located a local person named Carl Herkimer.

15. Mr. Herkimer has no formal credentials as a computer expert, but has been able to show that files of any nature, including photo images, may indeed be placed on someone else's computer without their knowledge.

16. This all is made easier if a hacker knows the password to someone's router, but according to Mr. Herkimer it is also possible to perform this same action if the hacker does *not* know the password, and must use a code breaker such as the "Cain and Abel" program to get the password. Mr. Cook shared his password with at least two other people.

17. In a nutshell, this means that virtually any computer on a wireless router can be hacked by anyone who has the ability to do so, and that requires no skills as a computer "expert."

18. Mr. Herkimer indicated that it is easy to place such files on someone else's computer without their knowing if there if a file sharing program in use such as LimeWire.

19. I interviewed Donna Grill, the Federal Public Defender who originally represented Mr. Cook.

20. Ms. Grill informed me that at no time while Mr. Cook was her client was she told by Mr. Marney that files such as those which were found on Mr. Cook's computer could have been placed there by an unknown third party.

21. Ms. Grill informed me that she would have pursued this aspect of the defense had she been informed of the possibility.

FURTHER AFFIANT SAYETH NAUGHT.

*[signature]*

SWORN TO AND SUBSCRIBED TO ME A NOTARY PUBLIC, this 23rd day of February, 2012.

*[signature]*
Notary Public

JOSEF REULING
NOTARY PUBLIC - OHIO
MY COMMISSION EXPIRES 10-17-2016

3

| | |
|---|---|
| STATE OF OHIO | ) |
| | ) SS: A F F I D A V I T |
| COUNTY OF CUYAHOGA | ) |

1. My name is Mark T. Vassel and I am the President, Chief Executive Officer, and Chief Forensic Examiner of Midwest Data Group, L.L.C.

2. On or about August 4, 2011, I was contacted by Attorney Elizabeth Kelley. I had once before provided computer forensic analysis for her on a case.

3. Attorney Kelley explained that she was in a difficult position; that she had just been retained on the case of United States of America v. Alex Cook, that she had filed a Motion to Continue, but that the Government had strenuously objected to the Motion, and that the Judge had denied the Continuance. Therefore, she had to be fully prepared to try this case on September 6, 2011.

4. Attorney Kelley needed me to do an examination and produce a report in the time available before the trial. Moreover, she needed me to be available to testify later in the week of September 6 or the following week.

5. Following the telephone conversation, she sent me a packet of materials, including a report obtained by prior counsel by Wayne Marney.

6. I reviewed the materials, traveled to Toledo to examine the hard drive, and produced a report which I emailed to Attorney Kelley on August 25, 2011.

7. Never in my conversations with Attorney Kelley did I raise the possibility that a third party might have remotely planted the child pornography on Mr. Cook's computer. Indeed, to perform such an analysis, I would have needed at least ninety (90) days. Because of the short time which the Court gave her to prepare for trial, this would have been impossible.

8. During the course of my examination, I found that although there were images and videos depicting child pornography on Mr. Cook's computer, there was no evidence that Mr. Cook had sought out these items using any keyword search terms commonly associated with child pornography.

9. Moreover, there was no evidence that any of the files in question had been double-clicked on, opened, or displayed.

10. I relayed this information to Attorney Kelley. I felt that if the Government knew of this information, it might be persuaded to dismiss the case. I have worked on prior, similar cases wherein the Prosecution had dismissed the case; because the files were never been opened.

11. Attorney Kelley authorized me to share a copy of the report with Mr. Secor and Eugene Crawford and invite them to discuss my findings with them. Neither responded.

FURTHER AFFIANT SAYETH NAUGHT.                    _____

SWORN TO BEFORE ME and subscribed in my presence, this 14 day of November, 2011.

DORIS ALVELO
Notary Public, State of Ohio
My Commission Expires
May 10, 2014
Recorded in Cuyahoga County

Notary Public

|  |  |  |
|---|---|---|
| STATE OF OHIO | ) | |
| | ) | SS: AFFIDAVIT |
| COUNTY OF LUCAS | ) | |

1. My name is William Rexer and I served on the jury in the case of United States of America v. Alex David Cook, held on September 6, 2001 through September 9, 2011. The case was held in federal court in Toledo, Ohio in front of The Honorable James A. Carr.

2. My fellow jurors and I took our responsibility very seriously. During deliberations, we searched for a viable explanation as to how the child pornography ended up on the defendant's computer.

3. On or about February 16, 2012, I was approached by Bill Jonke, a consultant for the defense. He told me that after the trial was over the defense had discovered that files such as the files in evidence that were found on Alex Cook's computer could in fact have been placed thereby an unknown third party hacker without Mr. Cook's knowledge, and that the defense has been able to demonstrate that this can in fact happen. If it is possible that these files could have been placed there by a hacker, that may have indeed changed my Guilty vote to Not Guilty in the above referenced trial.

4. Had such information been made known at Mr. Cook's trial, it could possibly have changed the outcome of the verdict.

FURTHER AFFIANT SAYETH NAUGHT.

_William F. Rexer Jr._

SWORN TO AND SUBSCRIBED TO ME A NOTARY PUBLIC.

_Notary Public_

Dated this 21st day of February 2012.

STEPHEN DILLON HARTMAN
Attorney at Law
Notary Public, State of Ohio
My Commission Has No Expiration
Section 147.03 R.C.

E

THE STATE OF OHIO

COUNTY OF FRANKLIN       AFFIDAVIT

Before me, the undersigned notary public, personally appeared Kathryn Koch, who, after being duly sworn on her oath deposed and said:

My name is Kathryn Koch. I am a licensed private investigator in the state of Ohio.

Many years ago I was checking my emails. I saw an email address that looked business related so I opened it. Upon opening it, I saw an image of a naked, very young girl.

This image was not solicited by me or any other person. I had not performed any related searches that would prompt something like this to appear.

I learned from the Franklin County Prosecutor's office that this image will forever be kept somewhere on my computer.

_____
Kathryn Koch

Sworn to before me, the undersigned authority on this the 17th day of February, 2012.

_____
Notary Public P. Dennis Pusater
Atty - Lifetime Comm. per R.C. § 147.03

F