In the
# UNITED STATES DISTRICT COURT
for the Northern District of Ohio
Western Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | Case No.  3:10 CR 522 |
| | : | |
| v. | : | District Judge James G. Carr |
| | : | |
| ALEX DAVID COOK, | : | MEMORANDUM |
| | : | |
| Defendant. | : | |
| | : | |

**MEMORANDUM IN OPPOSITION
TO DEFENDANT ALEX DAVID COOK'S MOTION FOR NEW TRIAL**

**I.     Introduction**

Defendant Alex Cook's motion for a new trial asks the Court to decide whether the mere existence of technology allowing a hacker to place child pornography on a computer constitutes "newly discovered evidence" so compelling that it requires a new trial under Federal Rule of Criminal Procedure 33(b).  It does not, and the Court should accordingly deny the motion.

**II.    Statement of the Facts and Case**

In December 2010, the Government obtained an indictment charging Cook with receipt of child pornography after an FBI investigation revealed that Cook had used the Internet and LimeWire peer-to-peer file sharing software to download child pornography on his laptop computer.  (Doc. #5).  The Court appointed the Federal Public Defender to represent Cook, and he pleaded not guilty.  (Doc. #20).  When it became apparent Cook did not want to resolve the case, the Government obtained a superseding indictment charging receipt and distribution of child pornography in violation of 18 U.S.C. § 2252(a)(2) (two counts) and possession of child

pornography in violation of 18 U.S.C. § 2252(a)(4)(B).  (Doc. #15).

The Court first scheduled trial for June 28, 2011, over six months after Cook was first indicted.  (Doc. #17).  On May 19, 2011, at Cook's request, (Doc. #22), the Court continued the trial a final time to September 6, 2011—one week short of a year since the FBI served a search warrant on Cook's residence and interviewed him about the case.  (Doc. #23).  During that time, the public defender hired a computer expert to examine Cook's laptop and a psychologist to examine Cook.

Thirty-four days before trial, notice came that Cook had retained new counsel and wanted another trial continuance.  (Docs. #32–#34).  The Court held a timely conference and denied a continuance.  (Docs. #35, #36).  Trial started as scheduled on September 6, 2011.

The Government's witnesses began by explaining how the FBI downloaded child pornography over an Internet file-sharing network from a computer using an Internet Protocol (IP) address assigned to Cook's personal Time Warner Internet account.  Trial Tr. Vol. 1, at 41–60 (FBI Special Agent Whisman).  Agents then obtained a search warrant for Cook's apartment in Lima, where they eventually seized a laptop computer from his bedroom.  Trial Tr. Vol. 2, at 86–87 (FBI Special Agent Schulte); Trial Tr. Vol. 2, at 160–62 (FBI Special Agent Jones).  Cook was present during the search, told the agents that there was child pornography on his computer, and went with the agents for an interview at the FBI's Lima office.  Trial Tr. Vol. 4, at 403 (FBI Special Agent Pape); Trial Tr. Vol. 2, at 86–97 (FBI Special Agent Schulte).  During the interview, Cook admitted to downloading child pornography from the Internet and signed a written confession prepared by the interviewer.  Gov't Ex. 9.

Toledo Police Detective David Morford testified about his forensic examination of Cook's laptop computer and his discovery on that computer of numerous still and video images

of child pornography. Trial Tr. Vol. 3, at 214–47; Gov't Ex. 15. Detective Morford explained in great detail where the child pornography images were located on Cook's computer and how the location of the images was consistent with someone searching for and downloading the images using LimeWire. Trial Tr. Vol. 3, at 226–36.

The defense witnesses corroborated much of the Government's case. The psychologist who examined Cook testified that Cook admitted that he downloaded music and adult pornography using LimeWire. Trial Tr. Vol. 3, at 202–03 (Dr. Graves). Cook also admitted to the psychologist that there were images of child pornography on his laptop, that Cook deleted them, and that the images were of a 14 or 15 year old girl with "[s]mall breasts, no body hair." *Id.* at 203. Cook also testified and admitted using LimeWire to download music and adult pornography. Trial Tr. Vol. 4, at 328–29. He also admitted that he told the psychologist and FBI agents that there may have been images of child pornography on his laptop. Trial Tr. Vol. 4, at 330, 333. Cook denied, however, searching for and downloading child pornography. Trial Tr. Vol. 4, at 329.

Cook had his retained computer expert examine his computer. That expert testified that there was child pornography on Cook's laptop. Trial Tr. Vol. 4, at 362–68 (Mark Vassel). He claimed to have found no evidence, however, that Cook searched for the child pornography or that Cook had ever viewed it. Trial Tr. Vol. 4, at 352–56 (Mark Vassel).

The jury convicted Cook on all counts on September 9, 2011. Over five months later, Cook filed the pending motion for a new trial based on newly-discovered evidence. See Motion for New Trial (Doc. #62) ("Cook Mot."). In sum, the motion claims that if Cook had more time, he could have examined his laptop and discovered evidence that someone had hacked into his wireless network and then hacked into his password-protected laptop, planting child pornography

3

there. *Id.* at 10–11. Once substantiated, he believes this "anonymous-hacker" defense would have changed the result of his trial and thus justifies a new one.

**III. Argument**

    **A. Cook faces a heavy burden in justifying a new trial based on "newly discovered" evidence under Federal Rule of Criminal Procedure 33(a).**

Federal Rule of Criminal Procedure 33(a) says that a Court "may vacate any judgement and grant a new trial if the interest of justice so requires," a standard far more onerous than it sounds. Although Rule 33(b)(1) expressly contemplates new-trial motions "grounded on newly discovered evidence," such motions "are disfavored and should be granted with caution," *United States v. Turns*, 198 F.3d 584, 586 (6th Cir. 2000). In order to obtain a new trial based on "newly discovered evidence," a defendant must show *all* four factors outlined in *United States v. Barlow*, 693 F.2d 954 (6th Cir. 1982): (1) the new evidence was discovered after trial, (2) the evidence could not have been discovered earlier through the exercise of due diligence, (3) the new evidence is material and not simply cumulative or impeaching, and (4) the new evidence would likely result in an acquittal, *id.* at 966.

Failing to identify and develop the significance of available evidence before trial, followed by the recognition of that failure after trial, does not result in "newly discovered" evidence under Rule 33(b). See *United States v. Seago*, 930 F.2d 482, 489 (6th Cir. 1991). Rather, "[t]actical errors committed in the course of trial, such as a failure to pursue" a certain defense, "are facts within [the defendant's] knowledge at the time of trial." *Id.* at 489. And that is true even when a defendant "contends that, as a layperson, he did not understand the legal significance" of his counsel's strategy choices. *Id.* at 490.

4

      **B.**     **Cook's new trial motion is untimely because it based on a constitutional claim, not "newly discovered evidence."**

It bears mention up front that while Cook's motion claims to be based on "new evidence," it is actually based on a constitutional claim. Cook captions his argument: "Alex Cook was denied his constitutional right to due process as guaranteed by the Fifth Amendment to the United States Constitution because of a lack of an opportunity to present an adequate defense." Cook Mot. at 9. Cook's argument is better read as an admission that he has no new evidence, just a constitutional claim, and all that follows is speculation about what evidence he hoped to develop with a continuance. If Cook wanted to press his constitutional claim in a motion for a new trial, Rule 33(b)(2) required him to do that within fourteen days of the guilty verdict, a date that has long since passed. The Court could thus deny the motion for that reason.

      **C.**     **In any event, Cook has failed to establish a right to a new trial under the *Barlow* factors.**

Assuming Cook's anonymous-hacker theory is even "evidence," it cannot satisfy his heavy burden of justifying a new trial under the *Barlow* factors:

1. *Was evidence discovered after trial?* Cook may be asserting his anonymous-hacker theory for the first time after trial, but it is based on a theme thoroughly explored at trial—access to Cook's laptop where the child pornography was found. Indeed, Cook based his whole defense on access. He fully cross-examined this roommate, Ian Douglas, about any access he had to the laptop. Trial Tr. Vol. 4, at 396–97. Cook and his father each testified that Douglas had access to the computer. Trial Tr. Vol. 4, at 300; Trial Tr. Vol. 4, at 273. Cook made it clear to the jury that the FBI did not have a "hidden camera" or anything else that might capture Cook physically sitting at his laptop receiving and distributing child pornography. Trial Tr. Vol. 1, at 61. And Cook questioned Detective Morford about the possibility of others hacking into Cook's

5

computer, which, if anything, seems an admission that Cook knew of the anonymous-hacker theory before trial.  Trial Tr. Vol. 3, at 253.  Cook can thus hardly claim these issues are new.

    2. *Could the evidence have been discovered earlier with the exercise of due diligence.* Cook's only argument here is that he had insufficient time for his computer expert (the second one) to complete an adequate examination.  According to the expert's affidavit, he needed 90 days to complete the examination but only had 30 days because there was no continuance.  Vassel Aff. at ¶ 7 (attached to Cook Mot. as Ex. D).  Cook's excuse has several problems.  First, the expert offers no explanation for why it would take 90 days to complete his examination.  Second, extra time to explore the anonymous-hacker theory was never presented to the Court as a reason for a continuance.  Even if it would take 90 days to complete the anonymous-hacker examination, no explanation is given for why the issue could not have been identified and presented to the Court before trial.

    Last, this case is captioned "*United States v. Cook*," not "*United States v. Cook's Current Defense Team*," and Cook had *nine months* from the initial indictment to prepare for trial.  The actual September 2011 trial date, moreover, had been set for nearly four months when trial began.  But after accepting for eight months the public defender's services (and its computer expert's and psychologist's services), Cook decided 34 days before trial that he could retain private counsel and his own computer expert (and now a trial consultant).  If he was considering new counsel before then, he never bothered telling the Court.  Telephone Conf. Tr., dated Aug. 4, 2011, at 18 (Court noting Cook's decision "still comes at the eleventh hour, whenever it was finally made, one way or the other").

    Cook's case is much like *United States v. Zimmerman*, 155 Fed. Appx. 821 (6th Cir. 2005), where the Sixth Circuit rejected a child-pornography defendant's "newly discovered

evidence" theory based on a post-trial analysis by a computer expert.  The *Zimmerman* expert concluded someone else put child pornography on the defendant's computer "merely [by] analyz[ing] old printed directory listings and log files that were available to the defense before and throughout the trial." *Id.* at 824–25.  Thus "[a]ny conclusion [the expert] could reach now," the court held, "necessarily could have been reached before the trial through the exercise of due diligence." *Id.* at 825.  The same is true for Cook's anonymous-hacker theory.

      3.  *Is the evidence material and not merely cumulative or impeaching?*  Cook's anonymous-hacker theory does not identify someone else who actually put child pornography on Cook's laptop, so the theory serves only to raise doubt about the Government's case.  It is a rare case, though, where a defendant post-trial cannot think of one more reason to doubt the Government's case, and that is all Cook has done.  Cf. *Seago*, 930 F.2d at 491 (defendant's new evidence perhaps "would have created a conflict in the evidence, but such conflicts do not amount to a likelihood of acquittal").  Moreover, the anonymous-hacker theory is cumulative in the sense Cook did argue doubt over whether someone else could have put the child pornography on his computer.  But the jury did not believe him.

      4.  *Would the newly discovered evidence likely result in an acquittal?*  No, because Cook's anonymous-hacker theory cannot plausibly explain how the child pornography was put on Cook's laptop.  Cook bases the anonymous-hacker theory on his wireless Internet network at his Lima apartment.  Cook Mot. at 11.  Because it was wireless, the theory goes, a hacker could have remotely accessed the network and placed child pornography on Cook's laptop.

      The problem is that Cook (and his father) testified that he moved into his apartment at the *end* of April 2010, Trial Tr. Vol. 4, at 328 (Alex Cook); Trial Tr. Vol 4., at 271 (Jerry Cook). Cook's own expert, however, testified that someone was trying to use Cook's laptop to download

7

picture files named with words like "illegal preteen underage Lolitas kiddie child incest," and "Lolita Russian doing cock suck child PEDO" as early as April 2, 2011, Trial Tr. Vol. 4, at 379–80 (Mark Vassel). Detective Morford identified a movie from Cook's laptop entitled "13 year old little girls get come in face," part of which was played for the jury and appeared to depict child pornography. Trial Tr. Vol. 4, at 385. Detective Morford testified that this file was created on April 19, 2010. *Id.*; Trial Tr. Vol. 353–54 (Mark Vassel explaining a created date is the date the file was created on Cook's laptop).

Indeed, Time Warner's subpoena response concerning ownership of the IP address indicated Cook's Internet account began May 6, 2010—over a month after his laptop was used to look for and download child pornography. Gov't Ex. 4. Even some of the files downloaded during the FBI's undercover session were created before Cook started his Time Warner account—"12 yo girl fucking her dog," for example, was created on Cook's laptop May 2, 2010. Gov't Ex. 1 (undercover session disk); Gov't Ex. 23 (files in LimeWire shared folder on Cook's laptop). Ian Douglas, Cook's Lima roommate, moved in at the same time Cook did, and nothing suggests he had any prior access to Cook's laptop. Trial Tr. Vol. 4, at 328 (Alex Cook). From this, a jury could only conclude that someone was searching for and downloading child pornography using Cook's laptop before he even moved into the apartment with the wireless network he now claims is the centerpiece of his anonymous-hacker theory.

Beyond this, the Government produced overwhelming evidence of Cook's guilt:

- The FBI downloaded child pornography from a computer using an IP address assigned to Cook's own Internet account. Trial Tr. Vol. 1, at 41–60 (FBI Special Agent Whisman).

- Cook confessed to an FBI agent that he searched for and downloaded child pornography, and then Cook signed a written confession. Gov't Ex. 9.

8

- A Government forensic examiner discovered numerous images and videos of child-pornography on Cook's laptop, which was found in his room and which he never disputed was his.  The child pornography was stored and displayed in a manner consistent with a user downloading and sharing those files using LimeWire.  Trial Tr. Vol. 3, at 214–47 (Toledo Police Detective Morford); Gov't Ex. 15.

- Cook's own expert determined there was child pornography on Cook's laptop. Trial Tr. Vol. 4, at 362, 368 (Mark Vassel).

- Cook told FBI agents serving the search warrant and later told his psychologist that there were in fact images of child pornography on his computer.  Trial Tr. Vol. 4, at 403 (FBI Special Agent Pape); Trial Tr. Vol. 3, at 202 (Dr. Graves); Trial Tr. Vol. 4, at 330, 333 (Alex Cook) (Cook admitted that he told the psychologist and FBI agents that there may have been images of child pornography on his laptop.).

- Cook admitted using LimeWire on his laptop to download music and adult pornography. Trial Tr. Vol. 4, at 328–39 (Alex Cook).

To show likelihood of an acquittal, Cook offers a juror affidavit establishing the truism that if the facts had been different, the verdict might have been different.  See Rexner Aff. (attached to Cook Mot. as Ex. E).  The affidavit says the jury "searched for a *viable* explanation as to how the child pornography ended up on the defendant's computer." *Id.* at ¶ 2 (emphasis added).  The jury was offered some alternative explanations for the child-pornography—Ian Douglas, for example—but they obviously did not consider those "viable" explanations.  The key point in the juror's meticulously-worded affidavit comes when he says that if it was "possible" an anonymous hacker was involved, "that may have indeed changed my Guilty vote to Not Guilty . . . ." *Id.* at ¶ 3.  But why is the juror unable to say affirmatively he would have changed his vote? Because while hacking may be a possible explanation, this juror needs to know if it is a "viable" one, and Cook's trial consultant was unable to provide the juror with any reason to believe it is.  The affidavit, if anything, proves that Cook had a conscientious jury that gave him every benefit of the doubt.  They "searched for a viable explanation," *id.* at ¶ 2, but could find none.

9

**IV.     Conclusion**

The Court should deny the motion for a new trial.[*]

Respectfully submitted,

Steven M. Dettelbach
United States Attorney

 s/ Gene Crawford
Thomas O. Secor
Assistant United States Attorney

Gene Crawford
Assistant United States Attorney

United States Attorney's Office
Four SeaGate, Suite 308
Toledo, Ohio 43604
Phone: (419) 259-6376
Fax:    (419) 259-6360
gene.crawford@usdoj.gov

---

[*]The Court should reject Cook's request for an evidentiary hearing, too. The above arguments are all written on the assumption (not concession) that one could hack into a computer through a wireless network. Even if the facts Cook argues in his motion are true, that would not change the Government's arguments. In that sense, an evidentiary hearing is pointless, and the Court should not hold one.

**CERTIFICATE OF SERVICE**

On March 2, 2012 the foregoing document was filed electronically with the Court's CM/ECF system, which will send electronic notification to all counsel of record

       s/ Gene Crawford
Gene Crawford
Assistant United States Attorney