STATE OF OHIO )
)   SS: A F F I D A V I T
COUNTY OF KNOX )

1. My name is Jerry Cook, and I am the father of Alex David Cook, the defendant in United States of America v. Alex David Cook.

2. I am a Senior Design Specialist with North American Communications.

3. I have been married to Alex's mother, Evea Cook, for almost twenty-six years...

4. I have read the Government's Memorandum in Opposition to my son's Motion for a New Trial, and I am offended by how it has portrayed our family's efforts to obtain counsel for Alex and to prove his innocence.

5. I am writing this affidavit to set the record straight and to show the Court that our family is not trying to take advantage of the system.

6. When this entire process began with Alex in November of 2010, our family had never been through anything like this in our entire lives. The only interaction we had had with law enforcement had been minor traffic violations.

7. We met with the Public Defender in late November to discuss the case. She informed us that the process would take nine or more months. We informed her that we did not have the monetary means to pay for an attorney. The only funds we had of substantial value was my retirement fund.

8. Alex and I met with the Public Defender as she requested over the next several months and we were in court whenever we were told.

9. We thought things were going fine until she brought in a supposed computer expert to assist with Alex's defense. This expert did very little and would not listen to anything we had to say.

10. Throughout this, the Public Defender tried to get Alex to plead guilty. Alex said that he could not lie to the Court and confess to something he did not do.

11. Later, when Alex was charged with a superseding indictment, we felt as if he were being pressured by the Government to plead guilty. In other words, he was being punished because he said he was innocent.

12. After the suppression hearing, we were told that a trial date was set for late June. At that time, we also learned that our attorney would be out of the office the two weeks prior to the start of the trial. Although we recognize that everyone has a right to a

vacation, we thought that this was cutting it too short and that she would not be as prepared as she could be. We then asked that she request a continuance.

13. This was the only time that a continuance was ever discussed with us by our attorney. We were later surprised to learn that several other continuances were requested which we did not know about. Furthermore, we were troubled when this apparently hurt our new attorney's request for a continuance before trial in September.

14. While the case was going on, we tried to stay in close contact with the Public Defender. However, this was difficult because we live about three hours from Toledo. So we had conference calls as often as possible.

15. During one of these calls, I brought up the supposed expert. I told her that I had found numerous errors in the report. Moreover, Alex and I did not believe that the expert did anything to try and help Alex.

16. The Public Defender said that the expert had done everything he was going to do and this was the expert she was going to use.

17. We were even more troubled when the Public Defender told Alex to go see his court-appointed psychologist and have him convince him that he needed to admit that he had done this and plead guilty. But due to our lack of finances, we felt we had to continue with the Public Defender.

18. In late June or early July, we had another conference call. Alex was asked why he wanted to go to trial and he said that he felt he needed to because he did not do what he was charged with. We were told that this was not a good enough reason.

19. We decided that this was no longer working and that we needed to hire an attorney, whatever the cost. We had never had to look for a criminal attorney and this proved to be more difficult that we ever imagined. We discovered that this was even more complicated because we needed to find an attorney experienced in federal court. We finally found an attorney who had some federal experience, but he was from the Columbus area.

20. That attorney reached out to attorneys who practiced in the Northern District of Ohio. At the beginning of August, we were given the name of Elizabeth Kelley.

21. We met with Ms. Kelley to see if she could handle the case. We talked for several hours with her. Then, as a family, we spent a day praying and thinking about this monumental decision.

22. Although it was going to take the majority of our retirement funds, we elected to hire Ms. Kelley and retained her in early August. And since Alex was convicted, my mother has taken out a mortgage on her home to prove Alex's innocence.

23. The prosecutor faults us for not telling the Court earlier that we were dissatisfied with our Public Defender. But when exactly when were we supposed to have done this? And how were we to have done this?

24. The prosecutor is sarcastic about our ability to fund Alex's defense. But when your son's life is at stake, you will pay any price.

FURTHER AFFIANT SAYETH NAUGHT.

*/s/ Guy L. Cook*

SWORN TO AND SUBSCRIBED TO ME A NOTARY PUBLIC.

Notary Public

*/s/ Carolyn J. Fergus*
Notary Public, State of Ohio
My Commission Expires 3-1-19