```
 1                    UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF OHIO
 2                        WESTERN DIVISION


 3


 4   UNITED STATES OF AMERICA,-    Docket No. 3:10-cr-522
                                -
 5      Plaintiff,              -    Toledo, Ohio
                                -    June 18, 2012
 6           v.                 -    Sentencing
                                -
 7   ALEX DAVID COOK,           -
                                -
 8      Defendant.              -
     --------------------------------

 9
                     TRANSCRIPT OF SENTENCING HEARING
10             BEFORE THE HONORABLE JAMES G. CARR
                  UNITED STATES DISTRICT JUDGE.
11
     APPEARANCES:
12
     For the Plaintiffs:  United States Attorneys' Office
13                        By:  Thomas O. Secor
                               Gene Crawford
14                        Four SeaGate, Suite 308
                          Toledo, OH 43604
15                        (419) 259-6376

16   For the Defendant:   Elizabeth Kelley
                          Suite 285
17                        13938A Cedar Road
                          Cleveland, OH 44118-3204
18                        (216) 410-6923

19   Court Reporter:      Tracy L. Spore, RMR, CRR
                          1716 Spielbusch Avenue
20                        Toledo, Ohio 43624
                          (419) 213-5520

21


22


23   Proceedings recorded by mechanical stenography,
     transcript produced by notereading.
24


25
```

```
 1                    (Commenced at 11:25 p.m.)

 2                    THE CLERK:  Case number 3:10-CR-522, United

 3   States of America versus Alex David Cook.  Matter called

 4   for sentencing.

 5                    THE COURT:  The defendant is present in

 6   court with his attorney, Ms. Elizabeth Kelley.  The

 7   government is represented by Gene Crawford and Tom

 8   Secor, Assistant United States Attorneys.  Also present

 9   is Shawna Sizemore, U.S. Pretrial Service and Probation

10   officer.

11                    Counsel, did you receive and review the

12   presentence report?  If so, do you have any objections?

13   If not, are you prepared to proceed with sentencing?

14                    MS. KELLEY:  Yes, we received it; we

15   reviewed it, and we do not have any objections.

16                    THE COURT:  Mr. Crawford?

17                    MR. CRAWFORD:  Your Honor, the government

18   has received the report, reviewed it, and we do not have

19   any objections.

20                    THE COURT:  Mr. Cook, did you read the

21   presentence report?

22                    THE DEFENDANT:  Yes.  Yes, Your Honor.

23                    THE COURT:  And did you understand what it

24   says and what it means?

25                    THE DEFENDANT:  I do believe so, Your Honor.
```

```
1                THE COURT:  And did Ms. Kelley go over it

2     with you and answer any questions that you might have

3     had?

4                THE DEFENDANT:  Yes, Your Honor.

5                THE COURT:  And are you satisfied that she

6     has represented you dutifully and diligently and given

7     you and your case enough time and attention throughout

8     the entire course of the proceedings during which she's

9     been your attorney?

10               THE DEFENDANT:  Yes, Your Honor.

11               THE COURT:  And that she's prepared both

12    yourself and herself adequately for each stage of the

13    proceedings?

14               THE DEFENDANT:  Yes, Your Honor.

15               THE COURT:  Okay.  There are a couple of

16    motions.  I've read the sentencing memorandum; I've read

17    the letters submitted on behalf of the defendant.

18    There's a motion with respect to the computer; is that

19    correct?

20               MS. KELLEY:  Yes, it is, Your Honor.

21               THE COURT:  And as I indicated in chambers,

22    I'm going to deny that motion without prejudice to renew

23    in the event of a postconviction relief petition.  I

24    believe that the request rather than being based on

25    something newly discovered or something newly learned
```

1    about technology or whatever, that it encompasses an

2    inquiry that either has been adequately undertaken or,

3    to the extent that it may not have been, could have been

4    undertaken or certainly could have been raised as a

5    concern for before trial.  As I say, that's without

6    prejudice.

7              I think that's the only pending motion; is

8    that correct?

9              MS. KELLEY:  And I also filed a motion for

10   bond pending appeal.

11             THE COURT:  Of course.  Oh, no, we'll have

12   to talk about that.

13             The government, have you seen that motion?

14   And if so --

15             MR. CRAWFORD:  Your Honor, we've seen the

16   motion.  We wouldn't have any objection to

17   self-surrender, but I understand appellate bond is

18   something different.  I understand they're going to have

19   an appeal; I understand they're going to have issues

20   raised on appeal.  Whether they can meet the high burden

21   of showing the likelihood of success on retrial, I don't

22   think that showing's been made.  I don't know that it's

23   been attempted to be made.

24             THE COURT:  I'll set a date before which

25   he's not to self-surrender sufficient to enable you to

1    file a written response so that I can then rule on that.

2            MS. KELLEY:  And in turn would I have an

3    opportunity to respond to that?

4            THE COURT:  Yes.  In fact, why don't you

5    respond by July 2, and Ms. Kelley, you respond by July

6    15.  And I'll make the self-surrender date not earlier

7    than September 1 or whatever the Monday -- the Tuesday

8    after Labor Day is.  And, of course, the same conditions

9    of release will maintain.

10           To confirm the guideline range, the total

11   offense level is 35, criminal history category of I.  As

12   to Counts 1 and 2 the guideline range is 168 to 210

13   months.  As to Count 3 it's 120 months.  As to Counts 1

14   and 2 there's a mandatory minimum of five years or 60

15   months.  Would you agree, Mr. Crawford?

16           MR. CRAWFORD:  Yes, Your Honor.

17           THE COURT:  Ms. Kelley, would you agree with

18   those guideline ranges?

19           MS. KELLEY:  Yes, Your Honor.

20           THE COURT:  Anything on behalf of the

21   government?

22           MR. CRAWFORD:  Your Honor, briefly, I point

23   out that in talking to Mr. Secor and others, I think

24   this is the first internet child pornography case that

25   we've had in this divisions, perhaps ever, and the Court

1    sat through the case.  The jurors sat through the case;

2    they saw the evidence.  They saw what we can all agree

3    is the unimaginable abuse that occurred to the victims

4    in order to make this pornography.  And yet we had the

5    trial, which is certainly Mr. Cook's right, but he

6    denied responsibility for it.  The jury didn't believe

7    him.  He continues to deny responsibility today.  The

8    Court has before it the information in the sentencing

9    report.  And we would rely on the Court's discretion to

10   impose an appropriate sentence in this case.

11           With respect to supervised release, we

12   recommend a sentence of approximately ten years of

13   supervised release which would more or less represent

14   the balance between a mandatory minimum and what the

15   guideline sentence would be, assuming the Court does not

16   impose a guideline sentence.

17           THE COURT:  Ms. Kelley, on behalf of your

18   client?  And as I indicated in chambers, I'm inclined to

19   vary significantly from the guideline range and impose a

20   term around 72 months.  That's somewhat higher than the

21   minimum mandatory.  To anticipate my reasons, if that's

22   what I do -- of course, I haven't heard from you or your

23   client, but I want you both to know that's what's on my

24   mind.  That certainly imposing a guideline sentence is

25   not on my mind.  It's far more severe than it is

1    sufficient to accomplish the purposes of sentencing.

2    But I'd have to take into consideration lack of

3    acceptance, which has already been computed into the

4    base offense level, and the fact he we went to trial.

5    And quite candidly, I didn't believe his testimony.

6                I want you to know that's on my mind.  It's

7    certainly not to impose, never has been, to impose a

8    guideline sentence.  At one point I think -- Ms.

9    Sizemore can confirm this, or Mr. Secor or Mr.

10   Crawford -- I had understood and was appalled by the

11   process; it was a 15-year mandatory minimum.  I was

12   relieved to learn that it was substantially less than

13   that.  And I will say that if it were not a minimum

14   mandatory term, I would think of something below that as

15   being appropriate.  But under all the circumstances,

16   that's where I am in the thoughts about the sentencing

17   having prepared myself for today's proceeding.

18               So that being said, first on behalf of your

19   client, then I'll ask Mr. Cook to speak before I

20   proceed.

21               MS. KELLEY:  Thank you, Your Honor.  A

22   number of points I would like to address.  First of all,

23   in terms of sentencing, as you noted, I submitted a

24   detailed sentencing memorandum.  I know the Court has

25   read it, studied it, and reflected upon it.  And as the

1    Court noted, a guideline sentence of 14 to 17 and a half

2    years would be not only unreasonable but unconscionable.

3    In the sentencing memorandum we asked this Court to

4    administer a variance of that sentence and to give Alex

5    the minimum mandatory of five years.  That, we firmly

6    believe, would be sufficient but not greater than what

7    is needed to fulfill the purposes of the 3553(a)

8    factors.  In particular, as this Court learned during

9    the trial, as this Court has learned during the pendency

10   of postconviction proceedings, Mr. Cook has no prior

11   criminal record and indeed up until the moment that he

12   was indicted he enjoyed a sterling reputation in his

13   community.

14          THE COURT:  Still does, from many people.

15          MS. KELLEY:  As this Court remembers, every

16   single day during the trial the courtroom was packed,

17   and many of those people submitted letters, which I

18   attached to the sentencing memorandum.  Many of those

19   same people are gathered here in the courtroom today.

20   Also, as I put forth in the sentencing memorandum, Mr.

21   Cook poses no danger whatsoever --

22          THE COURT:  I agree.

23          MS. KELLEY:  -- to the community.

24          Thank you, then I'll move on.

25          THE COURT:  And the likelihood that he's a

1    danger to young children, which is always a concern,

2    appears to be very slight, if existent at all.  I'm

3    taking that into account --

4            MS. KELLEY:  I appreciate that.

5            THE COURT:  -- in fashioning my sentence.

6            MS. KELLEY:  Alex is extremely nervous

7    today.  He would like to address the Court, but in order

8    that his thoughts are cogent, he gave me a letter which

9    I would like to read to the Court, if I may.

10           THE COURT:  Okay.

11           MS. KELLEY:  Your Honor, I just wanted to

12   say that I came here today with a heavy heart.  I also

13   want to say that I respect Your Honor and the jury

14   system of our country.  Because I have that respect for

15   Your Honor and the jury system, I could not and cannot

16   now come into this Court and lie and say that I did

17   something that I know in my heart and soul I did not do.

18   I will also say that my intent is to appeal this

19   conviction and clear my name.  I deeply respect and

20   thank Your Honor for all of the mercy you have shown me.

21   I would also ask for your compassion and leniency at

22   this time.

23           Also, if the Court pleases, Mr. Jerry Cook,

24   Alex's father, would like to address this Court.

25           THE COURT:  Okay.

1          MS. KELLEY:  And before he does, I would
2    like to touch upon two matters.
3               First of all, for purposes of the record, I
4    would like to address the motion to inspect the
5    computer.  I would like to assure the Court that I did
6    not file that motion in bad faith.  And I did it out of
7    a well-founded belief that indeed this was important and
8    could be dispositive.  I was contacted by Mark Vassel,
9    our computer expert, several weeks ago who thought of
10   yet another thing that should be done in terms of the
11   inspection.  I said to him, I said, you had opportunity
12   back when this case was going to trial.  You had
13   opportunity earlier this spring in advance of our new
14   trial motion.  Why did you not think of it?  And he
15   said that this case had deeply troubled him, and he had
16   done some additional research into the issue of context.
17   And he addresses those points in subpoints 8 until the
18   end of his affidavit.  I told him that he was welcome to
19   explore that; however, he needed to contact the Toledo
20   PD and get permission to inspect.  They denied that
21   permission to inspect, and they told him that Mr. Cook's
22   attorney, that is to say me, would need to -- I would
23   need to file a copy or a motion with the Court
24   requesting permission.  I asked Mr. Vassel to produce an
25   affidavit, which he did last Thursday.  And I promptly

1    filed that motion.  And I believe Mr. Cook is going to

2    address a little bit more in particularity that

3    particular issue.  And with that in mind, we will now

4    hear from Mr. Cook.

5                THE COURT:  Okay.

6                MR. JERRY COOK:  Forgive me, Your Honor.  I

7    am nervous.  We have never been in a situation like this

8    before.  We've been in a court for minor traffic

9    accidents.  That was it.

10               When this hit, it was devastating.  We

11   didn't know what to do.  We trusted our system, and we

12   trusted the public defender's office.  And I think

13   there's some misconception what I read in documentation

14   that for some reason, because we changed lawyers so

15   late, that we were trying to pull a fast one and

16   mislead, and that was never our intent.

17               THE COURT:  I understand that.

18               MR. JERRY COOK:  You don't believe that.

19               But we came in June of last year -- late

20   June, early July.  And we found out that our public

21   defender, after she told Alex to go to his court

22   appointed psychologist, and get him to convince Alex

23   that he did this, and that she would come and talk to

24   our pastor and get him to convince Alex that he did

25   this, that we knew she was not going to represent Alex.

1   And she further called that out when we asked her about

2   computer forensics that she supposedly did with the

3   computer forensic guy; didn't have the right computer

4   name, type of computer.  We knew we had to do something.

5   So at that point we started looking for a new lawyer.

6   We live approximately two and half, three hours from

7   here.  Our town doesn't even have a criminal lawyer.  We

8   went to a nearby town, Mount Vernon, and tried to find

9   somebody to represent in federal court.  We found out

10  through the process that there's actually different

11  districts.  We never knew that.  And a lawyer down there

12  couldn't try up here.  So we went out on a search in

13  July to try -- mid July to try to find a lawyer up here,

14  and we found Ms. Kelley around the latter part of the

15  first week, the second week of August with the trial

16  beginning September 6.

17         At that time we interviewed her, we

18  interviewed several other lawyers.  We chose Ms. Kelley.

19  And at that time we never had a concern that she would

20  never be adequately prepared.  She did her best.  But I

21  think in this type of a trial, Alex said that she just

22  could not be prepared in less than three weeks before we

23  come before a trial of this magnitude.

24         At that same time we had to go find a

25  computer forensic individual, and we found a gentleman

1  over in the Cleveland area, Mark Vassel.  At that time

2  he tried to get access, and it took him a week and a

3  half to two weeks to get access.  So now we're less than

4  a week before trial, and he has basically one day to

5  investigate that computer and look at that computer.

6          And since this has happened, I've looked and

7  watched this intently in the media.  There's a case in

8  Mansfield, Ohio right now at the state level.  In the

9  paper the government says they take minimally 30 days to

10  look at this.  We had less than a week for our computer

11  expert to do the evaluation.  And he had to come to

12  Toledo to do that.  So he does not have enough time to

13  even really thoroughly look at the computer to present

14  that at trial.  And I believe in my heart that's a

15  disservice to not only Alex, but the justice system when

16  that can happen.  And these things happen.  We

17  understand that.  But I think what's more disturbing

18  about this whole thing is Alex's story has not changed

19  one iota.  He came to me and said what was going on.

20  And in my mind I cannot believe anything could happen

21  that he'd be looking at any of this time at all.  It's

22  just frightening.  There's no way this could happen.

23  No.  Look at the individual.  Well, I don't believe they

24  ever did look at the individual.  I don't believe these

25  charges were ever appropriate for 34 files on a

1  computer, 32 of which had never been looked at, never

2  been viewed, never been opened.  And two that he said

3  that he didn't know what they were, but they were

4  inappropriate; he deleted them.  And that's what he told

5  the government.  And guess what?  They were in the

6  deleted trash pile.

7            At that time he met -- and he's always been

8  taught to respect law enforcement.  And things out of

9  this trial came out that surprised me.  He met with, I

10  believe, Special Agent Pape in the Toledo office -- or

11  excuse me, the Lima office where he was given his

12  rights, and he was given his video statement, signed,

13  dated, and printed out for him in that office.  Alex

14  later remembers that there's a video camera in that

15  case, and he said there was no video.  Well, guess what?

16  We asked for that video, and we can't get it.  Oh, I

17  made a mistake.  I lied on the document when I typed it.

18  I'm sorry to say lied, Your Honor, but I believe that's

19  what it is.  It's a laziness and a mistake that he

20  checked the wrong box.  But political correctness aside,

21  it's wrong.  He also supposedly signed a statement that

22  day.  We don't know when it was signed or what was in

23  that statement because we never received a copy of it.

24  And when we finally did, all it had was a date stamp on

25  it, no time stamp.

1          My son made a mistake.  He did not read the

2    entire document, and he signed it anyway.  That was a

3    mistake.  But he did read the first part of it, first

4    several sentences, and it never mentioned anything about

5    child pornography in that at all.  That is beared [sic]

6    out by two polygraph examinations he took by Bill Evans

7    in Akron, Ohio that he never once told any of that

8    information in that statement to anybody.  He never once

9    downloaded or knowingly looked at child pornography.

10   Two polygraphs that were submitted to the government,

11   and they knew that.  Special Agent Pape said he took a

12   polygraph test, and it was inconclusive.  And this is

13   what shocked me.  But he told -- during the pretrial

14   hearing that he told Alex he was responding to those

15   polygraphs, and that wasn't true because it was

16   inconclusive.  That's when I found out that the FBI

17   during an interrogation can lie.  I don't agree with

18   that.  I understand they've got a tough job.  But I

19   never thought agents of our government could lie to

20   individual citizens.  Case aside, laws, we accept that.

21   But in a court of law, in this trial in front of a jury

22   he was asked, Did you ever lie to Alex Cook?  And he

23   said, No.  And that's wrong.  That's wrong.  He also

24   said that he printed -- when he printed out his two

25   rights statements in his video statements he gave them

1  to him.  He then said in a court of law he didn't have a

2  printer to print out his statement to make.  Your Honor,

3  if he printed out those two, how could he not print out

4  that one?  I believe that also was a lie.  When he got

5  caught -- and he said in the suppression hearing that he

6  never -- that that was Alex's words.  Then later in the

7  statement he said, well, no, that was my paraphrasing.

8  It wasn't Alex's words.  He paraphrased the entire

9  thing.  That was another inconsistency in his testimony.

10         And, Your Honor, you made a statement, and I

11  hope you hold to, and I believe you will because you are

12  a very honorable man, that when they get into an

13  interrogation room that everything goes astray.  Like

14  you said --

15         THE COURT:  I had a session afterwards which

16  the agents and the government will never forget.  I made

17  my views absolutely clear.  The United States, Federal

18  Bureau of Investigation, when they deliberately fail to

19  record interviews when the Toledo Police Department

20  does, Lucas County Sheriff does, the Ohio State Highway

21  Patrol, so far as I'm aware, practically every other law

22  enforcement agency in this state does, they're cheating.

23  And that's how I feel about it.  They come into court

24  wearing the Special Agent's badge and reputation.  And

25  when they fail to record, as can easily be done, they're

taking advantage of that.  And I understand that.  And I

have made that indisputably clear.  And I have told the

government and the FBI, the next time somebody stands

trial and they have failed to record the interview, I am

going to instruct the jury in as plain, as blunt terms

as humanly possible, in a way that would cause them to

weigh that failure, and take that into account, and to

hold it against the Federal Bureau of Investigation.  I

feel very strongly about that, Mr. Cook.  I really do.

I'm using a very blunt term.  They cheat when they fail

to record every conversation.

This is the second occasion where conviction

has been obtained on the basis of an unrecorded

conversation.  The first time was a lawyer of high

standing in this community.  And he told a story that

diverged from that of the FBI.  And the jury is here to

believe -- yeah.

I said, candidly, I don't believe your son,

aside from all of that.  Okay.  I understand your views.

He is your son.  And it's incredible for you that he

could have committed the acts which the jury found him

guilty.  But the jury has.  And the Congress of the

United States has said to me I must impose at least a

five-year term.  I find that hideous.  Where does the

Congress of the United States -- it has the authority

1   certainly, but the wisdom that is necessary to treat

2   each defendant, no matter his crime, no matter how

3   guilty, no matter what doubt one might have about his

4   guilt and the accuracy of the jury's verdict, where does

5   it get the wisdom to assess on everybody convicted of

6   the same crime, regardless of circumstances, regardless

7   of prior criminal involvement, regardless of personal

8   characteristics, all the things and all else that we as

9   judges have to take into account and must take into

10  account in trying to craft the sentence?  Congress has

11  been elected by the people and therefore, at least in

12  theory, is expressing the will of the people that that's

13  what we have to do in some select set of cases.  And

14  that is a view with which I disagree absolutely.

15              I am far from infallible.  And my judgment,

16  quite properly, is going to be questioned in this case

17  on appeal.  That's fine.   I welcome an appeal.  And if

18  I erred either in my decisions before or during trial,

19  or at this proceeding, I should be reversed.  And that

20  never bothers me.  That's what the Courts of Appeal are

21  here for, because judges are not infallible.  But when

22  it comes time to impose a mandatory minimum sentence,

23  that's not right.  But that's what, in this area,

24  Congress and the law require.

25              MR. JERRY COOK:  I understand that, Your

1    Honor.  Thank you.

2              THE COURT:  So I agree with you in that

3    regard.

4              MR. JERRY COOK:  Also, I'd like to say, Your

5    Honor, when you think about that and you think, well,

6    video camera, I just did my own quick numbers, $250 for

7    a video camera.

8              THE COURT:  Mr. Cook, I understand that.

9    Absolutely.  And that's part of it.  How much?  Go to

10   Radio Shack and get a tape recorder.

11             THE DEFENDANT:  They could outfit the entire

12   FBI with less than we spent in one minute of our

13   national budget.

14             THE COURT:  As I say, you're welcome to

15   obtain a transcript of my remarks if you want.  I think,

16   if nothing else, you'd be a bit gratified to hear me say

17   it.  I've basically condensed it right now.  But I mean

18   what I say.  The next time the Federal Bureau Of

19   Investigation comes before me and they don't have a

20   recording of the defendant's statement, I'm going to

21   tell the jury exactly what I think about that conduct.

22   If that means a guilty person goes free, so be it.

23   Shame on them for taking advantage of the stature that

24   they have, that they've earned over the past nearly 100

25   years of their existence.  That's exactly what they're

1  doing.  They know what they're doing, and they still do

2  it.  I told them they shouldn't be doing it ten years

3  ago after that lawyer's case.  Of course, they paid no

4  attention.  They're probably paying no attention to me

5  right now.  But in this courtroom in front of me, the

6  jury will pay attention.

7          MR. JERRY COOK:  I appreciate that, Your

8  Honor.  Unfortunately, that does nothing for my son.

9          THE COURT:  I understand that.  That may be

10  rectified on appeal.  I don't know.  At the point of

11  appeal, I did not give that instruction.  I'm not sure

12  Ms. Kelley asked for it.  I can't recall our

13  conversations.  They're on the record.  But in any

14  event -- and there candidly is sufficient fair doubt

15  about the accuracy of any jury verdict.  As I say, the

16  jury chose not to believe your son.  And the FBI agent's

17  testimony was crucial in his conviction.

18          Despite what I said, and this is why we have

19  juries and not judges.  Despite what I've said, I did

20  not disbelieve the agent's testimony, nor did the jury.

21  But I'm sure if you look at the transcript of this

22  trial, my own views were masked for the jury.  That's my

23  job.  I tell them a number of times, don't try to think

24  how I would decide this case.  That's not my job.  It's

25  your job to decide it on the facts and laws as they come

1    to you.

2              Go ahead.  I'm sorry.

3              MR. JERRY COOK:  Also, Your Honor --

4              (Discussion had off the record.)

5              THE COURT:  Excuse me, Mr. Cook.  I'm going

6    to take whatever time is needed and desired, but my

7    successor, who was just confirmed and his commission was

8    just signed by the President, has asked me to swear him

9    in at noon.  This takes precedence.   I'm trying to tell

10   people, I'll get there.

11             MR. JERRY  COOK:  I will try to be briefer,

12   Your Honor.

13             THE COURT:  No.  I tell you only -- I've

14   been having these little sidebars.

15             MR. JERRY COOK:  The multi tasks we do

16   today.

17             Your Honor, also as part of this, and which

18   surprised me, is when we did hire Ms. Kelley, we did do

19   polygraphs.  There was reason to believe from our

20   polygraph expert that the polygraph that the FBI did was

21   not even a valid polygraph.  That was brought up in the

22   suppression hearing that they did a polygraph.  We asked

23   for that information, and we were told by the Assistant

24   United States Attorneys that we weren't entitled to that

25   information about all the reports and the underlying

1    reports of a polygraph exam so our expert could evaluate

2    those.  I do not believe that is fair.

3              THE COURT:  The thing is, the polygraph is

4    simply not admissible evidence.

5              MR. JERRY COOK:  Not to the Court, but can

6    it go to the credibility, even if there was a valid

7    polygraph done when the agent said there was?

8              THE COURT:  No.  The door is shut to

9    polygraph evidence.  The law is clear and unequivocal on

10   that.

11             MR. JERRY COOK:  Okay.

12             THE COURT:  And a prosecutor may but need

13   not take polygraph evidence into consideration in terms

14   of charging.  That exercises prosecutorial discretion.

15   But jurors are never ever told anything about a

16   polygraph one way or the other, probably to preserve the

17   defendant's right against self-incrimination because of

18   the continuing doubt about the accuracy of those

19   machines and results.  So that's --

20             MR. JERRY COOK:  That was my understanding

21   too, Your Honor.  But what we were more questioning was

22   there was a lot of suspect in the credibility of

23   statements made by Special Agent Pape in this case.

24             THE COURT:  Well, still, the polygraph --

25             MR. JERRY COOK:  This is basically whether

```
 1    he was being honest.
 2                MR. CRAWFORD:  Your Honor, I'm going to
 3    object to any further comments by Mr. Cook relating to
 4    the credibility of the FBI or any of the witnesses that
 5    testified at trial.  This hearing is not about that.
 6    This hearing is about --
 7                THE COURT:  I tend to agree.  But I'll
 8    let -- we're here, Mr. Cook, for purposes of sentencing.
 9    Much of what you're saying or at least some portion of
10    it no doubt will be found in Ms. Kelley's briefs on
11    appeal.
12                MR. JERRY COOK:  Yes.  Yes, sir.
13                THE COURT:  Quite candidly, the comments
14    that you are directing to me more properly are addressed
15    to the Court of Appeals.
16                MR. JERRY COOK:  Yes, Your Honor.
17                THE COURT:  But I understand your desire to
18    be heard.  Okay.  And that's what any Court most
19    fundamentally has to provide is the right to be heard.
20                MR. JERRY COOK:  I'll wrap up with several
21    last points, Your Honor.  One is also this is happening
22    to many young Americans.  If you study around the
23    country, this is happening to them, and it's a sad
24    story, and a lot of this is coming from software
25    applications that are out there.  LimeWire.  I would ask
```

1    the Courts and the U.S. Attorneys do whatever they can

2    to shut these guys down.

3              THE COURT:  LimeWire has been shut down.

4    Mr. Crawford, do you know?  I'm pretty sure it is.

5              MR. CRAWFORD:  There are a variety of

6    programs that can be used for file sharing.  LimeWire, I

7    think, was shut down.

8              THE COURT:  They pop up like dandelions in

9    the spring.

10             MR. JERRY COOK:  FrostWire.  I know it's

11   hard to do that, but to get these guys shut down so this

12   doesn't happen to anybody else.

13             Also, Your Honor, I understand how child

14   pornography is horrific to those who did it and were

15   involved in it, who experience the pornography and how

16   it impacts them for many years in the future.  These

17   young people experience it all.  My comment to come here

18   too is if the government -- they know these files.  They

19   have what they call, I guess, the hash of these files.

20   If we can hack the Iranian nuclear program, why can't we

21   write a virus to go out and start destroying these files

22   around the world so these individuals are not

23   continuously being abused and try to remove as many of

24   these pictures as we can.  That's just something that

25   seems to be very simple to do and get rid of these

1    pictures out there so these individuals are not being

2    exposed to the ridicule and stuff again, Your Honor.

3              Your Honor, I will say to wrap up that I

4    know my son, I know his heart --

5              THE COURT:  Let me say something that's a

6    bit off track in terms of the simplicity of, to mix a

7    metaphor, putting a stake in the heart of this

8    multi-headed monster.  I was in Laredo, Texas last week

9    for sentencing, spent a couple hours at the border

10   inspection stations at a couple bridges in Laredo.

11   Immigration is the same kind of thing.  It's this

12   massive problem, and people come up with these solutions

13   that appear simple:  Let's build a fence, let's do this,

14   do that.  Well, at one crossing point down there 5,000

15   pedestrians, 4,000 vehicles, and 150 busses pass through

16   each day and 1,100 rail cars.  That's not a commercial

17   facility.  So I would only say in response that as with

18   that, it was an eye-opener to me to realize what appears

19   to be an easily implemented and potentially successful

20   solution, who knows.  I mean, I would agree with you

21   that one would hope that our government is doing

22   everything it can to engage in the kind of cyber warfare

23   against the purveyors of this material, but -- so I

24   agree with you.  I'm just not so sure that, like the

25   immigration problem, that it's amenable to easily

1   implemented and totally effective solutions.

2           But anyway, go ahead.

3           MR. JERRY COOK:  I understand.  Our

4   government, it's difficult.  I don't want to see these

5   victims of this suffer.  That's why if we can do

6   anything about that, I think we should.

7           I know the heart of my son.  I've never been

8   more proud of him.  I taught him to come up and tell the

9   truth and to do that.  I think he said in his statement

10  he could not come in this court and lie.  That's what he

11  said since day one.

12          I understand the mandatory minimums, Your

13  Honor, and I disagree with those, and I will do

14  everything in my power to try to get those changed in

15  Congress because taking, as you said, taking it out of

16  your hands, taking it out of the Justice Department's,

17  it's wrong.  It's absolutely wrong, Your Honor, and we

18  will do everything about it.  I know my son did not do

19  this.  I will go to my dying day defending my son for

20  this.

21          But, Your Honor, the computer forensics that

22  we need, we didn't do it during the last part of this

23  because, quite honestly, Your Honor, we're out of money.

24  We're $200,000 into this.  I have no money.  He has no

25  money.  That's why we didn't do anything after

1     post-conviction, because we just couldn't afford it.  We

2     finally came up with $2,500, and that's gone here in

3     several weeks just writing the brief to get this to the

4     Court.

5               THE COURT:  Well, your son is entitled to

6     appointed counsel on appeal.  And if desired, I and the

7     Sixth Circuit will certainly appoint counsel.

8               MR. JERRY COOK:  If I can request, we've

9     talked to attorney Jeff Gamso.  We'd like him to do

10    that.  We understand it may not be out of your hands to

11    do that.

12              THE COURT:  No, I can appoint him, can't I,

13    Amy?

14              I'll recommend to the Circuit.  Absolutely.

15    He's very capable and very vigorous, just like Ms.

16    Kelley.

17              MR. JERRY COOK:  That's why we went to him.

18    But, Your Honor, we have no money.  He's been willing to

19    take it if the Court would file that.

20              THE COURT:  I'll take care of it.

21              MR. JERRY COOK:  We appreciate that, Your

22    Honor.  And we also need this forensics.  It's key.  So

23    many things have been discovered, as the U.S. Attorney

24    just said.  This is the first time.  We're learning.

25    We just don't know where to go, what to do.  If we can't

1    look at that computer again, we only had several days to

2    look at it.  It just wasn't enough time to be prepared

3    for trial.  I'd ask you to reconsider to let him have

4    access to that.

5              THE COURT:  That's what I'm doing.

6              MR. JERRY COOK:  I'd appreciate that.

7              THE COURT:  It's the other motion I'm being

8    briefed.  Why don't you brief that one too.  I'll

9    withhold judgment.  Go ahead and file a written

10   response, Mr. Crawford, to the motion on the computer,

11   and Ms. Kelley can reply.  I hope to get a decision by

12   mid August at the latest.

13             MR. JERRY COOK:  I'd just like to thank Your

14   Honor for what you've done in this.  I know it's a heavy

15   responsibility you bear.  I'd like to thank Ms. Kelley

16   for what she's done, tell my son I love him dearly.

17   U.S. attorneys, I know they have a tough job, and

18   they're in a no-win situation as well.  But, Your Honor,

19   I just don't think this is just.  And I think you

20   realize that as well, and we appreciate anything you can

21   do for us and for Alex.  Thank you very much.

22             THE COURT:  Ms. Kelley, anything further on

23   behalf of your client before I ask Mr. Cook if he has

24   anything that he wishes further to say?

25             MS. KELLEY:  We're ready to proceed, Your

1    Honor.

2             THE COURT:  Mr. Cook, Ms. Kelley read your

3    letter, but you still retain the right to speak to me on

4    your own behalf.

5             THE DEFENDANT:  No, sir.

6             THE COURT:  Mr. Crawford, anything further

7    from the government?

8             MR. CRAWFORD:  No, Your Honor.

9             THE COURT:  Formally to pronounce sentence,

10   pursuant to the Sentencing Reform Act of 1984 and 18

11   U.S. Code, Section 3553(a), it's the judgment of this

12   Court that the defendant, Alex David Cook, be and hereby

13   is committed to the custody of the Bureau of Prisons to

14   be imprisoned for a term of 72 months on each Counts 1

15   and 2 and a term of 24 months on Count 3, all to be

16   served concurrently.

17             Upon release from imprisonment the defendant

18   shall be placed on supervised release for a term of ten

19   years each, Counts 1, 2, and 3, all to be served

20   concurrently.

21             Within 72 hours of release from the custody

22   of the Bureau of Prisons, you shall report in person to

23   the U.S. Probation Office in the district in which you

24   are released, or the Pretrial Service and Probation

25   Office in this district.

1          There will be no fine.  You have to pay a

2     special assessment of $300 which is due immediately.

3     How soon can you pay that?   July 2?

4               THE DEFENDANT:  I could probably be able to

5     do that, Your Honor.

6               THE COURT:  Okay.   I'll make it by July 2.

7     While on supervised release you shall not commit another

8     federal, state, or local crime.  Shall not illegally

9     possess a controlled substance.  Shall comply with the

10    standard conditions adopted by this Court, which you

11    will be made known -- aware upon beginning supervised

12    release, and the following additional conditions: You

13    shall not possess a firearm, ammunition, destructive

14    device or dangerous weapon.  For the rest of your life

15    you can never lawfully again possess a firearm, even for

16    hunting or sport or recreational activities.  Simply

17    absolutely prohibited.  While on supervised release you

18    shall diligently seek to obtain and if you obtain

19    diligently seek to maintain lawful, gainful employment.

20    And you shall keep the probation office -- Pretrial

21    Service and Probation Office fully informed about your

22    activities in that regard.  You shall likewise provide

23    the probation officer with access to any requested

24    financial information.  For the remainder of your life

25    you, unless the laws change, you'll have to comply with

1    the terms and conditions of the Sex Offender

2    Notification Act, the Adam Walsh Act.  You also have to

3    comply with the Minor Protection and Restriction Program

4    as directed by the probation officer.  If you have

5    access to a computer of any sort under any circumstance

6    at any location it will be at the sole direction and

7    control of the U.S. Pretrial Service and Probation

8    Officer.  And you shall not access any computer in any

9    way at any time at any location for any purpose

10   whatsoever without the prior authorization of the

11   Pretrial Service and Probation Officer.  While on

12   supervised release you shall commit your person,

13   residence, place of business, computer, and/or vehicle

14   to a warrantless search conducted and controlled by the

15   U.S. Pretrial Service and Probation Officer based upon

16   reasonable suspicion that you were in possession of

17   contraband or violation of a condition of release or

18   evidence of a violation of criminal law.  You shall

19   notify the residents with whom you are living that the

20   premises may be subject to search pursuant to that

21   provision.  You shall cooperate in the collection of DNA

22   as directed by the probation officer.

23           You're aware you do have a right to appeal

24   both your conviction and your sentence.  I will let the

25   record show that I deem that you've filed a timely

1    notice of appeal and have done so orally through counsel

2    today; however, to protect your rights to appeal you

3    must file the written notice of appeal within 14 days of

4    today's date or you'll lose forever whatever right you

5    might otherwise have to challenge either your conviction

6    or your sentence.  Do you understand that?

7                    THE DEFENDANT:  Yes, Your Honor.

8                    THE COURT:  And I meant what I said, if I

9    erred, I sincerely hope that the Court of Appeals

10   reverses me and gives you either a new sentencing

11   hearing or a new trial.  And if the trial were to be in

12   front of me, I can assure you that I would avoid

13   whatever error may have led to reversal.  And I would do

14   everything in my power, as I believe I did so far, to

15   give you a full and fair trial under the Constitution

16   and laws.  So in the event you do secure reversal,

17   neither you nor your attorney should have any

18   apprehension that somehow I will hold that against you.

19   That would be a violation of my oath to uphold the

20   Constitution and laws of the United States to do

21   anything of that mean spirit and totally improper

22   response or thing to do.

23                    To give you an understanding of my reasons

24   for the sentence I have imposed under Section 3553(a)

25   and the Sentencing Reform Act of 1984, I have considered

1  the nature and circumstances of the offense.  This is

2  obviously a very serious offense.  Nobody in this

3  courtroom disputes that for a moment.  And that is why

4  it is punished severely.  As I have indicated, like many

5  of my colleagues on the federal bench, the sentences

6  imposed for this conduct tend to be far too severe.  I

7  have given far more severe sentences where the cases

8  involved defendants who committed violent sexually

9  abusive crimes against minors, served their time for

10  that, then come out and done this sort of activity.

11  However, as far as I am concerned, as far as I can tell,

12  you pose absolutely no danger to children of any kind

13  whatsoever.  Whatever your motives were in engaging in

14  that activity which the jury found you guilty of, they

15  were at worst self-gratification.  But nonetheless, so

16  far -- and your dad had a good thought.  Maybe there's a

17  better way to do it, just as there's a much better way

18  to control gun violence in this country than sending

19  people to prison because they have a prior felony record

20  and have a gun, but that's what we do day in and day out

21  in this country.  We don't always take the best way to

22  address serious problems.  We don't in that regard,

23  perhaps we don't in this regard either.

24          I will recommend to the Bureau of Prisons

25  that you be placed in an institution which will protect

1    you, because the Bureau has an absolute right to protect

2    you.  You're a young man.   Prisons are places

3    unfortunately where there are predatory and truly

4    violent, evil people.  And it's up to the Bureau of

5    Prisons, its responsibility to take all necessary

6    measures to protect your well-being and your welfare.

7    And to the extent that you ever have any apprehension in

8    that regard, I advise you to notify the prison

9    authorities and so that they're aware of whatever your

10   concerns and circumstances are and can take, as I hope

11   they do, the necessary measures to protect you.

12           I believe -- I realize that neither you nor

13   anyone else in this courtroom, except perhaps the

14   government, believe that the sentence is just.  I hope

15   that it promotes -- enhances respect for the law.  Its

16   primary purpose is not individual deterrence.  I have

17   no doubt that you will live the rest of your life as a

18   law-abiding citizen, as you did clearly until this issue

19   and problem.  But its primary purpose is public

20   deterrence.  I hope that the government publicizes this

21   sentence, not to shame you or make life for your family

22   and your friends and your relatives in Fredericktown and

23   elsewhere any more difficult than it's been for the past

24   year or so, but simply so that other people who might be

25   tempted out of curiosity or whatever to do this sort of

```
1    stuff realize the serious consequences of doing so.  The
2    purpose of my sentence is almost exclusively public
3    deterrence.
4              Let me say one final thing.  As devastating
5    as this whole event has been for you particularly and
6    for your family and your friends, and as incredible as
7    it is, you are a young man.  You will still be a young
8    man when you go home, with the help of the probation
9    office, and that's what they're there for.  You should
10   be able to get yourself back on two feet and headed in
11   the right direction for the rest of your life.  I urge
12   you, while in the custody of the Bureau of Prisons, to
13   take every opportunity that you can to further your
14   education and that you return -- that you continue the
15   college career that this has interrupted.  It may seem
16   like much of your life will be past by the time you come
17   home, but it really is true that you will still be a
18   very young man, and all of your life will lie ahead of
19   you.  So I sincerely hope that you take every
20   opportunity and advantage of every opportunity to move
21   forward and to put this and what it has caused to you
22   and your family behind you.  Despite what I said
23   earlier, I wish you well.  And this is simply a very
24   tragic situation.  And I wish you well.
25             Does any party have any objection to any
```

1  part of these proceedings not previously made?

2          MR. CRAWFORD:  Your Honor, for the record I

3  would object to the variance from the guideline

4  calculated in the presentence report.

5          THE COURT:  Ms. Kelley, any objection to any

6  part of the proceedings not previously made?

7          MS. KELLEY:  Not at this point, Your Honor.

8          There is one other matter I would like to

9  raise.  It has to do with the date for my reply brief on

10  the two motions.  July 4th falls during that window of

11  time.  Could I have at least until the 12th?

12          THE COURT:  That's no problem.

13          That will conclude this proceeding.

14          (Concluded at 12:16 p.m.)

15                          - - -

16                  **C E R T I F I C A T E**

17

18     I certify that the foregoing is a correct transcript

19  from the record of proceedings in the above-entitled

20  matter.

21

22  _____          _____

23  Tracy L. Spore, RMR, CRR                Date

24

25