Dean Boland (0065693)
1475 Warren Road
Unit 770724
Lakewood OH 44107
dean@bolandlegal.com
216.236.8080 ph
866.455.1267 fax

Attorney for Petitioner

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OHIO

| ALEX COOK | MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255 AND MEMORANDUM OF LAW IN SUPPORT |
|---|---|
| Petitioner | |
| v. | |
| UNITED STATES OF AMERICA | Case No. 3:10-CR-00522-JGC |
| Respondent | Honorable _____ |

# TABLE OF CONTENTS

| Item | | Page |
|------|------|------|
| INTRODUCTION | …………………………………… | 1 |
| FACTUAL AND PROCEDURAL BACKGROUND | …………………………………… | 2 |
| JURISDICTION | …………………………………… | 8 |
| STANDARD OF REVIEW | …………………………………… | 9 |
| ARGUMENTS FOR RELIEF | …………………………………… | 10 |
| GROUND ONE | …………………………………… | 11 |
| DEFECTIVE INDICTMENT | …………………………………… | 11 |
| FAILURE TO INVESTIGATE | …………………………………… | 12 |
| THE MISSED IRRELEVANCE OF COOK'S STATEMENT | …………………………………… | 16 |
| THE ROOMMATE OMISSION | …………………………………… | 19 |
| WITNESS CONTRADICTION NOT ARGUED | …………………………………… | 19 |
| COOK'S SO-CALLED CONFESSION | …………………………………… | 20 |
| FAILURE OF TRIAL COUNSEL TO ARGUE GOVERNMENT'S IDENTITY PROBLEM | …………………………………… | 22 |
| TRIAL COUNSEL'S FAILURE TO ARGUE THE AUTHENTICATION CONTRADICTION WITHIN THE GOVERNMENT'S CASE | …………………………………… | 25 |
| COOK'S FUNCTIONAL ABILITY TO UNDERSTAND WHAT WAS HAPPENING AT THE TIME OF THE SEARCH AND OBTAINING OF HIS STATEMENT | …………………………………… | 26 |

GOVERNMENT'S ARGUMENT
ABOUT THE ACCESS/DATE/
CREATION DATE EQUIVALENCE
CONTRADICTED BY THE
EVIDENCE …………………………………….. 26

FAILURE TO INVESTIGATE
POTENTIAL ALIBI EVIDENCE …………………………………….. 29

FAILURE TO EXPOSE FALSE
TESTIMONY BY AGENT WHISMAN …………………………………….. 30

TRIAL COUNSEL'S INEFFECTIVE
RULE 29 MOTION …………………………………….. 33

TRIAL COUNSEL'S FAILURE TO
ARGUE GOVERNMENT
PRESENTED NO EVIDENCE ON
KNOWING DISTRIBUTION …………………………………….. 34

TRIAL COUNSEL'S FAILURE TO
ARGUE GOVERNMENT
PRESENTED NO EVIDENCE OF
KNOWING RECEIPT …………………………………….. 36

TRIAL COUNSELS' FAILURE TO
PROPERLY PREPARE AND
QUESTION THE DEFENSE
COMPUTER EXPERT …………………………………….. 39

TRIAL COUNSEL'S FAILURE TO
ASK FOR ACCURATE JURY
INSTRUCTION ON THE ELEMENT
OF KNOWINGLY IN ALL THREE
COUNTS …………………………………….. 41

TRIAL COUNSEL'S FAILURE TO
ARGUE THE MULTIPLICITY OF
COUNTS AT TRIAL OR
SENTENCING …………………………………….. 42

GROUND TWO:  COOK WAS
IMPROPERLY SENTENCED …………………………………….. 44

CONCLUSION …………………………………….. 46

# TABLE OF AUTHORITIES

| Statutes | | Page |
|---|---|---|
| 28 U.S.C. § 2255 | ................................................................ | 1, 8, 9 |
| 18 U.S.C. 2252(a)(2) | ................................................................ | 1, 2, 43 |
| 18 U.S.C. 2252(a)(4)(b) | ................................................................ | 1 |
| 18 U.S.C. 2252(a)(5)(b) | ................................................................ | 43 |

| Case Law | | Page |
|---|---|---|
| U.S. v. Cook, No. 12-3827 | ........................................... | 3 |
| Strickland v. Washington, 466 U.S. 668. | ........................................... | 11 |
| U.S. v. Schankowski, 782 F.2d 628 (6th Cir. 1986). | ........................................... | 42 |
| Bell v. United States, 349 U.S. 81, 84, 75 S.Ct. 620, 99 L.Ed. 905 (1955) | ........................................... | 42 |
| Heflin v. United States, 358 U.S. 415 | ........................................... | 42 |
| Prince v. United States, 352 U.S. 322 | ........................................... | 42 |
| U.S. v. Ehle, 640 F. 3d 689 | ........................................... | 43 |

| Rules | | Page |
|---|---|---|
| Federal Rule of Evidence 403 | ........................................... | 16 |
| Federal Rule of Criminal Procedure 29 | ........................................... | 38 |
| USSG § 2G2.2 | ........................................... | 44 |

iii

Alex Cook, through counsel, submits this Motion and supporting Memorandum pursuant to 28 U.S.C. § 2255 and respectfully moves the Court to vacate, set aside, or otherwise correct his sentence as unlawful and unconstitutional under the Second, Fifth, Sixth and Eighth Amendments to the United States Constitution.

## INTRODUCTION

Alex Cook was indicted for receipt, possession and distribution of child pornography in violation of 18 U.S.C. 2252(a)(2) and 2252(a)(4)(b).  That indictment followed a standard peer to peer investigation by the FBI whose designated child pornography specialists troll these services looking for images of child pornography to download.  Those trolling agents then open and view those images to authenticate them, obtain a search warrant for the suspect's residence from whom they downloaded the image.  The government seized Cook's computer and other storage media.  Those were analyzed and the government claims child pornography was found on them.  Before his indictment, Cook was interrogated by an FBI agent who intentionally did not record that interrogation.  A statement by the agent was produced from his recollection of that interrogation.  That statement was provided to the jury along with the jury viewing video and image files seized from Cook.

Mr. Cook at two attorneys, one public defender before trial and a retained attorney who substituted in 30 days before trial.  A review of the docket and trial transcript reveal multiple independent bases to find both trial counsel ineffective sufficient for a reversal of Cook's conviction and/or a re-sentencing.

1

## FACTUAL AND PROCEDURAL BACKGROUND

A grand jury sitting in the Northern District of Ohio, Western Division, returned an indictment against Alex Cook in December 2010 and a superseding indictment in April 2011.  By the superseding indictment, he was charged with one count of receiving and one count of distributing child pornography, both in violation of 18 U.S.C. § 2252(a)(2), and with one count of possessing child pornography in violation of 18 U.S.C. § 2252(a)(4)(B).

At his initial appearance, in November 2010, Mr. Cook filed a CJA 23 financial affidavit, and Assistant Federal Public Defender Donna Grill was appointed to represent him. By Order of April 12, 2011 (R 17), trial was scheduled for June 28. On May 10 (R 23), that trial date was vacated and trial was rescheduled for September 6.

Through Ms. Grill, Cook filed a motion to suppress and motion in limine on May 16, 2011 (R 25).  A hearing was held on the motion July 6. By Order of July 11 (R 31), the court granted the motion in part and denied it in part.

On August 2, attorney Elizabeth Kelley entered her appearance as retained counsel on behalf of Mr. Cook (R 32).  On August 4, Mr. Cook filed a motion to continue the trial date so that Ms. Kelley would have adequate time to prepare for trial (R 34). The motion was denied (R 36).

2

A jury trial was held on September 6, 7, 8, and 9. On September 9, the jury returned verdicts of guilty on all three counts.

On February 24, 2012, Cook filed a motion for new trial (R 62). The motion was denied (R 70).  On June 14, he filed a motion to reinspect the computer. (R. 72) That motion, too, was denied. (R 87)

On June 18, 2012, the court held a sentencing hearing.  Judgment issued on June 19 (R 75). The court imposed prison terms of 72 months each on Counts 1 and 2 and 24 months on Count 3. All terms were ordered to be served concurrently. The court imposed 10 years of supervised release as to each count and again ordered that all terms should be served concurrently. The court ordered a special assessment of $300.

Notice of Appeal was filed July 2, 2012 (R 84).  A decision on that appeal was published on July 30, 2013.  <u>U.S. v. Cook</u>, No. 12-3827.  The Court of Appeals affirmed his conviction and sentence noting as to Cook's ineffective assistance of counsel claim:

> **If Cook were to pursue these claims on collateral attack, the factual record could be further developed to show, for example, whether computer hacking was in fact a viable defense, or <u>why his counsel did not take certain actions</u>. This in turn would color the degree, if any, to which his counsel was ineffective. Thus, given the incomplete record, and our preference that defendants pursue ineffective assistance of counsel claims on collateral attack...we decline to rule on Cook's claims of ineffective assistance of counsel in his direct appeal.**  Id. at 5.  Emphasis added.

This motion follows the Court of Appeals ruling and notes abundant bases to find both of Cook's trial counsel ineffective.

On June 22, 2010, Special Agent Richard Whisman of the FBI's Tulsa, Oklahoma office was searching for possessors of child pornography through LimeWire on the internet and found some apparently relevant files "offered from a user in Lima [Ohio]." The agent downloaded a selection of images to a CD (Government's Exhibit 1) and sent it to the FBI field office in Lima. TR at 46-48. Through an administrative subpoena, the agent learned that Mr. Cook was the account holder for the internet address of the user with the images.  TR at 57-58.

Testimony from Amy Allen revealed that one of the images agent Whisman downloaded (Government's Exhibit 5) was of an actual 8-year-old girl referred to as "Jenny." TR at 73. Roy Shepherd, a detective from Washington State, testified that a DVD (Government's Exhibit 6) depicted sexual abuse of an actual girl who was then 10 or 11 years old and who is referred to as KF.  TR at 77.

Special Agent Craig Schulte obtained a search warrant for Mr. Cook's Lima residence. Approximately 7:00 am on September 15, 2010, Schulte and ten other enforcement officers, some with weapons, executed the warrant. There were two people present in the residence, Cook and roommate Ian Douglas.  Schulte spoke with Douglas at the scene. Douglas denied having any child pornography on his computer and denied ever using Cook's computer. TR at 86.

Schulte and Special Agent Paul Pape took Cook to the FBI office in Lima. His Miranda rights were displayed on a computer screen and he signed a computer

4

connected pad regarding those rights.  He was then interrogated by Pape.  TR at 88-93, 130-133.  Despite no emergency circumstances, the interrogation was intentionally not recorded.

According to Agent Pape, the interrogation "was a frank discussion of child pornography and why it was on his computer."  TR at 134. According to Pape, Cook said that he began using adult pornography when he was 17. After high school, he left home for work and then began looking at child pornography out of curiosity, downloading it from LimeWire in order better to understand why it was that he was molested by an older man at Boy Scout camp when he was 11. He screamed and escaped from the man, Pape reported Cook as saying and then told the leaders at scout camp (but not the police) what had happened. Pape also claimed that Cook told him that one girl's image reminded him of his ex-fiancee and so he downloaded several pictures of her. Pape further testified that Cook told him he found pictures of young teens arousing and had access to children both as a Sunday school teacher and as a scout leader.  TR at 134-137.

Pape testified that after he learned all this information, he reduced it to writing on his computer, gave Cook the opportunity to read it, and then had Cook sign it electronically.  TR at 137-141, Government's Exhibit 9.   At no point to Cook admit to possessing or distributing any of the files that later formed the basis of the government's indictment.

Cook denied saying nearly all of those things to Pape. Cook did acknowledge that he began looking at adult pornography when he was 17. And he acknowledged

5

that he had LimeWire on his computer and downloaded adult pornography through that network. But he denied looking at child pornography, denied downloading it from LimeWire, denied having been molested at Boy Scout camp, denied ever having been engaged and thus denied having an ex-fiancee, denied being aroused by pictures of or by real life young teens, denied that he ever taught Sunday school and denied that he is a scout leader.  TR at 309-316.

Agent Pape testified that Cook electronically signed the document after reading it. TR at 140-141. Cook has a reading disability, though he is too embarrassed to tell most people about it, and he did not tell Pape. (E.g., TR at 189, 191; 291, 293, 304, 320-321). Cook testified that he did not read the document, that he is unable to read as quickly as Pape scrolled thought the document on the computer screen, and that he signed it so that he could leave.  "I was tired of getting yelled at. I was scared. I just wanted to leave." [CITE].  He said that he trusted Pape as an FBI agent and that Pape told him he was signing "a letter to the prosecutor so there is no reason to go further with this."  TR at 319-320.  As Dr. Wayne Graves explained, Cook would have signed the statement because he doesn't trust his own ability to understand documents very well, because he is passive and somewhat conflict avoidant with adults, and because he wanted to escape from the interrogation situation and thought that's what he was being offered if he signed. TR at 210. The interrogation was not recorded. TR at 154. Although agent Pape could have sought permission to record it, he did not. In fact he has never done so. TR at 404-407, 409-412.

Toledo police detective David Morford analyzed the hard drive on Cook's laptop. He found 870 files saved from LimeWire. He described and showed the jury examples of child pornography from Cook's computer. He testified that the setting on LimeWire was the default setting – that whatever is downloaded through LimeWire is available to be shared through LimeWire. TR at 223-47.  He offered no testimony that Cook was aware, upon installing Limewire, that the default software settings enabled sharing of files downloaded using Limewire.  He offered no testimony, neither did any other government witness, that Cook opened and viewed any of the files shown to the jury.

Cook's father, Jerry Cook, testified that he had seen his son's roommate, Ian Douglas, using his son's laptop. TR at 237.  Jerry Cook further testified that had his son been molested at Boy Scout camp (as Pape claimed Alex Cook revealed to him and Pape accurately recorded in Cook's statement) and reported it to the camp authorities, there is no question that it would have been reported to the police for further investigation. TR at 269.

Gary Kochhaiser, the pastor of the Cook family's church, testified that Cook did not teach Sunday school and that nobody from law enforcement ever called to tell him that he had a Sunday school teacher who used child pornography and who was attracted to and aroused by children the age of those he was teaching.  TR at 277.  This contradicted the content of Pape's statement taken from Alex Cook.

Mark Vance, assistant scoutmaster, testified that he never heard from Cook or from anyone else about Cook being molested at Scout Camp when he was 11. It is, he said, something he would have heard about. TR at 283.

Finally, Mark Vassel, a computer expert testified. He spent a day examining the hard drive from Cook's computer. He acknowledged that there seemed to be child pornography on the computer downloaded from LimeWire, though he said that the evidence indicated it had never been opened. TR at 354-355, 378, 380-381. Further, there was no way to determine who was operating the computer at the time the filed were selected and downloaded. TR at 358, 381.

## JURISDICTION

Pursuant to 28 U.S.C. § 2255, "[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground  that  the sentence was imposed in violation of the Constitution or laws of the United States, . . . or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." Cook moves this Court on grounds that his conviction and sentence violates the United States Constitution and is otherwise subject to collateral attack.

## STANDARD OF REVIEW

A motion for relief under 18 USC 2255 follows the procedures established by the "Rules Governing Section 2255 Cases in the United States District Courts" (hereinafter, the "Rules"). The text of 2255 states that, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled

to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255 (emphasis added).

Similarly, the Rules dictate that, upon initial consideration by the assigned District Judge, a 2255 motion should be dismissed only "if it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief." Rule 4(b) (emphasis added).   In all other cases, "the judge must order the United States attorney to file an answer, motion, or other response within a fixed time, or to take action the judge may order." Id. The Rules also authorize, where appropriate and by order of the Court, discovery proceedings, an expansion of the record, and an evidentiary hearing. Subsequent to the "Preliminary Review" stage set out in Rule 4, the ultimate legal standard for motions brought pursuant § 2255 is prescribed by statute:

> **If the court finds that . . . the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.  28 USC 2255.**

### ARGUMENTS FOR RELIEF

A citizen deserves not just any lawyer, but one competent to handle the legal and other issues involved in his criminal matter.  For many criminal practitioners

9

of general experience and knowledge, this competency is rarely insufficient to effectively represent a given criminal defendant. However, there are categories of criminal defense practice that do not lend themselves to occasional interludes especially those involving complex legal and technical issues that appear in all child pornography prosecutions and the associated electronic evidence involved in such cases. Alex Cook placed his trust in two lawyers neither of whom had the requisite familiarity with technology or the legal issues in child pornography matters to effectively represent him. As the court will see below, his trial counsel admitted on the record to having "computer ignorance." She did this in the midst of Mr. Cook's trial for crimes whose sole evidence emanated from computers, technological testimony and issues evading his counsel's scrutiny as her computer ignorance took center stage to devastating effect for her client.

## GROUND ONE:
## SIXTH AMENDMENT INEFFECTIVE ASSISTANCE OF COUNSEL

Trial counsel's performance is ineffective if it is constitutionally deficient and the defendant is prejudiced as a result.  <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984).

A deficient performance means that "counsel's representation fell below an objective standard of reasonableness." Id. at 688. Prejudice means "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

As is evident below and will be further established by an evidentiary hearing, trial counsel's performance was deficient and there is a reasonable probability that Cook's conviction and sentence would have been different except for the errors detailed below.

## I.   Ineffective Assistance of Cook's Counsel Before Trial

### DEFECTIVE INDICTMENT

Both trial counsel neglected to notice a glaring defect in the indictment. None of the indictment counts specified which image or video files, by filename, constituted the items claimed to be violative of the statute.  The counts of the indictment did not list separate filenames, or any filenames, associated with each count.  Neither counsel sought or received a bill of particulars linking any filenames to any counts in the indictment either.  In failing to do so, even as of today, Mr. Cook is unable to determine which files per count he was convicted of possessing or

11

receiving. The result of this lack of specificity - his double jeopardy rights are at risk. The government could re-indict him for possession or receipt of additional counts today, this time naming a filename per count and Mr. Cook would be unable to defend that indictment citing his prior conviction. Had he been acquitted of some or all counts, he would likewise have been unable to argue opposing a subsequent indictment that he had already been acquitted of possessing or receiving that particular file with that particular filename. Both trial counsel neglected to realize that there is no federal crime for generally possessing child pornography. The government needed to prove Cook's knowing possession of specific files that the government then had to prove were child pornography. Some generalized possession or distribution of child pornography is simply not a proper indictment. Trial counsel should have filed a motion requiring the government to attribute to each count the specific image/video that it was referencing.

Even if the government's response was that all the offered images and videos applied equally to all three counts, that argument presents problems of multiplicity argued below. Trial counsel failed to argue this multiplicity at any point of the underlying trial, including at sentencing seeking a proper sentence given the indictment's multiplicity.

## FAILURE TO INVESTIGATE

Although defense counsel hired and relied upon a computer forensics expert, she failed to properly collaborate with that expert. The expert was not instructed to gather even the basic statistics about the number of **legal** images and videos that

could be found on the government's seized media versus those the government claimed were contraband.  This information is a relevant pillar in Cook's defense that he was not the one who placed the contraband on the media where it was found by the government.  That is, a small number of alleged illegal images or videos in proportion to a large number of otherwise legal images and videos bolster's Cook's defense.  A typical child pornography possessor and hoarder would not have a small number of such files in comparison to the number of otherwise legal images and videos.  Defense counsel neglected to discuss this issue with the defense computer expert and therefore uncover the evidence to make this argument.

A file created on a computer inherits a creation date and time identical to the date and time it is created on that computer.  TR. at 354.  That file also inherits an access date and time and last written (or last modified) date and time identical to the create date and time.  Id.  If that file is later accessed[1] or modified, the respective access date or time or modification date and time are updated.  Id.  If that file is not later accessed, to open and view it for example, the access date and time is not changed - ever.  Trial counsel did present expert testimony that demonstrated to the court and the jury that the government's alleged contraband image and video files had access dates and times identical to their creation dates and times.  TR. at 355.  This equivalence necessarily means that the government had no evidence any of the alleged contraband files were ever opened.  Without

---

[1] A file's access date and time can be updated in a number of ways including when the file is moved from one location to another, when the folder containing that file is moved to another location, when an application capable of opening that file is opened and if the file itself is opened and viewed.

evidence the alleged contraband files were open, there is no evidence, not even circumstantial evidence, the files were viewed by anyone, let alone Mr. Cook.  The critical failure here for trial counsel was not linking up this indisputable evidence with the *mens rea* of the three counts of the indictment.  Trial counsel made no argument regarding this indisputable technological testimony that even the government's expert conceded.

That is, that without any evidence the alleged contraband files were opened and viewed, the government had no evidence that Mr. Cook had knowledge of their contents.  The government's own computer expert acknowledged without hesitation that the equivalence of the creation and access dates and times among all the alleged contraband files means "there's no evidence that [the alleged contraband files] were actually viewed" or opened.  TR. at 250.  Trial counsel failed to push this line of questioning to its critical indisputable conclusion, that is, the government also had **no evidence** that Cook knew the contents of any of the alleged contraband files.  Without knowledge of their contents, an essential element of the offense in each count of the indictment, the government's case fails and either a Rule 29 directed verdict or not guilty verdict is a certainty.  This failure is certainly sufficient ineffective assistance to call into question the jury's verdict.  The government simply cannot convict Cook of *knowing* possession or distribution of child pornography while conceding it has no evidence he opened and viewed the alleged child pornography at issue.

The government's response that Cook's "confession" closes this knowledge gap is unavailing. Nowhere in that supposed confession does Cook specify that he knew the contents of the files that the government, at trial, offered as contraband. In fact, it is unknown to which files Cook was referring in the supposed confession. It is unclear whether Cook's understanding of what the investigator meant by "illegal images" or "child pornography" is the same as the investigators, merely similar or altogether different. Beyond that, the "confession" was certainly not to a particular number of files (that is, the number of files offered as contraband at trial) or to any particular filenames offered at trial as contraband. Certainly, Cook could not have knowingly and voluntarily confessed to possession of files the names for which he was not read and the content of which he was not shown. Did Cook's supposed confession refer to files wholly apart from those presented by the government at trial?

At best, the "confession" admits to "child pornography images on my personal laptop computer…." TR. at 309. But, what images? The statement read to the jury omits that critical connection and his trial counsel missed that glaring hole in the government's case. Nothing in Mr. Cook's statement admits to possessing, receiving or distributing any specific file either by filename or description. He certainly did not admit to knowingly possessing or distributing any of the files shown to the jury. Recognizing this, trial counsel should have also filed a pre-trial motion or moved during trial to have the statement excluded as irrelevant.

His statement, even if accepted by the court as authentic (which it certainly was not by the trial court who admonished the government multiple times about the suspicious nature of the circumstances surrounding the statement's obtaining by FBI agent Pape) makes no admission of the distribution of any image or video the government presented at trial.

### THE MISSED IRRELEVANCE OF COOK'S STATEMENT

All relevant evidence is admissible and evidence that is not relevant is not admissible. FED. R. EVID. 402. "Evidence is relevant if (a) it has a tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." FED. R. EVID. 401. The relevancy standard is liberal. Daubert v. Merrell Dow Pharm., 509 U.S. 579, 587 (1993). Relevant evidence, however, may be excluded if its "probative value is substantially outweighed by the danger of one of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403.

What did the government have to prove at trial?  The government's burden was to prove that Cook *knowingly* received one or more visual depictions...of child pornography (Count 1).  In Count 2 the government's burden was to prove the Cook *knowingly* distributed one or more visual depictions...of child pornography.  In Count 3 the government's burden was to prove the Cook *knowingly* possessed one or more visual depictions...of child pornography.

To establish a violation of the statute(s) relative to these three indictment counts requires the government to offer as evidence "one or more visual depictions" of child pornography which it did.  However, to make Cook's alleged confession relevant to the government's proof requirements, requires it link those particular offered "one or more depictions" to Cook's statement.  The government made no such linkage because none existed.  The statement offered through the FBI agent was nothing more than generalized discussions of something the agent referred to as "child pornography."  What this court is left with are unanswered questions which strike at the heart of the relevance of the use of Cook's statement at trial and trial counsel's failure to argue its irrelevance.  What did the agent mean by the phrase "child pornography" as used in Cook's statement?  How did Cook define "child pornography" when he supposedly signed the statement?  Were the two of them both referring to the same basic thing?  Were they referring to the same depictions? filenames? image files?  And, even if they were somehow presumed to be referring to the same definition that included the same filenames, were those filenames the same as the filenames of the video evidence displayed for the jury at trial?  Trial counsel has no idea.  This court has no idea.  And, without that connection, how is it that Cook's statement was relevant at all to the proceedings?  Even if this court feels a relevance argument could be made by the government, the failure of trial counsel to aggressively rebut that argument on such a critical piece of evidence is ineffective.

The requirement of the relevant statute(s) and the indictment mandate more than proof of some generalized "I downloaded child pornography" as the government urged by offering Cook's statement.  Parsing Cook's alleged statement as reflected in the FBI agent's embellished recollection of that statement in his report and nothing relevant to the three counts of the indictment emerges.  The statement has no admissions of distribution, possession or receipt related to any of the files offered by the government at trial.  What can possibly be the relevance of the presentation of the generalized statement to the jury other than to prejudice Mr. Cook?  It certainly makes him look bad that he admitted generally downloading and viewing child pornography.  However, that prejudice outweighs by a mile any probative value of the statement.  The proof of this is the inability of the government to explain how the statement advances at all their proof of Cook's receipt, distribution and/or possession of the **specific files** they offered as evidence at trial.  And, if they were not required to offer proof of Cook's receipt, distribution or possession of the specific files it offered at trial, the display of those items to the jury fails the 403 balancing test as well.  In fact, if the only proof challenge the government needed to surmount was proof of Cook's general downloading of child pornography, the admission of his statement was all the proof needed to prevail.  The government offered more evidence than that, much more, acknowledging that the proof of his receipt, distribution and possession of specific files was required.

### THE ROOMMATE

Both defense counsel failed to investigate Cook's roommate at the time of the search of the residence, Ian Douglas. No attempt was made to interview him, have an expert examine his computer(s), etc. Trial counsel especially knew the relevance to Cook's defense of the roommate's conduct within the residence. She questioned Cook's father, a visitor to Cook's residence on more than one occasion, about Douglas' conduct in the residence. TR. at 273. Cook's father's testimony contained an inherent bias that the government could impeach. The defense not having obtained a statement from Douglas or making some attempt to speak with him pre-trial was a failure that could have turned the entire case around. Cook's father's testimony included his direct observation of Douglas using Cook's computer, the same computer later seized with the alleged contraband found on it. Douglas' later flat denials regarding all of Cook's father's and Cook's statements were unchallengeable largely because of the failure to obtain background investigation of Douglas pre-trial.

## II.   Ineffective Assistance of Cook's Counsel During Trial

### WITNESS CONTRADICTION NOT ARGUED

FBI agent Pape testified at both Cook's suppression hearing and trial. On more than one occasion Pape's suppression hearing testimony was directly contradicted by his trial testimony.

During the suppression hearing and on direct examination at trial, Agent Pape testified that Cook's "confession" was in Cook's words. During cross

examination at trial he acknowledged that some of the "confession" was composed by Pape himself.  The signed "confession" contained the word "desensitization" which the transcript reveals Pape had difficulty pronouncing on numerous occasions.  Trial counsel never sought exclusion of the suspect "confession" which contained this and many other questionable features.

At trial, FBI agent Pape testified "I never lied to [Cook] correct."  TR. at 418.  However, Pape was involved in a polygraph examination of Cook before trial.  During Pape's suppression testimony, he admitted falsely telling Cook during Cook's polygraph that his responses indicated he was lying.  At the suppression hearing, Pape testified that Cook's polygraph responses resulted in an "inconclusive" result as to his truthfulness.  Suppression Hearing TR at 70.  Obviously, an inconclusive result means that Cook was not generating polygraph readings in real time indicating he was lying.  Pape's contradictory testimony in this regard was not effectively argued at trial to diminish or exclude this portion of his testimony.

## COOK'S SO-CALLED CONFESSION

Agent Pape prepared a statement he called Cook's "confession" by entering data into a computer and asking Mr. Cook to sign it electronically.  Trial TR at 2.  Agent Pape testified that Cook electronically signed the document after reading it.  Trial TR at 131-133.  He declined to print the form and have Cook sign it in ink.  Trial TR at 144.  FBI Agent Pape created the statement that he then had Cook sign after reviewing it on a computer screen.  Id. at 153.  Pape even added

20

in words to the statement that he admitted Cook did not say.  Id. at 155.  In addition to the statement written by the agent and then signed on a computer by a suspect with a learning disability, the court felt it was "incomprehensible" that the FBI had a policy of not recording interviews.  Trial TR at 433.  Cook has a reading disability, though he is too embarrassed to tell most people about it, and he did not tell Pape. (Trial TR at 495).  Cook testified that he did not read the document, that he is unable to read as quickly as Pape scrolled thought the document on the computer screen, and that he signed it so that he could leave.  Trial TR at 319-321.  "I was tired of getting yelled at. I was scared. I just wanted to leave." Id. at 320.  He said that he trusted Pape as an FBI agent and that Pape told him he was signing "a letter to the prosecutor so there is no reason to go further with this."  Id. at 321.  As Dr. Wayne Graves explained, Cook would have signed the statement

> **Because he doesn't trust his own ability to understand documents very well, because he is passive and somewhat conflict avoidant with adults, and because he wanted to escape from the interrogation situation and thought that's what he was being offered if he signed.**  Id at 191.

Although agent Pape could have sought permission to record it, he did not.  In fact he has never done so. Trial TR at 409.  He intentionally did not record a statement vital to the government's case as it was used at trial.  Unsurprisingly, the statement contained nothing helpful to Cook's defense.

Pape's computer captured Cook's signature for any and all documents.  Neither defense counsel sought a forensic examination of Pape's computer to

confirm that Cook's signature was actually entered as part of a statement he read on Pape's computer.  The ability of Pape or any other FBI employee to merely attach that electronic signature to any document, a Miranda rights waiver, a modified statement later labeled Cook's "confession" etc was too possible to not have been explored pre-trial and again with Pape on the stand at trial.

The trial court itself noted its concern over the way Cook's statement was obtained.  Both defense counsel neglected to investigate the room where Cook's statement was obtained to determine what the mounted video camera in the corner of the room was recording and why Pape claims he checked a box on a computer generated form that the interrogation was not being recorded despite equipment available to do so.

## FAILURE OF TRIAL COUNSEL TO ARGUE GOVERNMENT'S IDENTITY PROBLEM

Trial counsel Kelley was provided information that government witness Ian Douglas (Cook's roommate at the time of the government's search of the residence) told investigators that his computer was always in his room.  Meanwhile, trial counsel Kelley was provided crime scene pictures taken the day of the search of Cook's residence showing Douglas' computer located in the living room on the first floor of the residence and not in Douglas's 2nd story bedroom.  Trial counsel failed to impeach Douglas on this point or probe Douglas' collection of multiple computers also connected to the same wireless router in the residence.

22

The government at trial put Douglas on as a rebuttal witness to essentially deny he had ever used Cook's computer.  The defense computer expert was never asked questions about any artifacts he searched for or located that coincided with the use of Cook's computer by more than one person.  He was never asked, to make the point to the jury, that the government failed entirely to examine any of the computers used by the roommate in the residence.  This glaring error in the government's investigation is reasonable doubt on its own if properly argued with the support of testimony from the government's expert and defense expert.

One need scarcely burn any mental fuel to imagine a line of questioning for the government's computer expert to exploit this huge failing in their investigation. It is a failure that shakes the foundation of their confidence that Cook was the person that used the seized laptop to download the alleged contraband.  Consider the jury's hesitation at convicting Mr. Cook faced with the above failings and then hearing a proper cross examination of the government's computer expert on this point similar to this:

> **Q.  Mr. Morford, Cook had a wireless network in his house?**
> **A.  Yes.**
> **Q.  How many times did Mr. Douglas connect a device to that network?**
> **A.  I don't know.**
> **Q.  How many different computer or mobile devices did Mr. Douglas possess while in the residence with Mr. Cook?**
> **A.  I don't know.**
> **Q.  If Mr. Douglas used one of his devices to connect to the Internet via Mr. Cook's wireless network, it would be using the same IP address as the one you used to gain the search warrant to Mr. Cook's residence?**
> **A.  True.**

Q.  Are you interested in finding who actually used the computer at issue to download the alleged contraband?

A.  Yes.

Q  But you didn't confiscate any of Mr. Douglas' computer devices and question him as you did Mr. Cook?

A.  No.

Q.  You merely did a scan of the one device Douglas provided to you the day of the search of Cook's residence?

A.  Yes.

Q.  Is it possible that Mr. Douglas' devices connected to the Internet during the time he resided with Mr. Cook?

A.  Yes.

Q  If Mr. Douglas used Mr. Cook's laptop to connect to the Internet at Mr. Cook's residence and then activated Limewire to download child pornography, you would expect to find the precise evidence you found on Mr. Cook's laptop as you did in this case?

A.  Yes.

Q.  But you don't know if Mr. Douglas used Mr. Cook's laptop at any time?

A.  No.  Other than Douglas' denial that he ever used Cook's laptop.

Q.  Douglas would be discouraged from admitting using Cook's laptop given that he was aware that the FBI found child pornography on it, wouldn't you agree?

A.  I can't say what Mr. Douglas would or would not be discouraged from admitting.

Q.  And you never interrogated Mr. Douglas?

A.  No.

Q.  And you never confiscated his devices that he used while in the Cook residence potentially on that same wireless network with that same IP Address?

A.  No.

Q.  If Mr. Douglas wanted to download and view child pornography, but not expose himself to detection or capture by law enforcement, is using his roommate's computer with Limewire installed an effective way to accomplish that?

A.  Yes.

Q.  Would it be relevant to your investigation if you had examined one of Douglas' devices and found that they were being used, while on Cook's wireless network, to download child pornography?

A.  Yes.

Q.  But you didn't do that for any device other than the one Douglas told you was the only one he used?

A.  No.

24

## TRIAL COUNSEL'S FAILURE TO ARGUE THE AUTHENTICATION
## CONTRADICTION WITHIN THE GOVERNMENT'S CASE

While FRE 901 and the cases that interpret it unquestionably apply to the government's image and video evidence, trial counsel failed to point out the government's contradictory use of the rule when it had available evidence and abandonment of the rule otherwise.  Its second witness was Amy Allen from the Department of Homeland Security.  Trial TR at 70.  The government stated its purpose in calling Allen was so she could "testify that one of the images downloaded was an actual victim that she was able to interview and compare with photos and testify it's a real child."  Id. at 64.  This is a glaring example of the contradiction.  This witness is unnecessary and arguably unfairly prejudicial to Cook if the government may simply show the images or videos to the jury and let their eyes determine their authenticity.  Why spend the court's time (and delay the first day of testimony, see TR. at 63-64) for a superfluous witness?  The reason is that the government at that moment well understood that the proper way to authenticate images of this type is to present just such a witness.  However, the government declined to present such a witness as to each of its alleged contraband images and trial counsel failed to bring this out with Allen or to argue to the court to exclude any image or video evidence not authenticated in this way - the way the government conceded was required by calling Allen.

During trial, trial counsel failed to even object to the playing for the jury of any videos or the displaying of any images despite no attempt by the government to

authenticate them.  See, e.g. TR. at 246-247.  This failure to object then did not preserve this issue for Cook's direct appeal either.  At TR. 248 the court even asks trial counsel if she has any objections to the admission of the just played videos and displayed images.  Tellingly, trial counsel answers, "Not that I can think of at this point."

## COOK'S FUNCTIONAL ABILITY TO UNDERSTAND WHAT WAS HAPPENING AT THE TIME OF THE SEARCH AND OBTAINING OF HIS STATEMENT

The court weighed in more than once about its concerns over Cook's competency to understand what Agent Pape was soliciting him to sign following his interrogation without counsel.  The court deemed it a "shabby and unjustified practice."  Trial TR at 338.  Cook's learning disability and argued inability to understand the document scrolled by him on a screen before signing was rebutted by government witnesses.  They testified that Cook attended college.  Trial TR at 118.  Trial counsel did not effectively rebut this claim by failing failed to solicit Cook's educational records which would have demonstrated the supposed college coursework was in reality technical college classes - two of which Cook failed and one that Cook barely passed directly resulting from his severe learning disabilities.  Trial TR at 324-326.

## GOVERNMENT'S ARGUMENT ABOUT THE ACCESS DATE/CREATION DATE EQUIVALENCE WAS CONTRADICTED BY THE EVIDENCE

The alleged contraband files in this matter all had three key dates associated with them as they were found on Cook's computer:  A creation date, last written (or

modified) date and an access date.  Those dates and times are identical for files as they are first created on any computer or hard drive, including Cook's.  If a file on a computer is accessed (that is, opened and viewed for example) its access date is changed to the date and time of that access.  The alleged contraband files shown to the jury at trial had the same access date and time as their creation date and time.

Trial counsel made the point of cross examining the government's computer expert on the access date issue with the alleged contraband files.

"Q.  [T]here's really...no evidence that any of those [alleged contraband] files were actually opened, is there?

"A.  No.

"Q.  And there's no evidence that [the alleged contraband files] were actually viewed, is there?

"A.  Nope."  TR. at 250.

The government attempted to confront the access date-time/creation date-time equivalence by arguing that Cook's operating system default settings did not update these items even if a file was opened.  Id. at 697.  The logic of the government's response to this glaring proof problem was this technological claim. That is, that even if Cook opened and viewed the files at issue, his operating system was setup by default to not update the file access date.  Therefore, countless opening and viewing of the alleged contraband files *could have occurred* and not resulted in the updating of the access dates on those files.

27

Trial counsel failed to argue that even if this setting was operable, it still defeated the government's claim that it had any evidence Cook opened and viewed any of the alleged contraband files.  More importantly, Cook's defense computer expert had evidence that files on Cook's seized media other than the alleged contraband files *did* have access dates-times and creation dates-times that were incongruent.  Therefore, the government's claim that the operating system default settings could permit the opening of the alleged contraband files without updating the respective access dates and times is false.  Trial counsel failed to present the defense expert's testimony in this regard or argue this point to the court or jury at the relevant times.  The defense computer expert was there to assist Cook and trial counsel failed to reiterate the government's admission of having no evidence of knowledge related to either of the three counts via the defense expert's testimony.

At the close of the government's case, trial counsel again failed to object to the admission of the alleged contraband images and videos citing the fact that their relevance was zero.  Without evidence that Cook opened and viewed the alleged contraband files their admission as probative evidence was outweighed by the potential of their use to unfairly prejudice Cook.  Given that the three counts at issue had knowledge as their mens rea requirement, the fact that the government lacked evidence that Cook knew the contents of the alleged contraband files meant their relevance was zero.  Trial counsel's failure to argue this point at the moment the government sought admission of these irrelevant exhibits (TR. at 257) further prejudiced Cook's direct appeal options.

Also at the time of the government seeking admission of various image and video evidence, trial counsel neglected to object to the admission of image or video evidence that was not properly authenticated.  By way of example, the government identified one exhibit it sought to admit as "Exhibit 6...the quote-unquote Vicki video identified by Roy Shepherd."  TR. at 258.  The government offered Shepherd as an authenticating witness for this exhibit because he was the investigator of the suspect in the video.  Shepherd was offered to authenticate Exhibit 6 in this way, that is, personal knowledge of the person(s) in the video.  Conversely, any images or videos for which *no witnesses were presented with personal knowledge of the person(s) in the video* should have been objected to by trial counsel at the moment the government was seeking to admit them.  Without this objection, the trial proceeded while all participants permitted a dual system of authentication to control.  If the government had evidence like Shepherd's testimony, it provided it to prove the authenticity of its image or video evidence.  If it lacked any such evidence like Shepherd's testimony it simply moved on showing whatever images and videos it wanted to the jury.

### FAILURE TO INVESTIGATE POTENTIAL ALIBI EVIDENCE

The government argued that the alleged contraband was downloaded by Cook on specific dates and times as reflected in the indictment dates.  Cook was employed full time during the period of the government's claimed downloads by him.  Both defense counsel failed to obtain Cook's employment records.  Comparison of these

records to the government's alleged contraband download dates and times may have provided alibi evidence for Cook.

The government made an argument that some of the alleged contraband downloads were done by Cook using a laptop at his place of work.  Both defense counsel neglected to guide the defense forensic expert to analyze relevant digital artifacts on Cook's computer to determine if his computer was ever connected to a wi-fi network at or near his place of work on the days the government claims he was using his laptop at work to download alleged contraband files.  The failure to guide the expert to make this inquiry disabled Cook from arguing this point at trial as part of his Rule 29 motions or to the jury in closing supporting a not guilty verdict. Likewise, his direct appeal could not make this argument as a result.

The government's evidence, specifically from Douglas, Cook's roommate, revealed that Douglas had possession of four laptop computers within a space of 90 days.  Trial TR at 710.  Trial counsel failed to argue this point to the jury as a flaw in the government's claim that only Cook had access to the computer on which it found the alleged contraband files.  The record reveals that no attempt was made by either defense counsel to interview Douglas or conduct a forensic analysis of Douglas' computer(s).[2]

### FAILURE TO EXPOSE FALSE TESTIMONY BY AGENT WHISMAN

---

[2] The fact that the government's witnesses testified they were not interested in examining all of Douglas' computers is not the terminal point of an effective defense counsel's interest in examining Douglas' computers.

The government's first witness was FBI agent Richard Whisman.  Trial TR at 39.  Agent Whisman knowingly provided false testimony.  Specifically, he repeatedly referred to the database of "known victims" supposedly managed by the National Center for Missing and Exploited Children.  Id. at 52.  "[NCMEC has] a database of known images and videos of child pornography.  When I say known, that means we know who the child is and a picture or video, how they were victimized and the circumstances of that case. "  Id. at 52-53.  This testimony is knowingly false because the report that the government's witness references (Trial TR at 107) contains a disclaimer on top of each page of the report specifically informing law enforcement that the NCMEC cannot and does not authenticate any image or video in their database.  The NCMEC does not even confirm whether an image or video in their database depicts an actual person or an actual minor. Instead, the NCMEC merely passes on to law enforcement the name and contact information (if available) of the person who submitted that image or video to the database *claiming* it to be authentic.  Comparing Whisman's testimony that the inclusion of a alleged child pornography image or video in the NCMEC database means "we know who the child is" with the reality that even the NCMEC does not make that claim is damaging to Whisman's credibility.  Trial counsel missed another impeachment opportunity.

Moreover, images and videos can be submitted to the NCMEC database from anywhere in the world including law enforcement organizations with unknown corruption issues or standards of identification or verification of victim statements

that fall far below those required of U.S. law enforcement.  There is no standard imposed by the NCMEC regarding what type of documentation, if any, must accompany the submission of an image or video to its database.  The organization while ostensibly a non-profit is funded nearly entirely by Congress and is not open to anyone outside law enforcement for training or review of their internal procedures.  Any person from any country claiming to be involved in a case of child exploitation (it is unknown whether the NCMEC even confirms the submitting person or entity is a law enforcement official or organization) can submit an image or video claiming without even substantiating its authenticity.  NCMEC does no work to confirm its authenticity and specifically states that in all reports they produce including the report produced in Cook's case.  The NCMEC does not even confirm that the submitting party is involved in law enforcement at all in the country where they reside. Whisman, contradicting this known reality about NCMEC, testified that the comparison of the images or videos found on the seized media in this case with those in the NCMEC database yields an unquestionably confirmatory result - i.e. they are definitely contraband child pornography, aka "known victims."

This unchallenged testimony left the court and jury with the impression that the government had already met its burden of authentication regarding the alleged contraband images and videos.  After all, if there is a database of known victims and defense counsel does not object or cross examine the FBI agent on this point (which was easily done by simply referring to the disclaimer on top of the NCMEC

report that the agent testified he obtained) then the jury was free to simply believe that the government's image and video evidence was authentic.  This is despite the fact that the NCMEC report *does not prove* or even offer any evidence that the government's image or video evidence was authentic.  Simply put, Whisman has no idea whether the government's offered images or videos are authentic.  Yet, he was used to achieve this purpose before the jury. Trial counsel failed completely to notice and confront this obvious duplicity.

### TRIAL COUNSEL'S ADMITTED "COMPUTER IGNORANCE"

During the trial, defense counsel Kelley acknowledged her "computer ignorance" in open court.  TR. at 190.  This case had as its core evidence, image and video files recovered from a computer.  It had extensive computer related testimony including undercover computer operations, file sharing software, IP addresses, routers, wireless networks, file formats, file hash values, file name extension testimony, etc.  For a trial counsel to take a case whose sole incriminating evidence emanates from a computer and computer related investigations and admit to "computer ignorance" offers additional indicia of ineffectiveness.  This is akin to trial counsel in a DUI defense admitting in open court to her "ignorance about breathalyzers and other machines that measure alcohol in the bloodstream."

### TRIAL COUNSEL'S INEFFECTIVE RULE 29 MOTION

At the close of the government's case, trial counsel had multiple issues that she failed to include in the Rule 29 argument.  These failures disabled Cook from

33

raising these matters on direct appeal.  Her entire argument is a single paragraph on p. 261 of the transcript:

>   **Thank you, Your Honor. We would like to make a Rule 29 motion for acquittal at this point. The government has not put forth sufficient evidence at this point to prove that it was Alex Cook who put these objects on his computer. They have not proved that even if the objects were on his computer he knowingly put them on his computer. Beyond that, they have not put forward sufficient evidence to show that the alleged confession was knowing, intelligent, and voluntary.**

"They have not proved that...he knowingly put them on this computer"?  This is not even a statement of the charges Cook was facing.  There is no charge for knowingly putting something on a computer.

Cook was facing three distinct counts, possession, distribution and receipt of contraband images or videos.  This argument does not designate which files trial counsel is referring to relevant to which of the three counts.  It also does not articulate the distinct proof problems with the three separate counts of the indictment which are outlined in the subsequent paragraphs below and should have been argued in defense counsel's first Rule 29 motion

### GOVERNMENT PRESENTED NO EVIDENCE ON DISTRIBUTION

Count 2 of the indictment alleged that Cook *distributed* the alleged contraband files.  And, it alleged that he *knowingly* distributed them as is required by the statute.  The above deficient Rule 29 argument by trial counsel does not even address either of the points in this count.

During the government's entire case, it presented no evidence Cook distributed any file to any individual. The government only succeeded in submitting that alleged contraband files were found in a folder on the seized computers that *could have been shared* with someone else. TR. at 235-236. However, the deficient cross examination of this witness failed to elicit testimony informing the jury that this witness had *no evidence* that Cook had distributed any file (legal or illegal) to anyone. All the talk on direct examination of sharing and public sharing and default settings for sharing and that Cook did not change that setting was a muddle of information that obscured the fact the government had no evidence of distribution by Cook. In other words, by merely downloading the software and installing it without any other intervention, it would place downloaded files, both legal and illegal, into a shared folder that other Limewire users *could access*. However, Cook could not be convicted of an offense that could have happened when the government was required to submit prove that he *actually shared or distributed* the alleged contraband files.

Trial counsel failed to elicit from the government's computer expert that the government had no evidence Cook was aware of that default configuration. Trial counsel failed to elicit testimony, present evidence of or even argue that even had the government shown one or more files were actually uploaded by another file sharing user, it still did not prove that Cook was aware that such sharing or distribution was happening or was reasonably likely to happen merely by his use of the peer to peer software. It also would have been required to show that he

35

*knowingly* distributed the files. Meaning, proof that the shared file was opened and viewed by Cook before being downloaded by some other user.  Trial counsel should have made that point in cross examination of the government's relevant witnesses and argued it to the court and jury at the relevant times.  Cook could not be convicted for distribution that happened without his intent or knowledge.  No intent, no crime.  Count two is not a strict liability offense.  Trial counsel's initial Rule 29 motion failed to even address these points and her cross examination of the government's computer expert failed to obtain these obvious admissions to support that point in a Rule 29 motion.

Without fighting this notion at trial, Cook was again disabled from asserting this proof problem on direct appeal to obtain a reversal of his conviction for distribution.

### GOVERNMENT PRESENTED NO EVIDENCE OF KNOWING RECEIPT

Count 1 of the superceding indictment claimed Cook knowingly received contraband images or videos.  Again, this count did not specify which file (image or video) the government was claiming he knowingly received.  Parsing this language is important to highlighting trial counsel's ignorance of the proper cross examination and Rule 29 argument here.

Knowingly received necessarily means Cook having knowledge of what the particular file was before he clicked on it in the file sharing program initiating its download.  A proper cross examination of the government's computer expert (and direct examination of the defense expert) would have exposed the fact that

Limewire does not permit users to open and view files before they are downloaded. Therefore, a Limewire user cannot know the contents of any file when they click on it selecting it for download.  They can only know the contents of a file once the download of that file is complete and they open and view the file as it sits on their computer.

In addition, trial counsel neglected to elicit from the government's computer expert that no matter the name of a file, that name alone does not dictate the file's contents.  And, furthermore, that it cannot be said that anyone has *knowledge* of the contents of a file merely by reading the filename associated with that file.  A proper cross examination would have had the government's expert admitting that even he does not seek search warrants based merely on filenames he reads residing on a suspect's computer.  In fact, as he testified in this case, he downloads the file, perhaps many such files and actually opens and views the files to insure they are what the filename hint they may be.  Trial TR at 48 "Q.  Approximately how many images did you download? A. Thirty."  A proper cross examination of this witness would have resulted in an admission that he has on many occasions downloaded files with filenames indicative of child pornography only to find out there were something else.  (e.g. legal adult pornography, an image not depicting humans, a virus, a misnamed file that was actually a spreadsheet or presentation, etc).  A proper cross examination of this witness would have resulted in his admission that he has downloaded files with filenames *not indicative of child pornography* and yet they contained what appeared to be child pornography.  All this uncertainty was

critical for the jury to hear and the judge to appreciate at the time of the Rule 29 motion at the close of the government's case.

An evidentiary hearing on this motion would enable counsel to question the relevant trial witnesses and elicit these admissions as these are technologically provable facts which no government computer expert would dispute.

Without being able to open and view a file before it is completely downloaded, Cook could not have known the contents of any file was downloading until the download was complete and he opened and viewed it.  At that point, at most, Cook would have been guilty of a violation of the knowning possession statute if he declined to delete such a file.  But, it was impossible, using Limewire, that he could have knowingly received any child pornography since he could not obtain the knowledge of the contents of the file before receipt or during receipt of the file, but only after he possessed the file.  Of course, the government conceded they had no evidence Cook ever obtained knowledge about the contents of *any of the files related to any of the counts of the indictment.*

Trial counsel's Rule 29 motion was deficient as to counts one and two for two main reasons:  First, she failed to elicit the admissions from the government's relevant witnesses to support a proper Rule 29 motion under these facts as detailed above.  Second, she failed to argue the lack of evidence as to distribution and receipt counts during her defective one paragraph Rule 29 motion as it was.

As to the possession counts, trial counsel's Rule 29 argument did not squarely address that either.  Arguing that there is no evidence Cook "knowingly put the files

on his computer" doesn't address the possession count.  That count is not determined by who put the files on Cook's computer and what they knew, but whether the government offered sufficient evidence that Cook knew the contents of the alleged contraband files once they existed on his computer (i.e. once they were downloaded) and retained them.  Who put them there is an irrelevant point to make related to the possession count.

Her argument about the so-called confession, again, failed to strike at the heart of the proper defense.  That is, the signing of the supposed confession on an electric slate attached to a computer, words in the statement that were not Cook's words and Cook's learning deficiencies noted by his expert witness.  Trial counsel merely ticked boxes in what appeared to be a templated argument, "knowing, intelligent and voluntary" that bear striking resemblance to the same triplet phrase judges know well when advising defendants about the lawfulness of their guilty pleas.

## FAILURE TO PROPERLY PREPARE AND QUESTION THE DEFENSE COMPUTER EXPERT

Trial counsel and her predecessor both failed to properly prepare the defense computer expert Vassel.  As already noted above, he was not asked key questions to reinforce the government's expert's admission that the government had no evidence that Cook opened and viewed any of the alleged contraband files.  This expert was also not asked to connect any particular filenames in the case to the respective three counts.  Trial counsel failed to object to obviously irrelevant and unfairly

prejudicial questioning by the government regarding incompletely downloaded files. TR. at 367-368.  None of those files could possibly have been the subject of the indictment since they were not completely downloaded and were unable to be opened and viewed by anyone as a result.  (TR. at 368 where the government noted that the defense expert "never actually saw these files" because they were not completely downloaded).  Vassel if properly prepared would have easily rebutted this line of questioning and trial counsel, if not openly admitting "computer ignorance" would have understood the opportunity to object to this otherwise irrelevant and damaging testimony.

Vassel testified about what types of files a person would receive in their search results using the Limewire software if they entered particular search terms. TR. at 372.  Vassel's insufficient preparation (and a failure or re-direct to remedy his speculative answers) was devastating for Cook.  Vassel was repeatedly asked, in a line of questioning about searching for files using Limewire, questions like this one:

"Q.  So it's true that if somebody typed in illegal preteen underage Lolitas, they would get back file names that contained illegal underage Lolitas?

"A. That's true."  TR. at 372.

Vassel's testimony was unquestionably speculative.  Unless Vassel ran a test using these precise search terms in the question above and noted the resulting filenames and their content, his answer was entirely speculative regarding what filenames or file content would result from a search on Limewire using any

particular search term(s).  And, even had he done this on one occasion, it was necessary he demonstrate that the results of the use of this search term were testable, reliable and repeatable to satisfy Daubert expert testimony standards. It was critical that trial counsel failed to remedy this misconception on re-direct and/ or object to the questions posed above as seeking speculative answers.

Trial counsel had another opportunity to reiterate the point about the Windows access date updating issue via cross examination of the government's computer expert on rebuttal.  Yet, she failed again to elicit the admission that the government had no evidence that Cook opened and viewed any of the alleged contraband files.  She also failed to pin this witness down as to which files related to which of the three counts in the indictment.  TR. at 386-7.  Trial counsel's admitted "computer ignorance" resulting in her being blind to glaring legal issues in the government's case and by extension failing to argue them properly to the court in her initial and renewed Rule 29 motion or to the jury in closing.

### FAILURE TO ASK FOR ACCURATE JURY INSTRUCTION ON THE ELEMENT OF KNOWINGLY IN ALL THREE COUNTS

All three counts of the indictment required the mens rea of knowingly.  The government's computer expert was not properly questioned to elicit the indisputable truth that that knowledge (i.e. knowingly) relating to computer files can only be obtained by opening and viewing the files.  Trial counsel failed to seek a jury instruction defining knowingly as evidence beyond a reasonable doubt that Cook opened and viewed (whichever files the government linked to each of the three

41

distinct counts[3]).  This failure to object and insist on such an instruction, again, deleted from Cook's appellate rights an important issue that an appellate court would focus on.  Improper jury instructions regarding the mens rea of knowledge is regularly an issue that merits reversal.  See, e.g. U.S. v. Schankowski, 782 F.2d 628 (6th Cir. 1986).

## MULTIPLICITY

Both trial counsel failed to argue that Cook's indictment contained multiplicitous charges.  The government's claims in this case is that Cook used Limewire, a file sharing program, to knowingly receive, distribute and possess child pornography.  The conduct necessary to receive child pornography via Limewire is identical to the conduct necessary to possess child pornography via Limewire. There is no evidence that Congress intended to impose multiple convictions and punishments for the same act, one resulting in a receipt charge and the other resulting in a possession charge for the same act using Limewire.

Congress' intent to provide multiple convictions and punishments for the same acts must be clear and "without ambiguity." Bell v. United States, 349 U.S. 81, 84, 75 S.Ct. 620, 99 L.Ed. 905 (1955). When the intent of Congress in punishing multiple aspects of the same acts is unclear, courts resolve the "ambiguity in favor of lenity." Heflin v. United States, 358 U.S. 415 at 419.  See also, e.g. Simpson v. United States, 435 U.S. 6, 14, 98 S.Ct. 909, 55 L.Ed.2d 70 (1978). As the Court has

---

[3] Of course, as of this writing and on this record, there is no linkage that the court can make between the files offered at trial by the government and any particular count of the indictment.

observed, when Congress intends to impose a harsher penalty, "the result [can be] accomplished easily with certainty rather than by indirection." Prince v. United States, 352 U.S. 322 at 328 (1957).

In the 6th Circuit, the seminal case on the double jeopardy problem inherent in Cook's indictment is U.S. v. Ehle, 640 F. 3d 689 6th Circuit 2011.

In Ehle as in Cook's indictment he was charged with possession of child pornography and receipt of the same child pornography.  Cook's indictment comprised three counts. "Defendant Ehle was charged with one count of 'knowingly receiving' child pornography, in violation of 18 U.S.C. § 2252A(a)(2)(A) and (b)(1), and one count of 'knowingly possessing' the same child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2)."

In vacating the judgments based upon double jeopardy violations, the Sixth Circuit held that "[b]ecause the offense of knowingly receiving child pornography includes all of the elements of the lesser-included offense of possessing the same child pornography, and because Congress did not explicitly require multiple punishments, there has been a violation of defendant's right not to be subjected to double jeopardy. It is therefore necessary to vacate the judgment below." Id.

As noted above, the indictment counts in this matter did not designate a specific file that Cook received, possessed or distributed.  Therefore, the government is stuck acknowledging that he was convicted of possessing, receiving and distributing the same files.  As such, the facts of his indictment and conviction are identical to those in Ehle and his multiplicitous convictions must be vacated.  This

43

is an argument that should have been made by trial counsel before and during trial and at the time of sentencing.  Failure of trial counsel to make this argument obviously prejudiced Cook at sentencing and eliminated all but plain error analysis of this claim on direct appeal.[4]

### GROUND TWO:
### COOK WAS IMPROPERLY SENTENCED

The trial court saw the folly and unfairness of giving any respect to the manipulated child pornography sentencing guidelines for Cook's sentencing.  The court was well within the emerging sense of unfairness among federal judges nationwide.  "As judges across the country have acknowledged, USSG § 2G2. 2 is seriously flawed and accordingly entitled to little respect."[5]  Despite the obviously multiplicity of the three counts it appears the government inserts receipt charges with regularity because of the five year minimum mandatory inherent in that statute.  It can navigate the uncertainty of a trial court's reasoned sympathy to a particular defendant's life circumstances and insure at least five years of punishment for all.

---

[4] Even under plain error analysis this multiplicity has been held sufficient to vacate convictions and remand for re-sentencing.  (See Ehle at 694).

[5] United States v. Manke, No. 09-CR-172, 2010 WL 307937, at *4 (E.D. Wis. Jan. 19, 2010) (citing United States v. Raby, No. 2:05-cr-00003, 2009 WL 5173964, at *6 (S.D. W. Va. Dec. 30, 2009); United States v. Burns, No. 07 CR 556, 2009 WL 3617448, at *7 (N.D. Ill. Oct. 27, 2009); United States v. McElheney, 630 F. Supp. 2d 886, 892 (E.D. Tenn. 2009); United States v. Phinney, 599 F. Supp. 2d 1037, 1040 (E.D. Wis. 2009);United States v. Grober, 595 F. Supp. 2d 382 (D.N.J. 2008); United States v. Stern, 590 F. Supp. 2d 945 (N.D. Ohio 2008); United States v. Doktor, No. 6:08-cr-46, 2008 WL 5334121 (M.D. Fla. Dec. 19, 2008); United States v. Johnson, 588 F. Supp. 2d 997 (S.D. Iowa 2008); United States v. Noxon, No. 07-40152, 2008 WL 4758583 (D. Kan. Oct. 28, 2008); United States v. Ontiveros, No. 07-CR-333, 2008 WL 2937539 (E.D. Wis. July 24, 2008) (Griesbach, J.); United States v. Hanson, 561 F. Supp. 2d 1004 (E.D. Wis. 2008); United States v. Shipley, 560 F. Supp. 2d 739 (S.D. Iowa 2008); United States v. Baird, 580 F. Supp. 2d 889 (D. Neb. 2008)).

Here, the court even stated at sentencing "[a]nd I will say that if it were not a minimum mandatory term, I would think of something below [the five year minimum mandatory] as being appropriate."  Sentencing Transcript at 7. Nonetheless, the court sentenced Cook for his conviction on all three counts despite there being no evidence to support the *mens rea* for any of the three counts for the reasons outlined above.  And, given the multiplicity of the receipt and possession facts for violation, the court mistakenly felt it had to sentence Cook under the minimum mandatory instead of applying lenity and sentencing under the possession count which omits the minimum mandatory five year sentence.  The trial court chafed at the boundary Congress set for every case, including Cook's. "[W]here does it get the wisdom to assess on everybody convicted of the same crime, regardless of circumstances, regardless of prior criminal involvement, regardless of personal characteristics, all the things and all else that we as judges have to take into account and must take into account in trying to craft the sentence?…[T]hat is a view with which I disagree absolutely."  Sentencing Transcript at 18.

The trial court then welcomed an appeal saying "I am far from infallible. And my judgment, quite properly, is going to be questioned in this case on appeal….I welcome an appeal.  And, if I erred either in my decisions before or during trial, or at this proceeding, I should be reversed.  And that never bothers me. That's what the Courts of Appeal are here for, because judges are not infallible.  But when it comes time to impose a mandatory minimum sentence, that's not right."  Id.

45

Given the multiplicity and the trial court's comments, the multiplicity argument alone would likely have resulted in a much shorter and just sentence for Cook distinct from what the court felt it was compelled to impose.  This ineffectiveness alone is sufficient to send this matter back to the trial court.

The trial court then remarked about its belief that "there candidly is sufficient fair doubt about the accuracy of any jury verdict."  Id. at 20.  This remark was directly connected to its belief that the FBI had "cheated" as the court stated, when it claimed to have interrogated Cook without recording the interrogation and then had multiple statements in Cook's supposed "confession" that diverged from Cook's testimony and the testimony of individuals with knowledge of the statements contained in the FBI's "confession."

The court then sentenced Cook to a year beyond the minimum mandatory, that is, 72 months on all three counts to be served concurrently.

## CONCLUSION

Alex Cook respectfully requests that this Honorable Court vacate the convictions and sentences as unconstitutional and unlawful and order a new trial and/or re-sentencing or whatever proceedings this Court deems appropriate to insure the constitutionality and lawfulness of Mr. Cook's convictions and sentence.

Respectfully Submitted,

/s/Dean Boland

Dean Boland (0065693)
1475 Warren Road
Unit 770724
Lakewood OH 44107
dean@bolandlegal.com
216.236.8080 ph
866.455.1267 fax

Attorney for Petitioner

## CERTIFICATE OF SERVICE

The foregoing will be served by operation of the court's electronic filing system on all parties to this matter.

/s/ Dean Boland
Dean Boland (0065693)