IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Alex David Cook, | ) | Case No.:  3:10-CR-522 |
| | ) |       (3:14-CV-01455) |
| Defendant-Petitioner, | ) | |
| | ) | Judge James G. Carr |
| v. | ) | |
| | ) | |
| United States of America, | ) | RESPONSE IN OPPOSITION TO |
| | ) | 28 U.S.C. § 2255 MOTION TO VACATE, |
| Plaintiff-Respondent. | ) | CORRECT OR SET ASIDE A SENTENCE |
| | ) | |

On May 27, 2014, Petitioner Alex David Cook filed motion to vacate, correct, or set aside his sentence under 28 U.S.C. § 2255.  (R. 98: § 2255 Motion).  The Government responds in opposition.

## STATEMENT OF THE CASE

On December 8, 2010, a grand jury in Toledo, Ohio indicted Defendant-Appellant Alex Cook on one count of distributing child pornography in violation of 18 U.S.C. § 2252(a)(2).  (R. 5: Indictment, PageID 22).

The Government later obtained a superseding indictment containing three counts: receipt and distribution of child pornography in violation of 18 U.S.C. § 2252(a)(2) (Counts 1 and 2), and possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B) (Count 3).  (R. 15: Superseding Indictment).  Cook pleaded not guilty to all charges in the superseding indictment.

Trial commenced on September 6, 2011, and concluded on September 9, 2011, with the jury returning a guilty verdict on all counts.  (R. 49: Jury Verdict).

On June 18, 2012, Cook was sentenced to 72 months imprisonment (R. 75: Judgment.

Cook filed a timely appeal on July 2, 2012.  (R. 84: Notice of Appeal).  The Sixth Circuit affirmed the district court, finding that it had not abused its discretion by denying defense counsel's last motion to continue the trial.  United States v. Cook, No. 12-3827 (6th Cir., July 20, 2013) (unpublished).  The Court also wrote that his three ineffective assistance of counsel claims were better pursued on collateral attack, and therefore declined to rule on them.  Id.

On July 1, 2014, Cook timely filed a motion to vacate, set aside, or correct a sentence under 28 U.S.C. § 2255.  (R. 98: § 2255 Motion; see also Case No. 3:14-CV-1455).  In his lengthy memorandum in support, Cook now raises 18 claims of ineffective assistance, and one claim that he was improperly sentenced.  The government files this response in opposition.

<u>STATEMENT OF THE LAW</u>

1.   <u>§ 2255 Claims in General</u>

To obtain relief under 28 U.S.C. § 2255 on the basis of a nonconstitutional error, a defendant must show a fundamental defect in the proceedings that inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure.  Reed v. Farley, 114 S. Ct. 2291, 2300 (1994); United States v. Todaro, 982 F.2d 1025, 1028 (6th Cir. 1993).  Nonconstitutional claims not raised at trial or on direct appeal are waived for collateral review except where the errors result in something akin to a denial of due process.  Grant v. United States, 72 F.2d 503 (6th Cir. 1996).

To obtain relief on the basis of a constitutional error, the record must reflect an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings.  Brecht v. Abrahamson, 507 U.S. 619, 637, (1993); United States v. Ross, 40 F.3d 144, 146 (7th Cir. 1994).

Claims that could have been raised on direct appeal but were not, are barred from further review.  These claims are reviewed only upon a showing of cause and prejudice for failing to raise them.  United States v. Frady, 456 U.S. 152, 159 (1982); Ratliff v. United States, 999 F.2d 1023, 1025 (6th Cir. 1993).  The failure to raise an issue at an earlier opportunity constitutes a waiver of the claim.  United States v. Walsh, 733 F.2d 31, 34-35 (6th Cir. 1984).

As stated above, the remedy afforded by § 2255 is itself limited, restricted only to claims of constitutional error or manifest injustice.  Thus, claims of error with respect to the Sentencing Guidelines generally are not presentable under § 2255, absent extraordinary circumstances.  See, e.g., Grant v. United States, 72 F.3d 503, 505-06 (6th Cir. 1996); Knight v. United States, 37 F.3d 769, 773 (1st Cir. 1994); Graziano v. United States, 83 F.3d 587, 589-90 (2d Cir. 1996) (per curiam); United States v. Cepero, 224 F.3d 256, 267-68 (3d Cir. 2000) (en banc); United States v. Pregent, 190 F.3d 279, 283-84 (4th Cir. 1999); United States v. Payne, 99 F.3d 1273, 1281-82 (5th Cir. 1996); Buggs v. United States, 153 F.3d 439, 443 (7th Cir. 1990); Auman v. United States, 67 F.3d 157, 160-61 (8th Cir. 1995); United States v. Schlesinger, 49 F.3d 483, 485 (9th Cir. 1994); Burke v. United States, 152 F.3d 1329, 1331-32 (11th Cir. 1998).  This rule also reflects the general preference for finality in criminal litigation.

Finally, it is well-established that a § 2255 motion "is not a substitute for a direct appeal." Regalado v. United States, 334 F.3d 520, 528 (6th Cir. 2003) (citing United States v. Frady, 456 U.S. 152, 167–68, 102 S. Ct. 1584 (1982)).  Accordingly, claims that could have been raised on direct appeal, but were not, will not be entertained via a motion under § 2255 unless the petitioner shows:  (1) cause and actual prejudice to excuse his failure to raise the claims previously; or (2) that he is "actually innocent" of the crime.  Bousley v. United States, 523 U.S. 614, 622, 118 S. Ct. 1604 (1998) (internal citations omitted).

3

2.  Ineffective Assistance of Counsel Claims

The two-prong test set forth in Strickland v. Washington, 466 U.S. 668 (1984), governs claims of ineffective assistance of counsel.  Towns v. Smith, 395 F.3d 251, 258 (6th Cir. 2005). That standard applies to claims of ineffective assistance of appellate counsel raised in a § 2255 motion.  Ballard v. United States, 400 F.3d 404, 407 (6th Cir. 2005); see also Evitts v. Lucey, 469 U.S. 387, 396 (1985).  To show a violation of the Sixth Amendment right to effective assistance of counsel, a defendant must establish that his attorney's performance was deficient and that the deficient performance prejudiced his defense.  Strickland, 466 U.S. at 687.  An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness."  Id. at 688.  The defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amend-ment."  Id. at 687.  "Judicial scrutiny of counsel's performance must be highly deferential."  Id. at 689.  The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms."  Wiggins v. Smith, 539 U.S. 510, 521 (2003) (quoting Strickland, 466 U.S. at 688) (internal quotation marks and original alterations omitted).

Under the first requirement to show that counsel's performance was deficient, Petitioner must demonstrate that the counsel's representation fell below an objective standard of reasonableness under prevailing professional norms.  Strickland, 466 U.S. at 688.  Judicial scrutiny of counsel's performance must be highly deferential.  Michel v. Louisiana, 350 U.S. 91, 101 (1955).  "It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense

4

after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Strickland, 466 U.S. at 689.

As stated by the Sixth Circuit, to prevail under Section 2255, a petitioner ". . . must show a fundamental defect which inherently results in a complete miscarriage of justice, or, an error so egregious that it amounts to a violation of due process." United States v. Ferguson, 918 F.2d 627, 630 (6th Cir. 1990), citing Hill v. United States, 368 U.S. 424, 428 (1968).

Under the second requirement to show prejudice, Petitioner must demonstrate that there exists a reasonable probability that, absent counsel's unprofessional errors, the results of the proceeding would have been different. Strickland, 466 U.S. at 694. The focus should be whether counsel's errors have undermined the reliability of and confidence in the result, i.e., can one confidently say that the trial reached a fair and just result. Lockhart v. Fretwell, 506 U.S. 364 (1993).

DISCUSSION

A.  GROUND ONE:  INEFFECTIVE ASSISTANCE COUNSEL.

  1.  The Indictment was Not Defective.

Cook claims that trial counsel was ineffective for failing to seek a bill of particulars. He alleges that the indictment was defective for failing to list separate file names of the child pornographic images, and linking them to each count. He states that the lack of specificity exposes him to double jeopardy, should the government re-indict him for possession or receipt of additional counts. (R. 98: § 2255 Mo., p. 12).

The purpose of a bill of particulars is to give a defendant key factual information not contained in the indictment, so as to enable him to prepare a defense and avoid surprise at trial. See United States v. Salisbury, 983 F.2d 1369, 1375 (6th Cir.1993); see also Fed.R.Civ.P. 7(f).

In United States v. Page, --- F. App'x ----, 2014 WL 3930468, *4 (6th Cir. 2014), the Sixth

Circuit upheld the denial of the defendant's motion for a bill of particulars because the defendant

did not claim that his discovery process was in fact unmanageable or that he was unable to

prepare a defense.  See also United States v. Urban, 404 F.3d 754, 772 (3d Cir. 2005) (noting

that full access to discovery "further weakens the case for a bill of particulars").  Similarly, Cook

does not allege that he was unable to prepare a defense, or that he was denied full access to

discovery.

In United States v. Beasley, 688 F.3d 523 (8th Cir. 2012), the defendant claimed that a

clarifying bill of particulars was necessary because the child pornography indictment covered

such a broad time frame that he was unable to mount an adequate defense, and exposed him to

the possibility of double jeopardy.  The Eighth Circuit held that the admittedly broad time frame

reflected in the indictment did not fail to fairly inform him of the charges in the unique

circumstances of that case.  The court noted that Beasley cited no cases in which the court of

appeals overturned a conviction on double jeopardy grounds merely because the otherwise valid

indictment covered an overbroad time frame.  It refused to overturn Beasley's conviction

because the indictment was not so defective that it failed to charge the offense for which he was

convicted.  Id. at 533; see also, United States v. Stephenson, 924 F.2d 753, 762 (8th Cir. 1991)

(rejecting as "speculative and premature" the defendant's challenge to the denial of a bill of

particulars because there was no evidence the defendant was actually at risk of duplicative

prosecution).  Similarly, Cook's complaint that the indictment hindered his ability to raise double

jeopardy claims should the government re-indict him, is also speculative and premature, because

he is not at risk for a second prosecution on the same images.  Therefore his claim that counsel

committed grave error by failing to seek a bill of particulars, which caused him to suffer

prejudice, should be denied.

    2.    <u>Other Claims of Pre-Trial Ineffective Assistance</u>

Cook raises various other claims that counsel was ineffective before the trial began.  He claims that counsel failed to investigate or coordinate with her expert witness to testify that the number of child pornography images, as a percentage of all the files on Cook's computer, were few.  Cook states, "A typical child pornography possessor and hoarder would not have a small number of such files in comparison to the number of otherwise legal images and videos."  (R. 98: § 2255 Motion, p. 13).  The government does not advocate that a defendant who receives or possesses child pornography has no interests or hobbies *other* than the pornography, or that his personal computer is maintained largely to "hoard" illegal images.  Nor does the government restrict prosecution of this crime to advanced "hoarders" and give a pass to those in the early stages of their collection.  Counsel's failure to raise such an objection pre-trial was not ineffective assistance.

Other claims of pre-trial ineffective assistance include failing to move to exclude his statement that he had child pornography on his computer as not relevant, and failing to investigate the background of Cook's roommate.  These issues were either the subject of an unsuccessful pre-trial motion to suppress and motion in limine, or more fully raised at trial.

    3.    <u>The Witness Contradiction was Not Argued.</u>

Turning to the trial, Cook first alleges that counsel was ineffective for failing to argue that FBI Special Agent Paul Pape made a contradictory statement.  S/A Pape testified that he never lied to Cook.  However, Cook now contends that during the suppression hearing, Pape "admitted falsely telling Cook during Cook's polygraph that his responses indicated he was lying."  (R. 98: § 2255 Motion, p. 20).  This is a mischaracterization.  The testimony was:

> Q:     … After you administered those questions, you actually told Mr. Cook that he was reacting to some of the questions, is that correct?
>
> A:     That is –
>
> Q:     Now, you said today that you decided that the test had been inconclusive, and part of the reason was because the room was significantly cold, is that fair, is that –
>
> A:     Cold enough to affect your sweat gland activity.
>
> Q:     But you told Mr. Cook that he had actually reacted to a couple of the questions; is that correct?
>
> A:     Yes, he had.

(R. 37: Suppression Hrg. Transcript, pp. 90-91).   S/A Pape did not falsely tell Cook that he was lying during the polygraph examination – only that Cook was reacting to some of the questions. That was true, even though the sum result of the test was inconclusive.  The claim that counsel was defective for failing to argue that S/A Pape made contradictory statements, thus diminishing his credibility, was not an egregious error amounting to a violation of due process.

   4.  <u>Special Agent Whisman did Not Testify Falsely</u>.

       Cook also complains that S/A Richard Whisman testified falsely, and defense counsel missed another impeachment opportunity.  (R. 98: § 2255 Motion, p. 30-33).  S/A Whisman was the Oklahoma FBI agent who downloaded child pornography through LimeWire from the IP address assigned to Cook.  He testified that he compared the downloaded images to the database of "known victims" managed by the National Center for Missing and Exploited Children ["NCMEC"].

       Cook complains that S/A Whisman's statement "we know who the child is and a picture or video, how they were victimized and the circumstances of that case" was knowingly false. (<u>Id.</u>, p. 31).  Cook points out that the NCMEC places a disclaimer on top of each page informing law enforcement that the NCMEC cannot and does not authenticate any image or video in their

database.  "Instead it merely passes on to law enforcement the name and contact number (if available) of the person who submitted that image or video to the database *claiming* it to be authentic."  (Id.) (emphasis original).  Cook contends that counsel was defective for failing to impeach the agent for saying "we know who the child is" with the NCMEC's disclaimer that it cannot confirm the child's identity.

This supposedly missed opportunity to impeach did not fall below an objective standard of reasonableness, because if challenged, the agent could have simply explained that he knows the name of the person who says the images are of him or her.  In fact, images from the "Jenny" and "Vicki" series were identified and the victims personally interviewed by Amy Allen and Roy Shepard, each of whom testified at trial.  (R. 56: Trial Transc., Vol. 2, pp. 75, 78).  There was no error or prejudice.

5.    Cook's Signature on His Confession.

Next, Cook complains that "[N]either defense counsel  [FPD Donna Grill or subsequently retained Elizabeth Kelley] sought a forensic examination of Pape's computer to confirm that Cook's signature was actually entered as a part of the statement Cook read on Pape's computer." (R. 98: § 2255 Motion, pp. 21-22).  Cook styles this as separate from the claim that his non-videotaped confession was either coerced or fabricated by the FBI.  Cook signed a digital signature pad "just like basically at Wal-Mart."  (R. 37: Suppression Hrg. Transcript , p. 65).  S/A Pape testified that he observed Cook sign the electronic signature pad after providing him with an opportunity to read the typed summary of his statement, and Cook initialed the first page before signing on the second page.  (Id., p. 73-74).

Cook seems to suggest that the FBI used Cook's digital signature from an earlier form, such as the Miranda form or the consent to polygraph, and attached it to his statement.  However,

9

Cook did not disagree that he *had* signed this form.  His counsel asked, "Q:  Now, when you were – after you signed this alleged confession, were you given a hard copy when you walked out?"  "A:  No, ma'am."  (R. 58 Trial Transcript, Vol. 4, p. 318-19).  Consequently, failing to challenge Cook's signature was not a fundamental defect inherently resulting in a complete miscarriage of justice.  This ineffective assistance claim is meritless.

   5.   The Roommate, Ian Douglas.

   Cook makes several arguments relating to his roommate, Ian Douglas.  First, he complains that counsel failed to investigate Douglas's background, making it hard to challenge Douglas's flat denials that he used Cook's computer.  Second, he claims that trial counsel failed to impeach Douglas that crime scene photographs showed Douglas's computer was located in the living room and not in Douglas's second floor bedroom, and to probe Douglas's other personal computers which were connected to the same wireless router in the residence.  Third, Cook states that counsel failed to investigate potential alibi evidence to identify the user, including potential information that Cook was at work and the roommate was home on the dates the images were downloaded.  (R. 98: § 2255 Motion, pp. 19, 22-24, 29-30).

   First, Cook's father testified that he saw Douglas using his son's computer; whereas Douglas said he never used Cook's computer, did not have Cook's password, and he never downloaded child pornography to his computer.  (R. 58: Trial Trans., Vol. 4, pp. 273-74, 127-391-93, 396-97, 400).  This was a credibility issue for the jury to decide.  In addition, the FBI examined Douglas's computer, and found no illegal images on it.  (Id., pp. 392-93). This contradicts Cook's claim that counsel never pointed out to the jury that the government failed entirely to examine any of the computers used by the roommate in the residence.  (R. 98: § 2255 Motion, p. 23).  Cook's present attorney even submits a proposed cross examination of the

government's computer witness, essentially setting out the questions he would asked to effectively represent the defendant.  (Id., pp. 23-24).  This proposed testimony should be disregarded in light of the Supreme Court's wise observation, "It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence." Strickland, 466 U.S. at 689.

Cook speculates that because Douglas had four computers within a 90-day span, Douglas may have used Cook's wireless router to download illegal image to one of the computers he no longer possessed.  Again, this theory was raised in front of the jury, as part of the defense case. It was not ineffective assistance of counsel simply because the jury did not accept it.

Second, the location of Douglas's laptop in the living room as opposed to his bedroom (R. 56: Trial Transcript, Vol. 2, p. 96), is not relevant to the issue of who downloaded child pornography using Cook's IP address.  Likewise is his contention that counsel was defective for not attempting to conduct a forensic analysis of Douglas's former computers, because the illegal images were *found on Cook's computer*.  Moreover, defense's expert witness, Mark Vassel, testified that he examined a mirror image of Cook's computer, and found on it the same images that were downloaded by the undercover FBI agent in Oklahoma via LimeWire from Cook's IP address.  (R. 58: Trial Transc., Vol. 4, pp. 360, 365).  Thus the failure to track down and examine the roommate's prior computers is not an egregious error amounting to a violation of due process.  It did not prejudice the defendant.

The last claim relating to Douglas and alibi evidence is that trial counsel failed to argue that the roommate (who possessed four laptop computers in a 90-day period) was a flaw in the government's claim that only Cook had access to the computer on which it found the illegal files. As explained above, whether the roommate possessed *other* computers sharing the same IP

11

internet address does not give Cook an alibi for the illegal images were downloaded *to Cook's computer*.  For the above reasons, these claims of ineffective assistance of counsel should be denied.

6.     The Relevance of Cook's Statement.

Next, Cook states that his statement was not relevant to the proceedings because there was no evidence that his definition of "child pornography" was the same as the FBI's definition.  (R. 98: § 2255 Motion, pp. 16-18).  Cook states that even if they were presumed to be referring to the same definition, his statement did not include admissions of distribution, as to specific file names.  Cook does not clarify his definition of child pornography.  However, the testimony shows that Cook downloaded images of adult pornography.  (R. 58: Trial Transc., Vol. 4, p. 333).  There is no issue that Cook could identify what "pornography" is in the adult context.  Cook further testified that he described to Dr. Graves images on his computer he "thought might be" child pornography.  These images were of a girl with small breasts and no body hair, who appeared 14 or 15 years old.  (Id.).  The Court instructed the jury on the definition of "lascivious exhibition" of the genitals or pubic area.  Among the factors to consider are whether the focal point of the image is on the child's genitals or pubic area, and/or whether the child is fully or partially clothed, or nude.  (R. 59: Trial Transc., Vol. 4, p. 461).  The fact that the girl appeared to be a minor, and he saw that she had no body hair, clearly shows that Cook viewed the girl's genitalia.  In view of the fact that Cook testified that he "thought the images might be" child pornography, his present claim that trial counsel was defective for failing to challenge this point is not so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment.  It was not ineffective assistance of counsel to fail to "aggressively rebut that evidence" (R. 98: § 2255 Motion, p. 17) because the parties' definitions of child pornography

12

were not in conflict.  Because this defective assistance allegation was neither a grave error, nor did the failure to challenge the definition cause Cook to suffer prejudice, this claim should be denied.

    7.    <u>Cook was Functionally Able to Understand His Statement</u>.

    Next, Cook claims that trial counsel was ineffective for failing to solicit his educational record to demonstrate that Cook's learning disability made him unable to understand the document scrolled by him on a computer screen, before signing it.  (R. 98: § 2255 Mo., p. 26).  The matter of Cook's learning disability was presented during trial.  First, Ann Vance testified that she was Cook's special education teacher, knew he had a problem with basic reading, and knew that Cook had an IEP (individualized education plan) from the third grade on.  (R. 58: Trial Transc., Vol. 4, pp. 290-92).  Second, Dr. Wayne Graves testified that Cook "didn't trust his own ability to read and make sense of written information [and] was somewhat dependent on authority figures … and would not necessarily trust his own reading of something that was in front of him."  (R. 57: Trial Trans., Vol. 3, p. 191).  The doctor also testified that Cook had a documented learning disability with written language, and his reading level was at a fifth or sixth grade level.  (<u>Id.</u>, pp. 192, 200).  However, on cross examination Dr. Graves admitted that he considered Cook's level of performance sufficiently adequate to answer computer administrative test protocols when giving him tests.  The Government asked:  "Q:  Dr. Graves, you could sit him down in front of a computer and ask him to answer questions; is that true?  A:  Well, I'm trying to answer that in terms of the reading level required, which is fifth grade reading level.  Yes."  (<u>Id.</u>, p. 200).  Clearly, Cook was able to read and understand the doctor's tests administered on the computer.

    Defense counsel presented evidence that Cook may not have understood – or even read –

the statement that the FBI wrote, based upon their interview.  The jury did not accept that argument.  Now, he contends that a counsel was defective for not convincing the jury by presenting additional evidence of his learning disability.  However, defendants who have claimed that they did not understand their waiver of rights due to diminished mental abilities have not been universally successful.  In Garner v. Mitchell, 557 F.3d 257 (6th Cir. 2009), the defendant claimed that he was functioning in the borderline range of intelligence, and could not understand the Miranda warnings at the time of the interrogation.  The Court held that its primary focus is on what the interrogating officers could have concluded about the defendant's ability to understand, but it may consider later-developed evidence of a defendant's actual mental ability to understand.  In a close case, the finder of fact may be more inclined to determine that the police should have known that the defendant could not understand.  Id. at 263.  In Garner, however, the evidence of the defendant's age, experience, education, background, and intelligence did not mandate the conclusion that, even viewed from his internal prospective, Garner could not understand the warnings.  Id.  Garner was tested by three experts, and although their assessments indicated that he suffered from diminished mental capacity, they did not demonstrate that Garner was incapable of knowingly and intelligently waiving his Miranda rights.  Thus, diminished mental capacity is one of many factors to be considered in the totality of the circumstances analysis, but does not alone prevent a defendant from validly waiving his Miranda rights.  Id. at 264.

More recently, a defendant claimed that he was incapable of knowingly, intelligently, and voluntarily waiving his Miranda rights due to his below-normal intelligence level, bipolar disorder, and substance abuse issues.  See Padgett v. Sexton, 529 F. App'x 590 (6th Cir. 2013). The officers testified that the defendant appeared to be coherent and not displaying noticeable effects of his mental illness at the time of interrogation.  Padgett told them about his bipolar

14

disorder but denied needing treatment.  Id. at 598.  The trial court did not dispute Padgett's

diagnosis, but found that he understood his rights at the time he waived them.  Citing Garner v.

Mitchell, supra, the Sixth Circuit upheld the determination that the defendant knowingly and

intelligently waived his Miranda rights.  Id. at 597-98.

        Unlike Padgett, Cook did not tell the interviewing officers about his reading disability.

But like Garner, Cook's "diminished mental capacity alone" does not prevent him from validly

signing the statement based upon his interview with FBI agents.  Even if the jury did not dispute

Cook's fifth or sixth grade reading ability, it properly found that he knowingly and intelligently

signed the statement that S/A Pape typed while confirming each sentence with Cook.  (R. 56:

Trial Transc., Vol. 2, p. 453).  Trial counsel was not ineffective for failing to present school

records, in addition to his school teacher's testimony, as evidence of Cook's reading disability.

This ineffective assistance allegation is an example that the Supreme Court recognized in

Strickland:  "It is all too tempting for a defendant to second-guess counsel's assistance after

conviction."  Strickland, 466 U.S. at 689.  For these reasons, the Court should deny this claim.

   8.    Evidence Concerning the Access Date/Creation Date Equivalence.

        Next, Cook complains that trial counsel failed to argue that the government had evidence

that Cook opened and viewed the contraband files because the "creation date" entered when the

files were downloaded via LimeWire, had not been updated with  more recent "access dates."

Cook maintains that there was no evidence that he viewed the files, and therefore the government

failed to demonstrate *mens rea*, that Cook knew what the contents of the files were.  (R. 98: §

2255 Mo., p. 26-29).  The government presented evidence that the computer's operating system

"default" permitted the opening of the files without updated their respective dates, and that was

the reason the files' creation dates and last accessed dates were identical.  Cook complains that

trial counsel failed to present the defense expert's testimony on this topic.  (Id., p. 28).  In fact, the defense's expert did testify to the significance of the same dates.  Mark Vassel, a computer forensic examiner, explained that when he saw the list of 34 file names with the created times and the last access times all being identical, it meant that, although the files were on the computer, they were "never opened, never viewed, never displayed."  (R. 58: Trial Transc., Vol. 4, p. 355).

On cross examination, defense expert Vassel was asked that when Windows Vista Ultimate is sold off the shelf, it comes with a factory default that the last accessed time updating feature is turned off.  He replied that it depends on the installation.  "In this case it was actually turned on."  (Id., p. 369).  In response,  the Government handed him a printout that Vassel had created listing over 800 files of the last accessed times and created times for the files in Cook's LimeWire folder.  Vassel could not dispute that there was not a single file that had a different accessed time from the date created time.  (Id., p. 370).  It was for the jury to determine whether the Windows operating system had the default setting to update the access date and time turned on or off, and whether Cook downloaded files music, adult pornography, and child pornography, but never accessed, viewed, or listened to a single one of them.  It is not ineffective assistance of counsel to present a defense theory, but for the jury to reject it.  Cook does not show that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms.  This claim should be denied.

Cook further states that trial counsel neglected to object to the admission of images or videos that were not properly authenticated.  (R. 98: § 2255 Mo., p. 29).  He notes that the Government identified one exhibit as of a known victim, the "Vicki" series identified by Roy Shepard.  Then Cook claims, "Conversely, any images or videos for which *no witnesses were*

16

*presented with personal knowledge of the person(s) in the video* should have been objected to by trial counsel at the moment the government was seeking to admit them." (Id.) (emphasis original). Cook contends that without this objection, the trial proceeded while permitting a dual system of authentication to control. What he fails to appreciate is that authenticating or linking a child pornography image or video to a known victim is the exception, not the rule. The crime is, by its very nature, secretive and underground. To contend that the crime of child pornography should not be prosecuted unless the identities of all the victims are known or their identities can be authenticated, is utterly without merit.

   9.   <u>Trial Counsel's Rule 29 Motion for a Judgment of Acquittal</u>.

Cook makes brief complaints about trial counsel's statement, "It's computer ignorance on my part," and her Rule 29 argument. (R. 98: § 2255 Motion, pp. 33-34). The computer ignorance statement came in a sidebar, outside of the hearing of the jury. The issue was the report that defense counsel intended to present to Dr. Graves regarding his testing of Cook, whether to admit her marked-up copy or a clean copy of the report as an exhibit, and whether the report was hearsay, capable only to be used for a prior inconsistent statement. Counsel asked for time to download a clean copy. The Court suggested counsel just ask the doctor for his opinions. Counsel said, "But it is the same report. It's computer ignorance on my part." (R. 57: Trial Transc., Vol. 3, p. 190). Cook inflates the significance of the statement. Counsel's statement had no effect on the jury, or the case, and only reflected the typical issues that arise in any case where trial prep documents are also admitted as exhibits.

Cook further complains that counsel's Rule 29 motion for a judgment of acquittal was inadequate for failing to include multiple issues. He says that counsel failed to articulate distinct proof problems with the three counts of the indictment, thus disabling him from raising them on

direct appeal.  (R. 98: § 2255 Motion, pp. 33-34).  Although her oral motion for a judgment of acquittal was brief, trial counsel raised the issues of whether Cook knowingly put (i.e., received) the images on his computer, and whether his alleged confession was knowing, intelligent, and voluntary.  On appeal, Cook flatly denied making the confession, and raised the issues of whether counsel was ineffective for failing to move to dismiss the charges, for a mistrial, or to strike Cook's statement offered by the FBI.  Nothing prevented him from raising sufficiency of the evidence claims.  Here, he has not shown that counsel's alleged errors were of a constitution-al magnitude *and* caused Cook to suffer prejudice, i.e., prevented him from raising the proof problems on appeal.  Both <u>Strickland</u> prongs, error and prejudice, must be satisfied.  For these reasons, the above claims of ineffective assistance of counsel should be denied.

   10.   <u>Sufficient Evidence was Presented to Support the Jury's Verdicts.</u>

Cook next contends that the government presented no evidence on distribution or receipt of child pornography.  (R. 98: § 2255 Mo., pp. 34-39).  In regard to the distribution issue, in June 2010, FBI S/A Whisman conducted an undercover operation during which he downloaded approximately thirty child pornography images through LimeWire, originating from Cook's IP address.  (R. 55: Trial Transc., Vol. 1, p. 48, 58).  He testified that when he downloads a file from someone, it comes directly from that person's computer to Whisman's computer, without being routed through a central server.  (<u>Id.</u>, p. 43).  This is evidence that Cook distributed child pornography images because the images dame from his computer.

Cook contends that the government presented no evidence that he knowingly shared or distributed the contraband files.  However, in <u>United States v. Conner</u>, 521 F. App'x 493 (6th Cir. 2013), the Sixth Circuit found that the knowing use of a file-sharing network like LimeWire was sufficient to trigger the sentencing enhancement for distribution under U.S. Sentencing

Guideline § 2G2.2(b)(3)(F)).  The Court held, "While defendants have argued that they had no knowledge that their computers were equipped to distribute child pornography, courts have not required the government to prove such knowledge.  The purpose of a file sharing program is to share, in other words, to distribute, and knowing use of such a program qualifies as conduct that "involves ... distribution."  Id. at 500, quoting United States v. Dodd, 598 F.3d 449, 452 (8th Cir.2010) (internal quotations omitted).  Conner argued that the government did not develop the record sufficient to demonstrate any knowledge on his part that he knew the filed he downloaded to his hard drive would be accessible to others.  However, the Sixth Circuit noted that the burden of introducing evidence is on the defendant.  Id., citing United States v. Durham, 618 F.3d 921, 931 (8th Cir. 2010) ("[U]nless a *defendant* presents 'concrete evidence of ignorance,' the fact-finder may reasonably infer the defendant utilized a file-sharing program to distribute files."). (emphasis added).

Cook may claim that he presented evidence that he never accessed the downloaded files because the last-accessed dates were identical to the creation dates.  However, the government countered that argument by showing that none of the 800 downloaded files had different access dates, and it was implausible that Cook downloaded all those files and never opened or accessed a single one.  The government also presented evidence that the Windows Vista Ultimate operating system installed on Cook's computer came from the factory with the feature updating the access dates defaulted to off.  However, Cook's computer expert claims that the last-accessed date feature was turned on.  Regardless of whether the defendant presented concrete evidence that he was ignorant of the file-sharing program's distribution feature, the jury did not find it plausible.  In United States v. Gerick, --- F. App'x ---, 2014 WL 2609522 (6th Cir., June 11, 2014), the defendant maintained that he lacked technical knowledge in computers, alleged that

19

the government failed to show that the child pornography images were uploaded for distribution and public viewing on the peer-to-peer network, and argued that he attempted to block others from gaining access to his computer.  The Sixth Circuit held that none of the arguments contained concrete evidence demonstrating Gerick's ignorance about the use of file-sharing programs.  Id. at *7.  See also, United States v. Farney, 513 F. App'x 114, 116 (2d Cir. 2013) ("knowingly placing child pornography files in a shared folder on a peer-to-peer file-sharing network constitutes distribution under U.S.S.G. § 2G2.2, even if no one actually obtains an image from the folder.")

    In regard to the charge of receipt, Cook contends that the government did not present any evidence that he was aware of the content of the files, because there was no evidence that the filed had ever been accessed.  He further contends that suggestive file names are not always proof that the content is child pornography, because the government's expert testified that he always opens and view the filed before seeking a warrant.  (R. 98: § 2255 Mo., p. 37).  Opening and viewing downloaded files which potentially contain child pornography is simply part of the investigative process, a way of confirming the contents before turning a suspect into a charged defendant.  Cook calls this uncertainty that file names are not always indicative of child pornography a critical point for the jury to hear, and that trial counsel was ineffective for failing to press that point at the time of the Rule 29 motion.

    Regardless of the uncertainty that every suggestive file name contains illegal images, LimeWire only searches for the terms that the user enters.  As defense computer expert Mark Vassal explained during cross examination:

> Q:    So, for example, if someone typed in the word Jimmy Hendrix, they would get songs back with the word Jimmy Hendrix in the file name?
>
> A:    Right.

20

> Q:    If someone typed in Lolita, they would get file names back, maybe a copy of the book <u>Lolita</u>, maybe child pornography?
>
> A.    That's correct.
>
> Q.    So it's true that if somebody typed in illegal preteen underage Lolitas, they would get back file names that contained underage Lolitas?
>
> A.    That's true.

(R. 58: Trial Transc., Vol. 4, pp. 371-72).  Cook calls this testimony "speculative" and that trial counsel was ineffective for failing to properly prepare and question the defense expert.  (R. 98: § 2255 Mo., pp. 39-40).  However, expert witnesses are allowed to testify as to their opinions.

Cook had file names in his LimeWire folder consistent with child pornography, such as 9YO (nine year old),  underage Lolita; PTHC (preteen hard core); PTSC (preteen soft core), PEDO (pedophile), child having sex, underage, hussy fan, and kiddie.   (R. 55: Trial Transc., Vol. 1, p. 52).  The government thus presented evidence that Cook knowingly received images of child pornography when he searched LimeWire using search terms, words and phrases that are associated with child pornography.  Counsel was not ineffective for failing to argue that the government had not presented sufficient evidence of distribution and receipt to survive a Rule 29 motion for judgment of acquittal.

Last, Cook states that trial counsel's Rule 29 argument did not address the possession count by only arguing that there is no evidence that Cook "knowingly put the files on his computer."  He states that who put the files on Cook's computer was irrelevant to the issue of whether the government offered sufficient evidence that Cook knew the contents of the files and retained them.  (R. 98: § 2255 Mo., pp. 38-39).  However, the testimony showed that Cook knowingly used LimeWire to download music and adult pornography.  Downloading music or adult porn images without ever accessing those files defeats the purpose of acquiring them.  The

21

jury was entitled to conclude that Cook knew the procedures involved in using LimeWire for music and adult pornography, and by extension, for child pornography.  Moreover, Cook admitted to seeing at least two images of a young girl with small breasts and no body hair, which he deleted.  In United States v. Woerner, 709 F.3d 527, 536 (5th Cir. 2013), the Fifth Circuit rejected a sufficiency challenge to a possession charge "because the government introduced considerable evidence from which the jury could have reasonably inferred that Woerner knew that the images existed and had the knowledge and ability to access and exercise dominion and control over them."   The same reasoning applies here.  The jury could have reasonably inferred that Cook knew the child pornography images existed, and he had the knowledge and ability to access them and exercise dominion and control over them.  For these reasons, this claim of ineffective assistance of counsel should be denied.

10.   The Jury Was Instructed on the Meaning of "Knowingly."

Cook complains that trial counsel failed to seek a jury instruction defining "knowingly" as evidence beyond a reasonable doubt that Cook opened and viewed the files. (R. 98: § 2255 Mo., pp. 41-42).   During the jury instructions, the Court defined "knowingly" as: "An act is done knowingly when it is done voluntarily and intentionally and not because of accident, mistake or some other innocent reasons."  (R. 59: Trial Transc., Vol. 5, p. 459).  The instructions enumerated each charge's elements, including the "knowing" requirement of receipt or distribution:  "The defendant knowingly received or distributed a visual depiction," (id., p. 458), and of possession:  "the defendant knowingly possessed photographic computer files which the defendant knew contained visual depictions of real minors engaged in sexually explicit conduct." (Id., p. 463).  The Court instructed the jury that it must find that the government had proven each of the elements beyond a reasonable doubt.  (Id., pp. 458, 463).  As held in Woerner, "actual

possession" of material containing child pornography, for purposes of possession of child pornography charge, means the defendant knowingly has direct physical control over a thing at a given time; and "constructive possession" is the ownership, dominion or control over an illegal item itself or dominion or control over the premises in which the item is found.  Woerner, 709 F.3d at 535-36 (internal quotation omitted).  Cook's contention that trial counsel was ineffective for failing to ask the Court to instruct the jury to limit the phrase "knowingly possessed" to evidence that Cook had opened and viewed the downloaded files, would have been rejected as too restrictive.  At a minimum, Cook had dominion and control over the images in his computer, i.e., constructive possession.  This claim of defective representation should also be denied.

11.  The Charges were Not Multiplicitous.

In his final claim of ineffective assistance of counsel, Cook asserts that both trial counsels failed to argue that the indictment contained multiplicitous charges.  (R. 98: § 2255 Mo., p. 42-44).  In United States v. Ehle, 640 F.3d 689 (6th Cir. 2011), the Court found that convictions for "knowingly receiving" child pornography and "knowingly possessing" that same child pornography violated Double Jeopardy.  In United States v. Dudeck, 657 F.3d 424, 430 (6th Cir. 2011), the Court qualified its holding in Ehle, stating that "while possession of child pornography is generally a lesser-included offense of receipt of child pornography, conviction under both statutes is permissible if separate conduct is found to underlie the two offenses."  Cook states that because the indictment did not designate a specific file that he received, possessed or distributed, the facts of his indictment and conviction are identical to those in Ehle and his multiplicitous convictions must be vacated.  He argues that trial counsel's failure to make this argument prejudiced him at sentencing and on direct appeal.  (R. 98: § 2255 Mo., p. 43-44).

FBI S/A Whisman downloaded approximately 30 images from Cook's computer during

23

the undercover LimeWire session.  That satisfies the distribution charge.  The remaining images and videos found in Cook's LimeWire folder satisfy the receipt charge, as the jury was justified in concluding that those particular images were received from Cook's sessions using LimeWire. Finally, at a minimum, the two images of the young girl which Cook acknowledged he possessed, then deleted, satisfy the possession charge.  There is no overlap of the same images or the same conduct.  Counsel did not commit grave error resulting in prejudice for failing to argue that the indictment was multiplicitous.

B.  GROUND TWO:  COOK WAS NOT IMPROPERLY SENTENCED.

In his final § 2255 ground, Cook asserts that the Court improperly sentenced him.  He asserts that the Court sentenced him on all three counts despite there being no evidence to support the *mens rea* for any of the counts, and given the multiplicity of the receipt and possession facts, the Court mistakenly felt it had to apply the mandatory minimum instead of applying lenity.  (R. 98: § 2255 Mo., pp. 44-46).  As discussed above, the jury had sufficient evidence to conclude that Cook knowingly received and distributed child pornography images when he downloaded them and kept them in the LimeWire peer-to-peer file folder on his computer.  For these reasons, Ground Two, the claim that Cook was improperly sentenced, should be denied.

24

Conclusion

For all the foregoing reasons, the government respectfully asks the Court to deny Alex

Cook's 28 U.S.C. § 2255 Motion to Vacate, Correct, or Set Aside his Sentence.

Respectfully submitted,

STEVEN M. DETTELBACH
UNITED STATES ATTORNEY

/s/  Gene Crawford
Gene Crawford
Assistant United States Attorney
Reg. No. 0076280
Four Seagate, Suite 308
Toledo, Ohio 43604
(419) 259-6376 - Phone
(419) 259-6360 - Fax
Gene.Crawford@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on September 16, 2014, the foregoing Response in Opposition to 28

U.S.C. § 2255 Motion was filed electronically.  Notice of this filing will be sent to all parties by

operation of the Court's electronic filing system.  Parties may access this filing through the

Court's system.

Dean Boland, Esq.
1475 Warren Road
Unit 770724
Lakewood OH 44107
    Attorney for Alex David Cook

/s/  Gene Crawford
Gene Crawford
Assistant United States Attorney