Dean Boland (0065693)
1475 Warren Road
Unit 770724
Lakewood OH 44107
dean@bolandlegal.com
216.236.8080 ph
866.455.1267 fax

Attorney for Petitioner

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| ALEX COOK<br><br>Petitioner<br><br>v.<br><br>UNITED STATES OF AMERICA<br><br>Respondent | REPLY BRIEF IN RESPONSE TO GOVERNMENT'S OPPOSITION TO DEFENDANT'S POST CONVICTION PETITION<br><br>Case No. 3:10-CR-00522-JGC<br><br>Honorable James G. Carr |

**MEMORANDUM**

The government's opposition makes several claims which merit addressing in Petitioner's reply.

"Similarly, Cook does not allege that he was unable to prepare a defense, or that he was denied full access to discovery." Doc. #102 at 6. The statute at issue requires the government prove that Cook knowingly received, possessed or distributed contraband content (images or videos). It is impossible to meaningfully prepare a defense when trial counsel failed to demand from the government a list of the filenames attached to the allegedly contraband material. Trial counsel either did not read or was unable to connect 18 U.S.C. 2252(a)(2) and 2252(a)(4)(b) to the content at issue, computer image and video files. These statutes do not prohibit general notions of receipt, possession or distribution of "something" that is contraband. Cook's computer indisputably had legal content on it including legal image and video files. Defense counsel failed to recognize the government's burden to identify specific files, with specific filenames to meet its trial burden. This is evident because Cook's defense preparation suffered, although not in a way that trial counsel apparently perceived, not knowing until the filenames were falling out of the government's witness' mouth in front of the jury precisely what files the government was alleging as violative of the statute.

"He claims that counsel failed to investigate or coordinate with her expert witness to testify that the number of child pornography images, as a percentage of all the files on Cook's computer, were few." Id. at 7.

1

The government criticizes this claim noting that it prosecutes hoarders and those with few images alike. This response misses the point. Cook's defense, so far as one was offered, firmly asserted that he did not knowingly receive, possess or distribute any contraband. Presenting the jury just the relatively few images as the government did would be seen in a totally different light had it been dwarfed by the number of legal images and videos also found on Cook's computer. Trial counsel's failure to make this inquiry left a significant part of this computer evidence out of the case permitting the view items the government presented to be seen out of context. Had the comparative percentages of allegedly contraband items to legal items been 2% to 98% it bolsters Cook's defense. Trial counsel's failure to recognize this point and pursue this information with the expert was ineffectiveness.

On p.7 of the Government's response it reframes Cook's argument about his interrogation statement as one addressed in his suppression motion. "These issues were…subject of any unsuccessful pre-trial motion to suppress…or more fully raised at trial." Id. at 7.

The transcript speaks for itself. Nowhere did defense counsel notice, point out to the court or argue that the government's offered statement was irrelevant to the proceedings. The claim that Cook admitted to possessing "child pornography" is probative of nothing that the government was required to prove. Had the offered statement been Cook admitting to possession of filenames *that were also filenames of files offered by the government as contraband at trial* the relevance objection evaporates. The defense, however, never pointed out that Cook's so called

2

confession was nothing of the sort. He did not confess to receiving, possessing or distributing any of the files the government offered as contraband to the jury. The balancing test of relevance then, probative value versus unfairly prejudicial effect weighs completely in Cook's favor. There is no possible motive for the government to offer this irrelevant so called confession except to unfairly prejudice the jury that Cook must have received, possessed and distributed the files offered since he "confessed" generally to seeing such images on his computer screen. If all the government was required to prove was Cook's general so called confession, then the presentation of any actual contraband files is superfluous and arguably unfairly prejudicial as unnecessarily cumulative evidence. The government showed the actual alleged contraband images and videos, however, because it recognizes that is the burden the statute carries. In so doing, it admits that Cook's so called confession has no relevance to its burden.

"Cook contends that counsel was defective for failing to impeach the agent for saying 'we know who the child is' with the NCMEC's disclaimer that it cannot confirm the child's identity." Id. at 9. The government's response to this failing of trial counsel is its speculation as to how the witness would have responded to this question. "[I]f challenged, the agent could have simply explained that he knows the name of the person who says the images are of him or her." Id.

This speculative answer emphasizes the problem. Had trial counsel knew enough about the NCMEC database to notice the falsity of this witness' claims, the speculative response the government offers deepens its witness' problem. The

3

above statement is merely inadmissible hearsay that some other person told the witness that the images are of a real person. This descending hearsay rabbit hole would have been exposed by effective trial counsel and should have led to an exclusion of this entire claim by the witness. This would have left the notion that there is any database of "known victims" (a known falsity perpetuated by government witnesses in state and federal cases nationwide) an empty hole in the government's case.

The electronic signing of a pad the government offered as Cook's verified statement is precisely not an admission to signing a confession. Cook was not provided a copy of whatever it was he signed so he has no idea what it was and cannot confirm it months later at trial. The electronic signature move here reeks of suspicion and opportunities for those with bad motives to engage in malfeasance. Trial counsel should have, before trial, demanded a full computer analysis of the computer used to acquire Cook's signature. It is just too easy now for a witness to claim that Cook was signing one document and not another when the document itself is a series of 1s and 0s on a computer that the defense never examined and apparently did not know to examine.

In response to Cook's claim that trial counsel failed to insist on examining Cook's roommate's computers (Mr. Douglas) it claims that "the FBI examined Douglas's computer, and found no illegal images on it." Not quite. The FBI merely did a "preview" at the scene of the only computer Douglas self-servingly claimed he owned and used. Were there other computers Douglas possessed at the residence

4

and used?  We will never know because the agents on scene did not bother to ask.  They selected Cook as their target and all other potential targets were merely items on a checklist to eliminate.  And, so they did with Douglas.  But, an effective defense would have sought examination of those computers to bolster Cook's defense.

The government also scoffs at the failure of trial counsel to "track down and examine the roommate's prior computers [as] not an egregious error amounting to a violation of due process." Id. at 11.  The egregiousness of this error is unknown and the government's speculation about what would have been found vapor.  If Douglas' other computers had mountains of contraband on them, then Cook's defense that his computer was misused by Douglas gains significant support. Defense counsel should have at least sought the contents of Douglas' computers.  The FBI did not view those contents or pursue those other devices, but they are not required to do so.  They are not in the business of finding evidence to exculpate their chosen suspect.  Defense attorneys are precisely in that business.

On p. 16 of the government's response it admits that it had no evidence that any of the allegedly contraband files were even opened by Cook.  It acknowledged that the defense expert's testimony "could not dispute that there was not a single file that had a different accessed time from the date created time." This testimony is precisely the proof that Cook never opened and therefore never viewed any of the allegedly contraband files.  Cook not viewing those files means he did not have knowledge of their contents sufficient under the statute.

5

On p. 17 of the government's brief it misstates the relevance of trial counsel's failure to notice that the alleged contraband at issue was not properly authenticated. "To contend that the crime of child pornography should not be prosecuted unless the identities of all the victims are known or *their identities can be authenticated*, is utterly without merit." Id. at 17. Emphasis added.

It is not the identities of the persons in the images or videos that must be authenticated, it is the image or video *itself*. The use of unauthenticated images or videos is fraught with opportunities for fraud. FRE 901 requires authentication of that type of evidence, regardless of what a proponent alleges the evidence depicts, as a protection against the fraud that such unauthenticated images and videos can inject into trials.

The government dismisses the "effect on the jury" of trial counsel's admitted "computer ignorance." Id. at 17. But, the ineffectiveness claim is not reliant on the effect of this statement *on the jury*, but the underlying evidence it provides for trial counsel's ineffectiveness *as a fact*. Professed defense attorney computer ignorance of any kind in a case which relies solely on computer evidence is a significant undeniable admission of inherent ineffectiveness.

On the access date issue the government argues that "it was implausible that Cook downloaded all those files and never opened or accessed a single one." Id. at 19. Here is the difference. The government must produce evidence that Cook knowingly possessed, distributed, etc. particular files, not just some amorphous "files." This government response also underlines the use to which it intended

6

Cook's alleged confession. They wanted the jury to accept that Cook downloaded "all those files" and must have opened and viewed the particular ones it was offering at trial. This is despite the fact the government had no evidence Cook had opened or viewed the files it offered at trial.

At p 22 of the government's brief it notes that "Cook admitted to seeing at least two images of a young girl with small breasts and no body hair, which he deleted." This statement shows Cook had a solid defense of unintentional download which is consistent with not opening the files as the computer meta data evidence supported.

Trial counsel's failure to ask for a properly formed jury instruction on knowledge is likewise dismissed by the government with its speculation that the suggested interaction "would have been rejected too restrictive." Id. at 23. Too restrictive? It is too precise for the government is what it does not want to admit. The contents of computer files of the type offered at trial can only be known to a person by opening and viewing the file. A jury instruction that mandated government proof that Cook opened and viewed the files it offered at trial is precisely in line with the computer reality and statute. This instruction, however, is putting too fine a point on the government's burden for the government's liking. Such a properly and precisely tuned instruction would make a conviction in this case impossible given the government's failure to offer any evidence Cook opened and viewed the files it offered as contraband at trial.

Finally, the government argues its possession charge would have been proven by offering Cook's admission of possessing then deleting two images of young females. These files were never located, presented or identified as contraband. Cook seeing a file that "appears to be" contraband is insufficient to show possession at all. Plus, possession comes with a modicum of intent otherwise even an accidental download and delete of such a file is an indictable federal offense, which is not what Congress intended with this legislation - to imprison people who are sent or mistakenly download contraband. Cook's admission of seeing something that "appeared to be" contraband and then deleting it is precisely what society wants surprised persons to do when such files unintentionally appear on their computer screens. The government would have Cook's understandable and laudable reaction, deletion, converted into a felony. The case law simply is not there.

## CONCLUSION

Alex Cook respectfully requests that this Honorable Court vacate the convictions and sentences as unconstitutional and unlawful and order a new trial and/or re-sentencing or whatever proceedings this Court deems appropriate to insure the constitutionality and lawfulness of Mr. Cook's convictions and sentence.

8

Respectfully Submitted,

/s/Dean Boland

Dean Boland (0065693)
1475 Warren Road
Unit 770724
Lakewood OH 44107
dean@bolandlegal.com
216.236.8080 ph
866.455.1267 fax

Attorney for Petitioner

**CERTIFICATE OF SERVICE**

The foregoing will be served by operation of the court's electronic filing system on all parties to this matter.



/s/ Dean Boland
Dean Boland (0065693)

9