IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

United States of America,                                Case No. 3:10CR522

        Plaintiff/Respondent,


        v.                                                        **ORDER**

Alex David Cook,

        Defendant/Petitioner,


This is a petition for post-conviction relief under 28 U.S.C. § 2255. Following trial, a jury found the defendant guilty of three counts relating to receipt, possession, and distribution of child pornography. The Court of Appeals affirmed his conviction and seventy-two month sentence. *U.S. v. Cook*, 531 F. App'x 584 (6th Cir., July 20, 2013).

Defendant now challenges his conviction, contending that his former attorneys failed to provide constitutionally adequate representation before and during trial.

He also claims his sentence was constitutionally defective.

For the reasons that follow, I deny the petition.

### Background

Oklahoma F.B.I. Special Agent Richard Whisman determined, via the IP address, that a computer belonging to the defendant had posted images of child pornography on Lime Wire. Agents from the Lima, Ohio F.B.I. Field Office obtained a search warrant and retrieved the computer. On

examination, investigators found the child pornography that provided the basis for the defendant's conviction.

During post-seizure questioning, the defendant admitted that images of child pornography might be on his computer. The questioning occurred at the Lima Field Office. SA Paul Pape testified that after the defendant made that admission orally, he prepared a typed statement on a computer, displayed the statement to the defendant, asked him to read it, and then had him sign it electronically.

The defendant's defense theory at trial was that his roommate, Ian Douglas, had accessed his computer and downloaded the pornography. Defendant claimed Douglas has his password and used his computer. The defendant's father testified he had seen Douglas using the computer. Douglas, whom the government called as a witness, vigorously denied the accusation, claiming that he neither knew the password nor used the defendant's computer.

The defendant also disputed Agent Pape's testimony about the inculpatory nature of his statement. Though a high school graduate and college student, he claimed to have difficulty reading, and thus had not read the typed version – the contents of which he repudiated.[1]

The jury decided the credibility and other issues in the government's favor.

**Discussion**

**1. Ineffective Assistance of Counsel**

The defendant claims his lawyers provided constitutionally deficient representation in multiple ways. I discuss each in turn, finding none, either separately or in combination, to have merit.

---

[1] The defendant faults his lawyer for not developing more of a record with regard to his learning difficulties. In light of the evidence, including expert evidence, on this issue before the jury, failure to obtain and present the essentially cumulative additional evidence that defendant now claims should have been introduced in his defense does not manifest any insufficient of representation. Nor can defendant show how the outcome would have differed had this evidence come in.

First, the defendant asserts the indictment was defective because it did not specify the images that the government believed were unlawful. He faults his attorneys for their failure to seek a bill of particulars to clarify the government's allegations against him.

There is no merit to this contention. There was nothing defective about the indictment and certainly no basis for seeking a bill of particulars. Bothering to do so would have been a waste of the defense attorney's time. Given the extent of pretrial disclosure and the nature of the images, the defendant cannot claim that his attorneys were unaware of what underlay the indictment and what the government planned to offer as proof. *See  U.S. v. Page,* 575 F. App'x 641, 4 (6th Cir. 2014) (upholding denial of bill of particulars because the defendant did not claim an inability to prepare a defense).

At the pretrial stage, as is customary in this Division of the Northern District, the government provided extensive pretrial discovery, including copies of the materials found on the defendant's computer. His attorneys thereby were fully capable of viewing and determining the unlawful nature of the materials the government introduced at trial. In addition, before trial, they had,  pursuant to my standard pretrial order, a list of the exhibits the government was to offer.

At trial, the jury and I shared the unwelcome and unpleasant task of viewing the government's proof. The images were indisputably pornographic. The victims were indisputably children. The defense attorney could see and know that well in advance of trial.

Defendant next faults his lawyers' performance at the pretrial stage in several respects.

He claims his trial attorney failed to interact with an expert defense witness, so that the witness did not inform the jury that the defendant's computer contained relatively few images of child pornography within its stored data.

While the assertion that collectors and distributors of child pornography typically hoard large collections of such unlawful materials may be correct, that doesn't matter. Calculation of the

sentence depends, in part, on the number of images, but conviction of the crime depends not at all on the amount of the material. There is no threshold amount that the government must find before it can prevail.

The testimony that defendant claims his lawyer failed to evoke probably was irrelevant. It certainly was immaterial. Even if admissible, its omission would have had no effect whatsoever on the jury's view – and viewing – of the evidence.

Defendant also complains that his lawyer did not develop and highlight the fact that the images in his files showed only a creation date, and not an access date. This, he suggests, bolsters his contention that the government failed to prove that he knowingly possessed the illegal materials.

The government's proof rebutted any contention that the computer's internal record, which showed no access dates, supported the defendant's inference on an inference that he had not accessed the materials. The government showed that the computer's default was to show only the created date, and not the access date *for any of the stored data*. On the jury's learning, as it did, that there were only creation dates, and no access dates, for everything on the defendant's computer, it understandably could and would have discredited the defendant's contention and discounted his theory.

Defendant next faults his trial attorney for failing to seek exclusion of his statement to Agent Pape on the grounds of relevance. He makes this assertion on the basis that, while the statement contained inculpatory (and highly probative) admissions, especially as to his knowledge, he and Agent Pape may have had a different understanding of "child pornography."

The jury saw what was on the defendant's computer and what they depicted: namely instances, among others, of adults raping individuals who clearly were children. To look at those images – however briefly, and for whatever purpose – is to know indisputably their nature. Quibbles about how someone would define child pornography are irrelevant and immaterial.

4

The jury did not believe the defendant's contention that his roommate put those images there; rather, it concluded the defendant had. To put the images on his computer, the defendant had to view them. On viewing them, the defendant knew, or certainly had every reason to know (and not to doubt at all), just what they were. The government had to do no more to prove his knowledge.

The statement, and its attribution to the defendant that he knew there were some images of child pornography on his computer, were admissible. A challenge to their relevance on the basis now argued would have been entirely unsuccessful.

The defendant further claims his attorney should have secured a forensic examination of the Bureau computer on which Agent Pape typed the defendant's statement. According to the defendant, the Agent failed to prepare an accurate statement and, perhaps, copied the defendant's signature from a rights form, rather than, as the Agent testified, having the defendant sign it himself.

To begin with: the defendant cites no authority – and I am aware of none – that would permit a defendant, especially on the basis of the rank speculation that he puts forward here, to go poking around in F.B.I. equipment to see what might be there.

In any event, the defendant's challenge to the accuracy of the written statement, his denial of making any inculpatory statements, and his suggestion about his computerized signature were before the jury. This is especially so in light of the defendant's admission that he had provided an electronic signature.

The jury's function was to assess credibility. Its effort in that regard, even if somehow defense counsel should *and could* have gained access to the F.B.I. computer, would not have been enhanced, or led to a different assessment, by whatever might have been found there.[2]

---

[2] Counsel accurately cites to my highly critical statements about the Agent Pape's failure to record his interview/interrogation of the defendant. But such was Department of Justice/Bureau policy at the time. It was, in my view, an indefensible policy, and one that gave the government an inherent, unjustified, and unfair advantage in every "he said, she said" situation such as that which existed here. The Department has since somewhat modified its policy so that, in the future, agents

The defendant faults the government for the Bureau's failure, except in a cursory manner, to examine Douglas's computer when executing the search warrant for the defendant's computer. The agents had no obligation – and indeed, no authority under the Fourth Amendment - to do more than they did with regard to Douglas's computer. They were satisfied, based on their initial examination, that there was little likelihood that a computer not expressly encompassed by the warrant contained anything unlawful.[3]

The defendant claims his attorney should have conducted a more thorough examination into the background and activities of his roommate, and thereby secure more evidence to support his theory that the roommate, and not he, was responsible for putting the images on his computer.

The roommate testified he kept his computer in his room, and that he had had four different computers in the months prior to execution of the search warrant. A photo of the scene showed the roommate's computer in the living room, thereby giving the defendant's attorney something on which to challenge his credibility.

Once again, the defendant offers nothing but speculation as to what might have been found had his attorney sought and gained access to the roommate's computer or computers. Among other things, there is no reason to assume that any of the devices were available at any time after the defendant's indictment. Moreover, the only basis for allowing such third-party, highly intrusive inspection was the defendant's contention that his roommate knew his password and accessed his computer.

---

will record in-office interviews such as that here.

[3] For defense counsel to have pushed further into the question of what the agents did *vis-a-vis* their inspection of Douglas's computer would have been quite risky. Had what the agents viewed given rise to probable cause, they would have seized the computer. It is apparent that what they saw created no suspicion about the nature of the contents on his machine. For defense counsel to create any more emphasis on that fact would hardly have redounded to the defendant's favor.

6

The defendant did not explain why he allowed such access, if he did. In any event, he has not shown that he was prejudiced by the lawyer's failure to try to find out if Mr. Douglas had downloaded child pornography on his own computer(s). If such inspection occurred and found child pornography, the next, and appropriate question would be: why would Mr. Douglas bother accessing the defendant's computer to fulfill his perverted impulses when he was already using his own?

In other words, the underlying premise of defendant's contention makes no sense.

The jury, to the extent it thought at all about what might have been on Douglas's computer(s), had, for want of proof to the contrary, to assume there was nothing illegal there. That left the jury where it was: namely, having to make a credibility determination between defendant's assertions and accusations about Douglas and Douglas's denial of those assertions and accusations. The verdict makes clear that the jury disbelieved the defendant's blame-shifting testimony.

The defendant also asserts his attorney should have tried to develop "alibi" evidence: *i.e.,* show when, due to his absence and Douglas's presence, Douglas would have had access to his computer. Implicit in the record was the fact that, as one might expect, there were times when Douglas was present and the defendant was away. Trying to develop details about those circumstances, however, would have added nothing to the defendant's contention that Douglas had the opportunity to use his computer, and thus download the pornographic materials.

What mattered was how the jury viewed the conflict between Douglas's testimony that he neither knew the defendant's password nor used his computer and the defendant's contrary testimony and assertions. The so-called "alibi" evidence that the attorney did not try to develop was irrelevant and immaterial with regard to this determinative issue.[4]

---

[4] I also note the defendant does not point to any actual evidence that the activities he claims his lawyer should have taken *vis-a-vis* his roommate would have generated anything useful. To be sure, doing so at this time would be, at best, very difficult, and probably impossible.  But the fact that defendant cannot now show what exculpatory evidence would have come to light but for counsel's failings does not excuse him from showing the *actual* – not hypothetical – prejudice that

In addition to the errors the defendant alleges at the pre-trial stage, he points to several alleged failings of counsel during trial.

He claims his lawyer failed adequately and effectively to bring out and/or highlight areas of productive impeachment of the government's witnesses. He claims Agent Pape testified falsely that he never lied to the defendant during the polygraph. The defendant contends the Agent admitted during the pretrial suppression hearing that he had done so, and that his attorney failed to call that fact to the jury's attention.

The defendant misreads the record.

At the suppression hearing, the agent testified that he told the defendant that the defendant "had reacted" to some of the questions during the polygraph . It is clear, however, that the Agent attributed any such "reaction"  (in themselves not proof of deception), to the fact that the interview room was cold and affected the functioning of sweat glands.

Once again, there is no there there: there was no basis for impeaching Agent Pape on the basis of what he actually told the defendant after the polygraph. Had defense counsel brought that subject up in response to the Agent's testimony at trial that he never lied to the defendant, the Agent's testimony still would have stood unrebutted.

Defendant makes a similar assertion with regard to the putative failure of defense counsel to call out Agent Whisman for his allegedly false testimony that he compared the downloaded images of defendant's computer to a database at the National Center for Missing and Exploited Children ["NCMEC"] of "known victims."

Defendant claims the Agent's testimony, "we know who the child is and a picture or video, how they were victimized and the circumstances of that case" was false. He bases this contention on the fact that the NCMEC places a disclaimer on top of each page informing law enforcement that

---

resulted in his case.

the agency cannot and does not authenticate any image or video in their database. "Instead it merely passes on to law enforcement the name and contact number (if available) of the person who submitted that image or video to the database claiming it to be authentic."

According to the defendant, his attorney should and could have impeached the Agent's testimony about knowing who one or more of the victims is with the NCMEC disclaimer.

The problem with this contention is that the identity of some victims is, in fact, known. This is manifest from testimony at trial about the victims in the "Jenny" and "Vicki" series.[5] The government – and Agent Whisman – in fact *do* know who the victims are.

Here, again, for the defendant's attorney to try to have raised doubts about the Agent's credibility on this entirely insubstantial basis would, in all likelihood, once the government elaborated on what the government knows and how it knows about real victims, have highlighted, rather than cast a shadow over, the truthfulness of what the Agent was telling the jury.

The defendant claims his lawyer should, on the basis of authenticity, have challenged admission of the child pornography the government showed the jury, and which were the cornerstone of its proof. There is no merit to this contention.

 To show videographic evidence is authentic, the government need do nothing more than show, by a preponderance of the evidence, that what is shown depicts what it purports to depict. It is not necessary to present evidence as to who made the recordings, how and when they were made, or whom they depict.  *See generally*, Carr & Bellia, THE LAW OF ELECTRONIC SURVEILLANCE § 7:60. Certainly, at this stage, the defendant must provide some reason to believe that the horrific things the jury saw, and which came from the defendant's computer, were fabrications.

_____

[5] I also take judicial notice of the fact that, where the government finds images from those victims and it obtains convictions as a result, courts prior to sentencing routinely receive, as I have, victim impact statements from known victims, including the victim in the "Vicki" series. Based on the contents of those statements, there can be no question that the government knows who many of the victims are.

There is no reason, and defendant has provided none, to believe those materials were anything than what they appeared to be: depictions of child pornography.

Had counsel made the objection the defendant now contends she should have made, I would have overruled it peremptorily. And properly so.

The defendant next asserts his lawyer's Rule 29 motion for judgment of acquittal was incomplete and constitutionally defective.

Again, I disagree: the lawyer asserted what she could as best she could in the face of evidence that clearly called for the jury, not me, to decide. Even if the attorney had made all the points he now claims she should have made, my ruling would have been the same.

The defendant faults my instruction on "knowingly" and counsel's failure to have sought an alternative instruction. There is no merit to either contention. The instruction was proper and fit the evidence and case. Had counsel sought the alternative he now proposes, I would have overruled it.

The defendant also claims that the government's proof as to his knowledge was not sufficient to sustain the verdict.

I disagree. The jury concluded he lied when he claimed his roommate, and not he, downloaded the materials. To do so, the defendant had to see them; on seeing them, their nature is immediately apparent, and becomes instantly known. Posting images on a file-sharing site, such as Lime Wire, is further proof of one's knowledge – and intent to distribute.[6]

That, in a thumbnail, was the basis for the jury's verdict as to all three counts. That verdict was well-founded in every respect in the evidence.

---

[6] I agree with the government that cases such as U.S. v. Farney, 513 F. App'x 114, 116 (2d Cir. 2013), in which the court stated, "knowingly placing child pornography files in a shared folder on a peer-to-peer file-sharing network constitutes distribution under U.S.S.G. § 2G2.2, even if no one actually obtains an image from the folder," put to rest defendant's contentions about his conviction for distribution.

10

Lastly, defendant challenges his conviction on the ground that unchallenged multiplicity in the indictment resulted in his conviction and sentence on two counts (receipt and possession) where the conduct the government proved sufficed for conviction as to only one count. His contention founders on the Sixth Circuit's decision in *U.S. v. Dudeck*, 657 F.3d 424, 430 (6th Cir. 2011). In that case the court stated that, "while possession of child pornography is generally a lesser-included offense of receipt of child pornography, conviction under both statutes is permissible if separate conduct is found to underlie the two offenses."

Here the government showed possession – at the very least – through the defendant's admission he downloaded and then deleted images of child pornography and the separate and distinct offenses of receipt and distribution through his use of Lime Wire. Neither the indictment nor the convictions contravene the doctrine of multiplicity.

## 2. Sentencing

Defendant's challenge to his sentence restates arguments I have already considered and rejected in his challenge to the adequacy of his lawyer's representation: namely, insufficient evidence of the knowledge element as to all three charges and the alleged multiplicity of the charges and conviction.

Casting these contentions under the rubric of unlawful sentencing is no more successful than asserting them *vis-a-vis* a claim of ineffective assistance of counsel.

## Conclusion

For the foregoing reasons, I find no merit to the § 2255 petition.

It is, accordingly

ORDERED THAT the petition for relief under 18 U.S.C. § 2255 be, and the same hereby is denied.

There can be no plausible merit to an appellate challenge to this decision, and I decline, therefore, to issue a Certificate of Appealability.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge